NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:  (541) 465-6771
**CAMERON A. BELL, CSB #305872**
Trial Attorney—Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Cameron.Bell@usdoj.gov
Telephone:  (202) 802-7643
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| | Case No. 3:22-cr-00084-SI |
| v. | |
| | OPPOSITION TO DEFENDANT'S |
| **TONY DANIEL KLEIN,** | MOTION TO CONTINUE |
| **Defendant.** | |

The United States hereby submits its response in opposition to Defendant's Motion to Continue, ECF 38.  A continuance is unnecessary and will prejudice the government.  The defendant has had—and continues to have—ample time to prepare for trial, which is still four months away.  The government requests that this Court deny the motion.

**FACTUAL BACKGROUND**

The government first notified the defendant, through his then-counsel, in June 2021 that he had potential criminal exposure for his conduct while he was employed at the Coffee Creek Correctional Facility ("Coffee Creek").  In July 2021, attorneys for the government met with the

**OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE**                                                                Page 1

defendant and his attorney and delivered a 79-slide PowerPoint presentation detailing the potential charges the defendant could be facing, if the government proceeded to indictment. In August 2021, the government learned that the defendant had new counsel, and the government delivered the same presentation to Matthew McHenry outlining the evidence and potential charges. In the weeks after that meeting, the government provided 3,400 pages of select discovery to the defense—including audio-recorded statements, depositions (where available), and summaries of interviews for each of the women who accused him of sexually assaulting or abusing them. As of September 2021, defense counsel indicated to the government that he was "in the process of obtaining the records from Mr. Klein's previous attorneys and/or anything related to the civil cases."

Notably, July 2021 was not the first time the defendant learned that his past conduct was under scrutiny. The "civil cases" referred to were lawsuits filed against the defendant by 11 women—including seven of the women identified in the indictment—who sued the defendant and Oregon Department of Corrections (ODOC) for violations stemming from the defendant's sexual misconduct while the women were incarcerated. *See Suarez v. Peters et al.,* 3:19-cv-95 (D. Or. 2019) (and related cases). The defendant was deposed in November 2019 as part of that litigation, and he was explicitly asked about his conduct toward several of the women identified in the indictment, as well as other women.

Several ODOC and Coffee Creek staff members were also deposed as part of that civil litigation, including individuals who possess the very information that the defendant now seeks. Specifically, the defendant refers to changes in the facility and states that the defense has been seeking a listing of the modifications in the facility relevant to the charged conduct. These

**OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE**                                                                                                  **Page 2**

questions were addressed in the 2019 depositions, of the following witnesses who worked for ODOC:

- Joseph Bugher (then the Assistant Director of Health Services for ODOC);

- Paula Myers (then the Superintendent of Coffee Creek Correctional Facility)

- Ericka Sage (then the Agency PREA Coordinator, tasked with overseeing ODOC's compliance with the Prison Rape Elimination Act (PREA));

- Robert Persson (then the ODOC West Side Institutions Administrator and former Superintendent of Coffee Creek Correctional Facility); and

- Cally Wolery (then a Nurse Manager at Coffee Creek).

At each of those depositions, the defendant had civil counsel present. All five depositions, among others, were provided in the government's initial discovery.

The defendant was indicted on March 8, 2022, exactly one year ago, and charged with 21 counts of 18 U.S.C. § 242 and four counts of 18 U.S.C. § 1623. ECF 1. On March 28, 2022, within 14 days of his initial appearance, the government began uploading its initial discovery and confirmed it was available for download on March 30, 2022. That discovery contained all of the interview summaries the government had conducted at that point, totaling more than 60 witnesses. These summaries were from interviews of victims, as well as current and former prison staff who worked alongside the defendant. The initial discovery included the following categories of information, among others:

- Complete medical records (excluding mental health information) for all charged victims, as well as uncharged victims who were assaulted by the defendant in the course of medical treatment;

- ODOC "Institution File" for all charged and uncharged victims, containing information about each woman's crime(s) of conviction;

- ODOC Disciplinary History for all charged victims and many uncharged victims;

**OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE**                                    Page 3

- ODOC programming records for all charged and uncharged victims, detailing their in-custody work histories and other in-custody programming throughout the duration of their incarceration;

- Monthly nursing schedules from 2010 through 2017, indicating which days the defendant worked at Coffee Creek throughout his employment;

- All ODOC training materials related to in-custody sexual assault;

- Various ODOC and Coffee Creek policies related to in-custody sexual assault, PREA compliance, and medical care;

- Complete files from investigations by Oregon State Police and ODOC Office of the Inspector General into sexual-assault allegations against the defendant; and

- Files from the investigation by Oregon State Board of Nursing into conduct by the defendant.

