Matthew G. McHenry, OSB 043571
Levine & McHenry LLC
1050 SW Sixth Avenue, Suite 1414
Portland, OR 97204
503-546-3927
email: matthew@levinemchenry.com

Amanda Alvarez Thibeault, OSB 132913
Alvarez Thibeault LLC
330 NE Lincoln Street, Suite 100
Hillsboro, OR 97124
503-640-0708
email: amanda@aatlegal.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TONY KLEIN<br><br>Defendant. | No. 3:22-cr-00084-SI<br><br>DEFENDANT'S REPLY TO GOVERNMENT'S REPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL DATE |

Defendant Tony Klein, by and through his attorneys Matthew McHenry and Amanda Alvarez Thibeault, respectfully submits the following Reply to the Government's Response in Opposition to Defendant's Motion to Continue Trial.

The government has charged Mr. Klein with offenses that carry a life sentence. A continuance is necessary and failure to grant the defendant's

motion will unconstitutionally prejudice the defendant. Mr. Klein's current defense team has had less than nine months to review nearly 100,000 pages of discovery, perform their own investigation, and prepare the case for trial, while the prosecution team has had unfettered access to the case for nearly four years or more, in addition to unequal access to ODOC facilities and records that have left Mr. Klein unconstitutionally disadvantaged as the current trial date approaches. The government seeks to take advantage of the unequal access they have had to Mr. Klein's case by opposing a continuance. The motion to continue must be granted.

## LAW AND ARGUMENT

The Defense agrees with the government that the five factors this court must weigh in its decision to grant the continuance motion are: (1) whether the continuance would inconvenience the witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the defendant. *United States v. Fowlie*, 24 F.3d 1059, 1069 (9th Cir. 1994). Prejudice to the defendant is the most important factor. *United States v. Morel-Piñeda,* 829 F. App'x 187, 190 (9th Cir. 2020). All of these factors weigh in favor of granting a continuance.

**A. Any inconvenience to the government and its witnesses is far outweighed by the prejudice Mr. Klein would suffer if the motion were denied.**

The government asserts that a continuance should be denied because it would be "inconvenient" to its witnesses. ECF 46 at 9. Mr. Klein is facing charges that carry life sentences. His constitutional right to a defense trumps any purported "inconvenience" on the part of the government's witnesses.

The government laments that any further delay could compromise witness memories of the events. ECF 46 at 9. However, it was the government, not the defense, that waited a full four years after the investigation began to bring these charges. If witness memories are compromised by delays, the government should be more concerned about the lengthy years-long delay it created prior to bringing charges than the exponentially shorter delay the defense seeks here.

In addition, the government's concern is mitigated by the fact that most of the claims were addressed in prior civil proceedings. This case has a lengthy and voluminous record, more than sufficient to refresh any witness's recollection of past events.

Finally, if the government has legitimate concerns about the reliability of its witnesses because of their drug use or other lifestyle choices (ECF 46 at 9), this is a factor this Court should absolutely consider in determining

competence to testify generally, but not something that should factor into a defendant's motion to continue.

**B. That only one continuance has been granted augurs in favor of the defense.**

Regarding the second factor, although the government makes its own stylistic characterizations about the nature of the July 10, 2023, trial date, they concede it is only the second trial date on the case.[1]  Given the potential life sentence Mr. Klein is facing, this factor weighs in favor of Mr. Klein. Mr. Klein was not charged criminally until March 8, 2022 (approximately a year ago).  Notably, the first trial date was May 17, 2022, a full month and a half *before* the defense had discovery in a usable format (see *infra*).  This timeline, and the second factor, weigh in favor of granting this motion.

**C. Legitimate reasons exist for the requested continuance.**

In arguing that legitimate reasons do not exist for the delay, the government mischaracterizes its production of discovery and the length of

---

[1] The government asserts that the current trial date was set in May 2022 "with the understanding that it would be a true date, and neither party would seek an additional continuance."  ECF 46 at 6 n.3.  This is incorrect.  During discussions both on the record and off, the defense has repeatedly expressed that it would strive to meet the aggressive trial timeline, but that a continuance could become necessary depending on the status of discovery and investigation.  At no time did the defense agree not to seek any additional continuances.

4

time that Mr. Klein's attorneys have been on the case, while misconstruing the independence of the defense function. At the same time, the government minimizes the power imbalance that allowed them unencumbered access to all the resources they sought, while Mr. Klein has time and time again been restricted from accessing information necessary for his defense.

> *1. The defense must conduct investigation independently and without reliance on the government's discovery, and must be given at least equal access to investigation tasks as the government.*

In any criminal case, the defense has an absolute duty to conduct reasonable and necessary independent investigation. This duty extends beyond the discovery provided by the government, and the defense must investigate the case thoroughly and independently, using all available resources. The duty to investigate includes investigating not only the government's case but also any potential defenses and mitigating circumstances. *See generally Strickland v. Washington*, 466 U.S. 668 (1984).