In addition, many of the materials provided in initial discovery were from the civil litigation, meaning the defendant (or at least his civil counsel) would have had access to those materials since 2019. Of the nearly 96,000 pages of discovery that have been provided, more than 92,000 were contained in the initial discovery produced almost one year ago.

On May 17, 2022, the Court held a telephonic status hearing, in which the parties set out the trial date an additional 14 months with the understanding that this would be a true trial date. The government indicated that it would not agree to an additional continuance. The government provided supplemental discovery on September 21, 2022. In a December 2022 Joint Status Report, the parties confirmed that they were both prepared to proceed to trial on July 10, 2023. ECF 31. The government provided a third set of discovery on December 30, 2022,[1] and the defense gave no indication upon receipt that it would be seeking a continuance due to the volume or content of

---

[1] Volume 3 of the government's discovery, which the defense correctly identified as 1,335 pages, contained all of the Jencks material (including relevant communications from and between FBI agents), more than 400 pages of updated criminal history information for several individuals (much of which was already available through prison records provided in initial discovery), and over 100 pages of surveillance photographs of the defendant before his indictment and arraignment.

**OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE**  Page 4

the materials. On February 14, 2023, in conversations between the parties related to setting up a desired tour of Coffee Creek and obtaining additional ODOC records, the government offered to help facilitate with ODOC any record-gathering for the defense, but the defense declined that offer.

The government provided additional discovery on March 7, 2023. Of the 967 pages of discovery provided in Volume 4, 715 pages are photographs from the government's tour of Coffee Creek, which occurred on February 21, 2023. Due to formatting, each photograph is produced twice, so these 715 pages, in fact, represent 357 photographs. Each time the government has produced an additional volume of discovery, the discovery has been provided in the same format and, aside from a June 2022 email identifying issues with specific files, the defense has not indicated that it has had difficulty accessing the discovery because of its format.

In reliance on the defendant's representations in May and December 2022, as well as the firm trial date set for July 10, 2023, the government has continued to prepare its case, serving subpoenas, notifying the victims (including many with serious health conditions and one with incurable cancer) about the trial date, and beginning the process of securing transportation for two witnesses who are in state custody, outside of the state of Oregon.

Relevant to the information the defendant now seeks, the government interviewed another witness (not identified above), on February 28, 2023, who explained the changes made to the facility. Using the photos taken just the week before, this witness described changes including: adding windows to certain doors or rooms, increasing the size of windows, adding security mirrors, shortening the privacy curtains in the medical unit, and removing blinds or other curtains. A written summary of that interview is in progress and will be disclosed as soon as it is available.

///

///

**OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE**                                            Page 5

## ARGUMENT

"A district court has broad discretion to grant or deny a continuance." *United States v. Kloehn*, 620 F.3d 1122 (9th Cir. 2010). When a defendant in a criminal case moves to continue the trial date, courts consider five factors: 1) whether the continuance would inconvenience the witnesses, the court, counsel, or the parties; 2) whether other continuances have been granted; 3) whether legitimate reasons exist for the delay; 4) whether the delay is the defendant's fault; and 5) whether a denial would prejudice the defendant. *United States v. Fowlie*, 24 F.3d 1059, 1069 (9th Cir. 1994). The last factor, prejudice to the defendant, is the "most important." *United States v. Morel-Piñeda*, 829 F. App'x 187, 190 (9th Cir. 2020).

### A. The Second, Third, and Fifth Factors[2] Weigh Against a Continuance

The timeline of relevant events, along with the information cited in the defendant's motion, reveals that a continuance is unnecessary here. The Court previously set the trial out more than a year, to July 2023, with the understanding that this would be a firm date.[3] There is no legitimate reason for a continuance, as more time will not address the purported reasons for the request. Most importantly, the defendant will not be harmed if a continuance is denied.

Although it is difficult to address whether the requested continuance will satisfy the defendant's needs without knowing more about what those specific needs are, the discovery already provided by the government has included a number of documents that focus on the items identified in the defendant's motion. Specifically, the defendant refers to changes made to the

---

[2] Without more information, the government cannot fairly ascribe fault and asserts that the fourth factor is at least "neutral."

[3] Though July 10, 2023 is technically only the second trial date, the first trial date was set for May 2022. The 2023 date was selected with the understanding that it would be a true date, and neither party would seek an additional continuance.

**OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE**　　　　　　　　　　　　　　　**Page 6**

prison and states that the defense has been seeking a listing of the modifications in the facility relevant to the charged conduct. These questions were addressed in five separate depositions, all taken in 2019, at which the defendant was represented by civil counsel. Those depositions were disclosed by the United States in March 2022, in Volume 1 of its discovery, and they may have been obtained by the defendant in 2021 (when defendant's counsel in the criminal case represented that he had contacted civil counsel), or even in 2019, as part of the civil discovery. For nearly a year, at minimum, the defendant has had materials describing or at least giving notice of these changes. That he has failed to diligently work to obtain the materials he now seeks does not warrant a continuance at this juncture.

In addition to the testimony provided in the depositions, three sets of photos have been created and provided to the defense—the first two in the initial discovery, and the most recent photographs (taken February 21, 2023) in the March 7, 2023 discovery. First, photos of most of the relevant areas of the prison were taken as part of Coffee Creek's internal investigation, and those photos were provided in the initial March 2022 discovery (US00006373 to US00006392). Those photos are the closest in time to when the charged conduct occurred. The second set of photos, taken in August 2019, captures more areas of the prison and was also disclosed in March 2022 discovery (US00091947 to US00092033). Comparing just these two sets of photos reveals that Coffee Creek has made changes to the facility. But then the government toured the facility on February 21, 2023, and took 357 photos, which it disclosed on March 7, 2023. To the extent the defendant is now requesting more time so that he can obtain additional photos of the facility, it is not clear how the more than 400 photographs that the government has provided are insufficient for his stated purposes.

///

The defendant already has in his possession the information that demonstrates changes to the facility have been made and what they are. If there are additional witnesses who may provide context to that information, the defendant has known their identities since 2019 and still has four months before trial to gather additional information. To the extent the defendant needs evidence about the changes to aid in his defense, that evidence is contained in the discovery. It is unclear how additional photographs or video of areas that have changed since the time of the charged conduct will further aid the defendant in his defense.

Finally, the trial is still four months away, and the requested continuance is speculative and premature. There is no indication in the defendant's motion that the defense has attempted to subpoena any of the "tens of thousands of pages" it seeks or otherwise sought a court order. The government has already provided 96,000 pages of discovery, most of which was provided in March 2022. Most of the government's discovery comes from the Oregon Department of Corrections, and much of it addresses the issues the defendant now raises for the first time. Though the defendant is, of course, entitled to *and should* seek records for his defense, it is difficult to imagine what is contained in the voluminous records that the defendant now seeks that has not already been provided. Moreover, it is unclear why the defense failed to previously seek those records, why other court intervention will not satisfy these needs, or why the defendant assumes the remaining four months before trial is insufficient. Without more information, however, the United States cannot comprehensively address this factor and seeks leave to respond more fully at a later date, should more context be provided.

///

///

///

**B. A Continuance Will Prejudice the Government and Is Inconvenient to the Witnesses and Victims**

Most significantly, a continuance will prejudice the government in very tangible ways. Most of the conduct charged in the indictment occurred in 2016 and 2017, and it can be a challenge for any witness to remember details about what happened six or more years ago. Further delay would compound that. Moreover, this case has already been affected by setting the trial date out 16 months from indictment, and additional delay will only cause additional prejudice to the government. Specifically, the government learned that one corroborating witness recently died. Another, whose testimony is necessary to prove several of the charged counts, suffers from incurable cancer. Multiple witnesses suffer from other serious medical conditions—that is precisely the reason they had such frequent interaction with the defendant, a prison nurse, while they were incarcerated.

Furthermore, many of the government's anticipated witnesses have previously suffered from or are currently battling addiction, and there is a very real risk of relapse, particularly when faced with the instability of changing court dates for a case where they will be called to testify about some of the worst moments of their lives. The victims of the defendant's sexual assault have waited years for the defendant's day in court, and they deserve resolution. The defendant's requested continuance will only serve to further delay that day.

///

///

///

///

///

///

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion to continue.

Dated: March 8, 2023

Respectfully submitted,

| | |
|---|---|
| NATALIE K. WIGHT | KRISTEN CLARKE |
| United States Attorney | ASSISTANT ATTORNEY GENERAL |
| | |
| /s/ Gavin W. Bruce | /s/ Cameron A. Bell |
| GAVIN W. BRUCE | CAMERON A. BELL |
| Assistant United States Attorney | Trial Attorney |
| | Civil Rights Division |