The government has provided the defense the photographs it took during the tour of CCCF that ODOC permitted, as is required under their discovery obligations. However, the government's investigation simply cannot substitute for the necessary independent defense investigation. Photographs, in particular, are subject to the angles and range selected by the

photographer. The defense needs evidence documented by its own investigators, done so without an eye toward the prosecution of the case.

Prior to their CCCF tour, the government and ODOC offered to take the defense's information as to what photographs and angles, in particular, the defense needed, and agreed to take those photographs on behalf of the defense. As noted, the defense declined. That this suggestion was even offered demonstrates a fundamental misunderstanding of the defense function and obligations. To disclose to the government the particular documentary evidence sought by the defense during investigation and trial preparation would violate Mr. Klein's attorney-client privilege and the right to counsel under the Sixth Amendment.

Defense counsel first contacted ODOC officials about a defense visit on or about January 13, 2023, as soon as was practicable given the defense investigation and review of discovery—before a tour could be effective and efficient, the defense had to identify and detail each allegation against Mr. Klein, in terms of location, time, and conduct, and develop a plan for a focused tour.

There was a significant amount of meeting and negotiating with ODOC over the next several weeks to determine what access would be granted to the defense, and what members of the defense team would be

permitted to attend. Ultimately, ODOC allowed two defense attorneys, two investigators, and a paralegal to take an escorted tour on February 28, 2023. The team was accompanied by 2–5 ODOC and Department of Justice staff members at all times. The defense was permitted to take photographs after agreeing to let ODOC officials view all photos taken upon the completion of our visit. Video was not permitted.

Upon completion of the defense team visit, ODOC officials suggested that if the defense could identify the specific areas at CCCF it wanted to video, ODOC would consider letting the defense return to CCCF for a subsequent visit allowing video to be taken. The defense had already identified those areas to ODOC multiple times, but did so again in response to ODOC's offer for a return visit. At the time of filing, we have not heard back from ODOC about scheduling a return visit for video purposes.

The government has had access to ODOC facilities and records since 2019, nearly four years ago. For example, discovery indicates government attorneys and members of the prosecution team were provided a tour of Coffee Creek Correctional Facility in August of 2019, when Special Agent Ackerman was allowed to take a variety of photos. BATES US00091946. In contrast, Mr. Klein's defense team was not given access to Coffee Creek Correctional Facility until February 28, 2023, and still continues to be

denied the access it requests. Indeed, even once the defense team was allowed permission to tour the building, it was initially told it would not be allowed to take photos of the facility and that an ODOC employee would be the only person allowed to take photos. Alternatively, ODOC suggested the defense could simply use the photos the government was permitted to take during the government's tour. After learning the government was granted different, less restrictive access than the defense, defense counsel advised ODOC that we would need to litigate that issue. Only then did ODOC relent, permitting defense investigators to take photographs (but not video) during our tour, as the government had been permitted to do on two previous occasions.

In summary, counsel for the government has been able to tour CCCF at least twice, that the defense knows about. Moreover, ODOC has repeatedly given the government access and opportunities that it intended to deny to Mr. Klein. Mr. Klein still has not been given the access that is constitutionally required—including video footage of various areas in the medical facilities—despite explaining to ODOC the necessity of such a task.

*2. The government's asserted discovery production timeline is wrong.*

As demonstrated in detail in the attached declaration of Russ Bretan, president of Court Discovery Management, the government's claims

regarding their discovery production timeline is simply wrong. The government's assertion that the first volume of discovery was made available to the defense for "for download on March 30, 2022," is incorrect. ECF 46 at 3. Due to the government's repeated failures to supply discovery in a format that that was technically functional and usable, Mr. Klein's defense team was not able to begin reviewing discovery until June 29, 2022, nearly three months after the government claims it provided discovery. In contrast, as highlighted previously, the government has had full access to the discovery and the investigation since at least 2019, if not sooner. Not only has defense counsel had access to the discovery materials for less than nine months, but the government has had access to them for several years.

*3. Mr. Klein's criminal defense team did not represent him during the civil proceedings.*

The government also claims a continuance is not necessary and will not prejudice Mr. Klein because if "there are additional witnesses who may provide context to that information, the defendant has known their identities since 2019," implying that Mr. Klein's participation in the previous civil suit eliminates the time his current counsel needs on a criminal trial that could result in a life sentence.

Unlike the government's lawyers, who have been a part of this investigation since 2019, current defense counsel for Mr. Klein has been a

part of the case for exponentially less time. Mr. McHenry began working on the case in a limited capacity in August of 2021, but was only given access to "select" unofficial discovery, meaning only the discovery the government "selected" to provide the defense during its efforts to resolve the case prior to indictment. Defense Counsel Amanda Thibeault has had even less time with the materials and was not authorized to begin work on Mr. Klein's case until August of 2022, less than a year prior to Mr. Klein's trial date. Although Mr. Klein has been a participant in related matters since their inception, his attorneys have not. Conflating Mr. Klein's participation in the proceedings with current criminal defense attorneys is erroneous.

> *4. The information the defense needs more time to obtain and develop is critical to Mr. Klein's defense.*

As discussed *supra*, unlike the government (who had access to ODOC facilities in 2019), defense counsel was only recently provided with a tour of CCCF. After reviewing the facilities, defense counsel understood the full importance of the records they had already been seeking from ODOC and filed this motion to continue accordingly.

One of the reasons the defense identified for needing additional time is because of the need for information regarding changes made to the physical layout, medical procedures, and staffing procedures in the relevant areas of CCCF since the time of the allegations in 2016 and 2017. It is

critically important that the factfinders in this case understand what the facility looked like and how the areas functioned at the time of the allegations.  The current layout and procedures are not an accurate reflection of the state of things in 2016 and 2017.

 The government claims, *inter alia*, that the defense already has this information in the discovery provided, referencing testimony from several individuals given during depositions in prior civil proceedings.  ECF 46 at 2–3.  As the government notes, these depositions were taken in the presence of civil counsel representing ODOC and Mr. Klein, but no lawyer representing Mr. Klein on any criminal charges attended.  *Id.*  In any event, these depositions contain nothing of substance regarding facility changes that occurred after 2017.[2]

---

 [2] Although the referenced depositions speak about changes made to the facilities, none of them are specific enough to answer the investigatory question the defense *must* answer in this case: what the facilities appeared like at the time Mr. Klein is being accused of committing crimes. For example, the deposition by Joe Bugher discusses that, generally speaking window sizes were increased (US00071823) and some of the windows were modified to allow additional visibility (US00071829). The deposition *does not* say what windows were modified. The remaining depositions are similar in their generalized, unhelpful comments on the issue at hand.  The accusations against Mr. Klein were said to have occurred in particular rooms, and thus it is critical to know what the particular rooms actually looked like at the time, not just a generalized estimate that, for example, some of the windows are now larger. The records that defense counsel has sought from ODOC are facilities records to demonstrate exactly what windows, doors, mirrors, cameras, and various other security features were

The government further claims that documentation of the changes made at CCCF have already been provided in the form of photographs produced in discovery. ECF 46 at 7–8. Specifically, the government references three sets of photographs. The first set, included in Volume 1 of discovery, were apparently taken "the closest in time to when the charged conduct occurred." *Id.* at 7. These photographs were taken in March of 2019, or two to three years after the timeframes alleged in the indictment. The second set of photos, also produced in Volume 1, were taken in August of 2019. The third set, produced earlier this week, were taken in February of 2023.

The government states it does not understand why the "more than 400 photographs" it has provided are insufficient for the defense purposes, given that a comparison of the photos produced (documenting 2019 – 2023) "reveals that Coffee Creek has made changes to the facility." *Id.* at 7. It is not clear to the defense how photographs taken in 2019 and beyond—two to six years after the timeframes alleged—are relevant or helpful to the question of what changes have been made to the facility since 2016 and 2017. The relevant inquiry is not simply "that Coffee Creek has made

---

changed, and when, including staffing levels and locations of staff-manned stations.

changes to the facility," (*id.*) but rather what those changes were, when they were made, and how the resulting layout differed from 2016 and 2017.

The government also asserts that the defense's need for further investigation is unnecessary because the government spoke to an unnamed witness in February of 2023 "who explained the changes made to the facility." *Id.* at 5. The government has not produced any reports from that interview. Further, even if this individual's information is more useful than the testimony from the depositions the government points to, the defense would still have an absolute duty to verify that the information given was accurate. Finally, it is unlikely that that the government's interview covered all of the topics and areas of inquiry the defense is interested in.

The government's claim that the defense "already has in his possession the information that demonstrates changes to the facility have been made and what they are" is flatly untrue. *Id.* at 8. In the nearly 100,000 pages of discovery produced, there is no documentation of how the facility looked and functioned at the time of the allegations vis-à-vis how it looked in 2019, or how it looks now.

**D. The need for the continuance is not the defense's fault, and not granting a continuance will prejudice the defendant.**

As set forth above and in Mr. Klein's previously-filed Motion to Continue, the need for a continuance is not the fault of the defendant, and

13

denying a continuance will prejudice the defense. Further support regarding the reasons for a continuance are set forth in the ex parte sealed declaration of counsel filed contemporaneously with the Defense Motion to Continue, and in the ex parte sealed declarations of defense team members that will be submitted contemporaneously with this Reply.

For all of these reasons, the defendant's motion should be granted.


Respectfully Submitted this 10th day of March, 2023:


| /s/ *Matthew G. McHenry* | /s/ *Amanda Alvarez Thibeault* |
|---|---|
| Matthew G. McHenry | Amanda Alvarez Thibeault |
| Counsel for Tony Klein | Counsel for Tony Klein |