NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:   (541) 465-6771
**CAMERON A. BELL, CSB #305872**
Trial Attorney—Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Cameron.Bell@usdoj.gov
Telephone:   (202) 802-7643
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 3:22-cr-00084-SI** |
| v. | **NOTICE OF INTENT TO INTRODUCE INTRINSIC EVIDENCE OR ALTERNATIVELY TO INTRODUCE OTHER ACTS EVIDENCE PURSUANT TO RULES 413 AND 404(b)** |
| **TONY DANIEL KLEIN,** Defendant. | |

The United States of America provides notice of its intent to offer evidence of Defendant Tony Klein's uncharged sexual assaults, as well as evidence of other sexual conduct.  This evidence is admissible on multiple bases.  First, all of the proffered evidence is intrinsic to the charged counts, because it is direct evidence of the four charged perjury counts.  Some of the evidence is also inextricably intertwined with the conduct charged in Counts 1 through 21, because it is necessary to provide a coherent and comprehensible story about the charged conduct.

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence             Page 1**

Additionally, all of the proffered evidence is also admissible pursuant to Federal Rules of Evidence 413 or 404(b); much of the evidence is admissible pursuant to both rules, but some is admissible only as 404(b) evidence.  The proffered evidence was provided to the defendant in March 2022 and has been supplemented with additional materials as the United States has learned of them.

# TABLE OF CONTENTS

I.      Introduction .................................................................................................................. 7

II.     Factual Background.................................................................................................... 9

III.    Facts Relevant to the Sexual Conduct Charged in Counts 1 Through 21 ......................... 10

   a.   Facts Relevant to Count 1: Sexual Assault of Adult Victim 1 ........................................ 11

   b.   Facts Relevant to Counts 2–4: Sexual Assaults of Adult Victim 2 .................................. 11

   c.   Facts Relevant to Counts 5–9: Sexual Assaults of Adult Victim 3 .................................. 13

   d.   Facts Relevant to Count 10: Sexual Assault of Adult Victim 4 ....................................... 16

   e.   Facts Relevant to Count 11: Sexual Assault of Adult Victim 5 ....................................... 19

   f.   Facts Relevant to Counts 12–14: Sexual Assaults of Adult Victim 6 .............................. 19

   g.   Facts Relevant to Count 15:  Sexual Assault of Adult Victim 7 ...................................... 21

   h.   Facts Relevant to Count 16:  Sexual Assault of Adult Victim 8 ...................................... 21

   i.   Facts Relevant to Count 17: Sexual Assault of Adult Victim 9 ....................................... 22

   j.   Facts Relevant to Count 18: Sexual Assault of Adult Victim 10 ..................................... 22

   k.   Facts Relevant to Count 19:  Sexual Assault of Adult Victim 11 .................................... 23

   l.   Counts 20 and 21:  Sexual Assaults of Adult Victim 12 ................................................. 24

IV.     Summary of Defendant's Uncharged Conduct the United States Seeks To Admit at
Trial…................................................................................................................................... 24

   a.   Uncharged Acts of Sexual Assault .................................................................................. 25

      i.    Conduct Toward Adult Victim 13 ................................................................................ 26

      ii.   Conduct Toward Adult Victim 14 ................................................................................ 28

      iii.  Conduct Toward Adult Victim 15 ................................................................................ 29

      iv.   Conduct Toward Adult Victim 16 ................................................................................ 30

      v.    Conduct Toward Adult Victim 17 ................................................................................ 31

      vi.   Conduct Toward Adult Victim 18 ................................................................................ 31

   b.   Other Evidence of the Defendant's Uncharged Acts........................................................ 32

      i.    Conduct Toward Adult Victim 19 ................................................................................ 32

      ii.   Conduct Toward Adult Victim 20 ................................................................................ 33

      iii.  Conduct Toward Adult Victim 21 ................................................................................ 34

V.      The Defendant's Uncharged Conduct Is Admissible ....................................................... 35

   a.   The Defendant's Uncharged Conduct Is Admissible Because It Is Direct Evidence of the
Charged Offenses .................................................................................................................. 35

     i.    The Uncharged Conduct Proves an Element of the Charged Perjury Offenses ............ 37

     ii.    The Uncharged Conduct Is Inextricably Intertwined with Charged Counts................. 39

  b.   In the Alternative, Evidence of the Defendant's Other Sexual Assaults Is Admissible Under Rule 413 ...................................................................................................... 41

  c.   Evidence of the Defendant's Other Acts Is Admissible Under Rule 404(b) ..................... 43

VI.   The Proffered Evidence Is Admissible Under the *LeMay* Factors and Rule 403 Because Its Probative Value Outweighs Any Risk of Unfair Prejudice ........................................................ 45

  a.   Evidence of the Defendant's Other Sexual Assaults Is Highly Probative and Not Unfairly Prejudicial................................................................................................................ 45

  b.   The Probative Value of Other-Acts Evidence Is Not Substantially Outweighed by Risk of Unfair Prejudice, Misleading the Jury, or Confusing the Issues ................................ 50

VII.   Limiting the Number of Victims Who Testify ................................................................. 52

VIII.  Limiting Instruction........................................................................................................ 53

IX.   Conclusion..................................................................................................................... 53

# TABLE OF AUTHORITIES

**Cases**

*Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020) ...................................................................... 42

*Doe ex rel Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000) .................................... 42, 47

*Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) ...................................................................... 42

*United States v. Charles*, 691 F. App'x 367 (9th Cir. 2017) .................................................... 46, 48

*United States v. Daly*, 974 F.2d 1215 (9th Cir. 1992) ...................................................................... 37

*United States v. Door*, 663 F. App'x 570 (9th Cir. 2016) .............................................................. 47

*United States v. Enjady*, 134 F.3d 1427 (10th Cir. 1998) ............................................................. 51

*United States v. Erramilli*, 788 F.3d 723 (7th Cir. 2015) .............................................................. 41

*United States v. Gatewood*, 601 F. App'x 580 (9th Cir. 2015) ..................................... 47, 48, 49

*United States v. Gorman*, 613 F.3d 711 (7th Cir. 2010) .................................................... 37, 38, 39

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) .............................................................. 50

*United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) ...................................................... passim

*United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016) .................................................... 36, 37, 38

*United States v. Miguel*, 87 F. App'x 67 (9th Cir. 2004) ............................................................. 51

*United States v. Proudfoot*, 2018 WL 6198274 (D. Or. Nov. 28, 2018) ................................. 36

*United States v. Proudfoot*, 837 F. App'x 590 (9th Cir. 2021) .................................................. 37

*United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) ................................................... 50

*United States v. Romero*, 282 F.3d 686 (9th Cir. 2002) ................................................................ 43

*United States v. Schaffer*, 851 F.3d 166 (2d Cir. 2017) ................................................................ 51

*United States v. Senffner*, 280 F.3d 755 (7th Cir. 2002) ............................................................... 36

*United States v. Sioux*, 362 F.3d 1241 (9th Cir. 2004) .................................................................. 42

*United States v. Skillman*, 922 F.2d 1370 (9th Cir. 1990) ........................................................... 51

*United States v. Tsinnijinnie*, 91 F.3d 1285 (9th Cir. 1996) ....................................................... 43

*United States v. Wiggan*, 700 F.3d 1204 (9th Cir. 2012) .............................................................. 50

**Statutes**

18 U.S.C. § 1623 .......................................................................................................... 7, 38

18 U.S.C. § 2246(3) ............................................................................................................ 41

18 U.S.C. § 242 ..................................................................................................................... 7

18 U.S.C. chapter 109A ..................................................................................................... 41

**Federal Rules of Evidence**

403 .......................................................................................................... 35, 45, 50, 51

404 ............................................................................................................................... 43

404(b) ......................................................................................................................... 2, 8

413 ........................................................................................................................ 2, 8, 41

609 ............................................................................................................................... 49

801 ..................................................................................................................... 26, 30, 52

## I.    Introduction

On March 8, 2022, a federal grand jury in the District of Oregon returned a 25-count Indictment against the defendant, who previously worked at the Coffee Creek Correctional Facility (CCCF or "Coffee Creek") as a prison nurse.  ECF No. 1.  In Counts 1 through 21, the defendant is charged with violating 18 U.S.C. § 242 by engaging in an array of sexual conduct toward 12 victims and thereby depriving them of their right to be free from cruel and unusual punishment. Those victims are identified as Adult Victims ("AVs") 1 through 12 in the Indictment.

Counts 22 through 25 of the Indictment charge the defendant with violating 18 U.S.C. § 1623 by lying about that sexual conduct and other conduct during a federal civil deposition. Specifically, Counts 22 through 25 stem from statements the defendant made during a deposition related to a consolidated group of federal civil lawsuits brought by AVs 1, 4, 6, 9, 10, and 11 (charged conduct), as well as two other victim-witnesses who have been previously identified as AVs 14 and 18 (uncharged conduct).  Counts 22 through 25 charge the defendant with falsely denying that, while employed by the Oregon Department of Corrections, he:

- had sexual vaginal intercourse with an incarcerated adult (Count 22);

- penetrated the vagina or anus of any adult incarcerated female using his penis, fingers, or tongue (Count 23);

- kissed any adult incarcerated female (Count 24);

- had any sexual contact with any adult female incarcerated person with the intent to abuse, arouse, or gratify his sexual desire (Count 25).

ECF No. 1, at 12-15.  In fact, the defendant engaged in the very conduct he denied with both the victims identified in the Indictment and also several other women who were incarcerated at Coffee

Creek.  The accounts of these women, as detailed below, reveal that the defendant engaged in extensive sexual acts and sexual contact (charged and uncharged) while employed at Coffee Creek, directly contradicting his statements, under oath, that such conduct never occurred.  The defendant's other acts of sexual assault, sexual contact, and kissing are thus intrinsic to the charged offenses, because it is direct proof of the perjury counts charged in Counts 22 through 25.

Additionally, some of the uncharged conduct is "inextricably intertwined" because it is necessary to provide a coherent and complete account of the charged conduct.  Because the proffered evidence of uncharged conduct is *direct* evidence of charged counts and/or inextricably intertwined with the charged counts, the evidence does not consist of "other" or extrinsic acts.

In the alternative, all of the same evidence is also admissible under Federal Rules of Evidence 413, 404(b) or both.  Evidence that the defendant committed other sexual *assaults* is admissible pursuant to Rule 413 because it is relevant and probative of the defendant's propensity to commit sexual assault.  In addition, evidence of all of the proffered similar acts is admissible pursuant to Rule 404(b) because it is probative of the defendant's motive, opportunity, intent, plan, knowledge, absence of mistake, and lack of accident.  The government seeks a pretrial ruling regarding all bases of admissibility, understanding that some evidence may ultimately be admitted for a limited purpose at trial with a corresponding jury instruction.

A chart is attached to this notice as Attachment A. It identifies each victim by AV number and briefly describes the defendant's conduct, whether the conduct is charged or uncharged in the Indictment, which perjury counts (if any) are implicated, and the applicable bases for admissibility. A copy of the chart with the victims' names will be filed under seal.

The matter is set for trial on July 10, 2023.

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**

## II.    Factual Background

From 2010 to 2017, the defendant was employed as a nurse at CCCF, the only women's prison facility in the state of Oregon.  In his role as an "Institution RN," the defendant worked in both the Minimum and Medium Security sides of the prison, providing medical care to the inmates at the facility.  In addition, the defendant, along with the other medical staff, was responsible for supervising the inmate-orderlies who worked in the medical unit, primarily doing janitorial duties.

The Indictment charges the defendant with sexually abusing vulnerable women under his supervision, while he was employed at CCCF.  In general, his victims (both charged and uncharged) were either female inmates who were seeking medical treatment or female inmates who worked as orderlies in the medical unit, a position that gave the defendant significantly more access to them.  The victims that the defendant assaulted while he provided, or under the guise of providing, medical treatment often tried—successfully—to avoid the defendant afterwards.  The victims who worked as medical orderlies, however, could not avoid the defendant during their shifts, and he subjected them to a barrage of lewd and sexual comments, innuendo, gestures, and, ultimately, sexual assaults, while they worked.

By virtue of his position as a medical provider, the defendant was often alone with his victims; he assaulted many of his victims before, during, or after he provided medical treatment.  But, for the women who worked in the medical unit, the defendant manufactured reasons to get his victims alone and in secluded areas—in isolated medical rooms, in janitor's closets, or behind privacy curtains.  There, he would escalate his abuse, forcing his hands onto and into his victims' clothing, forcing them to touch his genitals, or orally and vaginally assaulting them.  The defendant made clear to his victims, explicitly and implicitly, that he was in a position of power and that they would not be believed if they tried to report his abuse.  Because they feared being punished if they

fought back, said "no," or reported his conduct, most of the defendant's victims submitted to his unwanted advances or otherwise endured the defendant's assault until he was done.  The defendant also assaulted many victims, whether or not they worked in the medical unit, under the guise of providing medical treatment, for example, by touching them for his sexual gratification during a medical examination or while he was treating them for pain.

During the course of the investigation, the United States identified other women, in addition to AVs 1 through 12, who were incarcerated or formerly incarcerated and worked as orderlies in the medical unit or sought medical treatment from the defendant.  Some of these women revealed that the defendant assaulted them.  Others, particularly those who worked as medical orderlies, reported that the defendant sexually assaulted them *and* that they had witnessed the defendant's sexual conduct toward other women.  More still described how the defendant attempted to assault them or made sexually suggestive comments toward them, testing whether and how strongly they would object to his sexual advances.

### III.    Facts Relevant to the Sexual Conduct Charged in Counts 1 Through 21

The United States expects the evidence at trial to show the defendant engaged in unlawful sexual conduct toward multiple women at Coffee Creek, including the victims who are identified in the Indictment as AVs 1 through 12.  The purpose of the summaries below is to aid the Court in its determination as to the admissibility of the additional uncharged evidence that is proffered as intrinsic evidence or, alternatively, as other-acts evidence pursuant to Federal Rules of Evidence 413, 404(b), or both.  It is not an exhaustive recitation of all of the evidence the United States expects to introduce at trial.  For clarity, the legal bases for admissibility are set forth in the facts below and Attachment A, and they are further discussed below in sections V and VI.

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**          **Page 10**

### a.  Facts Relevant to Count 1: Sexual Assault of Adult Victim 1

Before the defendant sexually assaulted AV1 in September 2017, he interacted with her on various occasions and made sexual comments toward her.  The United States expects AV1 will testify about some of the defendant's comments and actions toward AV1 leading up to the charged assault, such as telling AV1 that she "looked good today," and offering her items such as a stick of gum, which inmates were not allowed to have in the prison.  On one occasion, before the charged assault, the defendant came to the door of AV1's cell, where he touched his chest and quietly told AV1 that she should "rub her nipples."  This evidence is inextricably intertwined with the charged assault because it explains and provides context for what happened about a month later; in the alternative, it is admissible under Rule 404(b).

In September 2017, AV1 asked for a medical appointment related to a wrist injury.  When AV1 arrived at the medical unit, the defendant was there with another nurse. The defendant then sent the other nurse to get coffee or take a break.  When the defendant began examining AV1's wrist, she noticed that his penis was "bulging" out of his pants and partially erect.  The defendant exposed his penis, grabbed AV1's hand, and said something to the effect of, "What do you think about this?"  The defendant used AV1's hand to stroke his erect penis.  Then, he turned AV1 around, pushed her head down, bent her over the exam table, and used his penis to penetrate her vagina from behind.  When the defendant was finished, he pulled up his pants, asked AV1 if she was "okay" and then offered her an Ativan, which she was not prescribed.  This conduct is charged in Count 1 of the Indictment.

### b.  Facts Relevant to Counts 2–4: Sexual Assaults of Adult Victim 2

AV2 was undergoing treatment for breast cancer when the defendant sexually assaulted her on two separate days in August and September of 2017.  In addition to her testimony about the

assaults, AV2 will testify about some of the defendant's comments at medical appointments that pre-dated the assaults; for instance, he once told her words to the effect of, "You're still pretty with just one boob." This testimony is inextricably intertwined with the charged conduct, as it will provide necessary context about interactions in the weeks and months before the charged assaults.

In August 2017, AV2 went to the medical unit so that she could have medical staff "flush" the chemo port that she had in her upper chest. During the treatment, the defendant cupped his hand over her breast and groped her. Then, he exposed his erect penis to her and asked, "What are we going to do about this?" AV2 deflected and left the medical unit when she could. This conduct is charged in Count 2 of the Indictment.

In September 2017, AV2 was scheduled to receive a monthly injection as part of her cancer treatment. When the defendant found the necessary medication, he called her housing unit to notify the staff there that AV2 could be sent to medical. She was permitted to wear shorts to walk to the medical unit, which AV2 understood to be a directive from the defendant; inmates were usually required to wear pants to go to the medical unit, unless the medical staff needed to access an area of an inmate's body that would be more easily accessible in shorts, such as the knee or upper leg. Once AV2 arrived, the defendant directed her to lie back on the exam table, so that he could inject the medication into her abdomen. Similar to his conduct with AV1, he offered AV2 an Ativan, which was not prescribed. After the defendant sterilized the area for the injection, he reached under the waistband of AV2's shorts and underwear, and digitally penetrated her vagina. AV2 froze and did not react. This conduct is charged in Count 3 of the Indictment.

After using his fingers to penetrate her vagina and then completing the injection, the defendant helped AV2 off the exam table, and then turned her around and pushed the front of her body against the exam table. He stood behind her, pressing against her. He pulled down AV2's

shorts and used his penis to penetrate her vagina from behind. When he was finished, the defendant told AV2 that if anyone asked why she was wearing shorts, she should say the defendant had been looking at her knee. This conduct is charged in Count 4 of the Indictment.

### c.   Facts Relevant to Counts 5–9: Sexual Assaults of Adult Victim 3

The defendant had extensive opportunities to interact with AV3 before the charged conduct occurred because she worked as an orderly in the medical unit. Those interactions began with the defendant making sexual comments toward AV3 and later escalated to the defendant committing sexually explicit conduct toward her, both charged and uncharged.

In addition to the charged conduct, which serves as the basis for Counts 5 through 9 of the Indictment, the United States intends to offer two prior incidents in which the defendant engaged in sexual conduct toward AV3. AV3 will testify that around 2015, the defendant kissed her. This evidence is direct proof of Counts 24 and 25 of the Indictment; it is also admissible under Rule 404(b). AV3 will also testify that after that incident but before the charged conduct, the defendant used his fingers to penetrate AV3's vagina. That evidence is direct proof of Counts 23 and 25; it is also admissible under Rules 413 and 404(b). Additionally, this evidence is inextricably intertwined with the charged conduct; it preceded the defendant's other conduct toward AV3, which is charged in Counts 5 through 9, and it thus completes the story and offers a coherent narrative, providing the jury with the necessary background and context to understand his later assaults on her.

**Uncharged Conduct**

The defendant's uncharged conduct toward AV3 preceded the conduct that is charged in Counts 5 through 9. AV3 first encountered the defendant after she got a job working as an orderly in the medical unit. Both AV3 and the defendant worked on the weekends—when there were

fewer medical appointments and thus fewer medical staff working. AV3 worked alongside other inmate-orderlies, including AVs 13, 14, and 20.[1] The defendant subjected all four women to sexual comments, jokes, and innuendo, as well as his sexual advances, touching, and conduct; as a result, all four witnessed the defendant's conduct toward each other. The defendant's conduct toward AVs 13, 14, and 20 is discussed in greater detail below.

During AV3's work shifts, the defendant talked with her and told inappropriate jokes, and he periodically singled her out to help him with cleaning a room or completing another janitorial task in the unit. Even though it violated prison rules for staff to share items with inmates, over time, the defendant began bringing AV3 small gifts such as candies, permanent markers, gel pens, and magazines related to hunting and guns. On one occasion, he gave her a pack of syringes.

As AV3 continued to work in the medical unit, the defendant's behavior toward her escalated from sexual comments to sexual conduct. On one occasion, he summoned her into one of the secluded rooms in the medical unit, where he gave her a piece of candy. As she unwrapped it, he leaned down and kissed AV3 on the lips. This conduct is direct evidence of Counts 24 and 25; it is also admissible under Rule 404(b). On another occasion, AV3 and AV14 were cleaning a room of the medical unit, while the defendant supervised. The defendant was grabbing at AV14, but after she left the room, the defendant turned his attention to AV3 and said, "I bet I could get you as wet as that mop," referring to his sexual prowess. The defendant then pushed AV3 against

---

[1] As discussed in greater detail below, the defendant made sexual comments and sexually touched many of the women who worked as orderlies, but AV3 especially noticed his behavior toward AV14. For instance, AV3 observed that the defendant often touched AV14, put his hands into the pockets of her pants, and occasionally pulled her hair. The United States intends to offer testimony about what AV3 witnessed toward AV14 as direct evidence of Count 25.

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**                    **Page 14**

the wall, put his hand into her pants, and penetrated her vagina with his fingers. This incident is direct evidence of Counts 23 and 25, and admissible under Rules 413 and 404(b).

After that incident and until March 2017, as discussed below, the defendant focused his attention primarily toward AV14 rather than AV3. Nevertheless, he continued his sexually explicit behavior toward AV3 when he was alone with her.

**Charged Conduct**

On or about March 26, 2017, AV3 went to the medical unit to have her knee examined after a surgery. At the time, she was using a wheelchair while she recovered from the surgery. The defendant escorted her into the exam room, but when AV3 tried to stand up from the wheelchair, he pushed her down. The defendant then exposed his penis and pushed it against AV3's lips. AV3 leaned back to avoid the contact with the defendant's penis. The defendant then masturbated in front of AV3 while she sat in the wheelchair. This conduct is charged in Count 5 of the Indictment.

In approximately August 2017, while AV3 was working in the medical unit, the defendant summoned her into an office, where he exposed his penis. When AV3 pushed him away, the defendant pulled her closer to him and began pushing her head toward his penis. AV3 submitted and began to perform oral sex on the defendant, who put his hand on the back of her head. When AV3 twice tried to pull away from the defendant, he pushed on her head, forcing it back down on his penis. This conduct is charged in Count 6 of the Indictment.

In September 2017, the defendant summoned AV3 to the triage unit, where he talked with her for approximately 20 minutes. As she was getting ready to leave, the defendant walked closer to AV3, tipped her head up, and kissed her. Next, the defendant unbuttoned AV3's pants and guided her over to the exam table, where, as he had done with AVs 1 and 2, he stood behind her,

pushed her over the exam table, and used his penis to penetrate her vagina from behind.  This conduct is charged in Count 7 of the Indictment.

In October 2017, AV3 was suffering from an ear infection, and the defendant provided her medical treatment.  While she sat on the exam table, he stood over her, and she could feel his erect penis against her leg.  The defendant used the otoscope to examine both of her ears, wrapping the cord tightly around her neck and pulling it taut.  Afraid the defendant was going to strangle her, AV3 froze, but the defendant said, "You liked that."  The defendant kissed her and pinched both of her nipples, and then he exposed his penis.  Knowing what he wanted and afraid of what he might do, AV3 touched his penis and began performing oral sex.  Soon after, AV3 pulled away and the defendant let her stop.  This conduct is charged in Count 8 of the Indictment.

In November 2017, AV3 was in segregation and sought medical treatment for ear irritation. While security staff was out of the room, the defendant was alone with AV3 in the segregation exam room.  While AV3's hands were cuffed behind her back, the defendant pinched her nipples, winked at her, and bit his lip.  During that interaction, the defendant also caressed her neck.  This conduct is charged in Count 9 of the Indictment.

### d.  Facts Relevant to Count 10: Sexual Assault of Adult Victim 4

AV4 worked in the medical unit as an orderly, from approximately November 2014 to mid-March 2015.  During that time, just as he had with AV3, the defendant had multiple opportunities to interact with AV4; during those interactions, he made several sexual comments to AV4 and engaged in sexually explicit behavior toward her before the incident charged in Count 10 of the Indictment.  Her testimony about the prior conduct is direct evidence of Counts 23, 24, and 25. This testimony is also inextricably intertwined with the charged conduct, as it is necessary to demonstrate the nature of their interactions and the manipulative power dynamic between the

defendant and AV4, thereby providing context to the charged conduct. In the alternative, most of the defendant's prior conduct toward AV4 is admissible pursuant to Rule 413, and all of the conduct is admissible under Rule 404 (b).

**Uncharged Conduct**

The defendant's inappropriate behavior began almost immediately after AV4 started working in the medical unit. Early on, the defendant complimented her appearance and brought her small gifts, including hair clips, coffee, and food items. The defendant's conduct toward AV4 soon turned explicitly sexual. He often rubbed against her when he walked past her and sometimes grabbed her buttocks. On more than one occasion, the defendant pressed his body against AV4's, and she could feel that his penis was erect. Sometimes he pulled down her pants and rubbed his penis directly against her buttocks. These instances in which the defendant either touched AV4's buttocks or used his penis to touch her body are direct evidence of Count 25. They are also admissible under Rules 413 and 404(b). On at least one occasion, the defendant kissed her; evidence of kissing is both direct evidence of Count 24, and admissible under Rule 404(b). The defendant also periodically grabbed his erect penis through his scrubs, or showed her that his penis was erect and pressed against his abdomen, tucked into his waistband. These interactions are admissible under Rule 404(b); additionally, the defendant's grabbing his erect penis is direct evidence of Count 25 and admissible on that basis as well.

The defendant engaged in numerous instances of sexual conduct toward AV4—so many that AV4 has struggled to parse out which conduct occurred in any single instance. [2] Still, she will

---

[2] At trial, the United States may seek to elicit testimony about, or AV4 may refer to, the defendant's other (uncharged) sexual conduct toward AV4, in addition to the four specific instances described here. As AV4 previously testified in a federal civil deposition, there were several instances in which AV4 performed oral sex on the defendant; she estimated there were approximately a dozen.

describe at least four specific instances of sexual conduct that she remembers clearly.  On one occasion, AV4 was cleaning a medical room when the defendant came behind her and pressed against her.  Then he grabbed her hips, slid his hand into her pants, and used his fingers to penetrate her vagina.  On another occasion, while AV4 was cleaning a vent in one of the doctor's offices, the defendant slid his fingers into her jeans and used his fingers to penetrate her vagina.  AV4 tried to squeeze her legs closed as tightly as she could and tried to finish cleaning the office.  Both of these instances are direct evidence of Counts 23 and 25; they are also admissible pursuant to Rules 413 and 404(b).  Another time, when AV4 was cleaning an office in the medical unit, the defendant entered the room, put his hand on the back of her head, and pushed her head down toward his erect and exposed penis.  Knowing what he wanted, AV4 began performing oral sex on him.  This is direct evidence of Count 25; it is also admissible pursuant to Rules 413 and 404(b).  Finally, at some point before May 2017 and after AV4 no longer worked in the medical unit, the defendant summoned her into one of the medical triage rooms and told her words to the effect of, "I want to see you touch yourself."  AV4 was uncomfortable, but she complied with the defendant's direction. As she did so, the defendant then exposed his erect penis and masturbated.  This, too, is direct evidence of Count 25.

**Charged Conduct**

AV4 went to the minimum-security side of the prison in May 2017, and she tried to avoid interacting with the defendant.  On one occasion, however, while she was in the medical unit with the defendant, he vaginally raped her.  When he did so, AV4 told him to "stop," but he refused.

---

Additionally, there was at least once instance in which the defendant did—or attempted to— perform oral sex on AV4.  Transcripts of the deposition and memoranda documenting the interviews of AV4 have been disclosed to the defense.

As a result of the defendant's assault, AV4 felt pain and experienced vaginal bleeding. This conduct is charged in Count 10 of the Indictment.

### e.   Facts Relevant to Count 11: Sexual Assault of Adult Victim 5

AV5 encountered the defendant before and after he assaulted her. AV5 will testify that during those other interactions, she noticed the defendant was extremely nice to the inmates, and she described him as the "friendliest" of the medical staff. In late 2016, AV5 sought medical treatment from the defendant to address her back pain. After showing her some stretches, the defendant directed AV5 to lie facedown on the exam table, and he pushed on her back. Then he moved his hands farther down AV5's back, and she ultimately felt the defendant slide his hand into her pants and put his fingers in "the crack" of her buttocks, which she had never before experienced when seeking treatment for her back pain. This conduct is charged in Count 11 of the Indictment.

On another occasion in which AV5 sought medical treatment from the defendant, she noticed that he stood very close to her—so close that she could feel his erect penis pressing against her, through his pants. The interaction made her feel uncomfortable.[3] This conduct is direct evidence of Count 25. It is also admissible pursuant to Rules 413 and 404(b).

### f.   Facts Relevant to Counts 12–14: Sexual Assaults of Adult Victim 6

AV6 had a heart condition that required frequent medical treatment, and she interacted with the defendant multiple times during her incarceration; she estimated that she saw the defendant for medical care approximately eight to ten times during her final seven months at Coffee Creek. The defendant is charged with assaulting AV6 on three separate occasions, though the defendant

---

[3] This incident may have occurred after the conduct charged in Count 11.

engaged in sexually inappropriate conduct toward AV6 during additional medical visits. For example, when he used his stethoscope, he put it under her shirt and bra, whereas her other medical providers typically listened to her heartbeat over her clothes. The defendant typically stood very close to AV6, so that his body was close to or touching hers, or he touched her body unnecessarily. The United States anticipates that AV6's testimony will include descriptions of this conduct, as it is inextricably intertwined with the charged conduct and directly relevant to the context in which the charged assaults later occurred. This earlier conduct is also direct evidence of Count 25 and admissible pursuant to Rule 404(b).

Each of the three assaults occurred when AV6 was seeking treatment related to her heart condition. The first time the defendant assaulted her, AV6 was in the medical unit and the defendant was looking at something underneath the desk. As he emerged, he grabbed AV6's foot to help himself stand up. Then, he ran his hand up her ankle, inner thigh, and across her vagina, over her clothes. This conduct is charged in Count 12 of the Indictment. On another occasion, the defendant stood between AV6's legs while he listened to her heartbeat, and she noticed he had an erection. The defendant began blowing air into AV6's ear and kissing her neck, chest, and mouth. Then, the defendant grabbed AV6's hand and put it on his erect penis, which was exposed from the top of his scrub pants. He used her hand to rub his penis. This conduct is charged in Count 13 of the Indictment. Another time AV6 was seeking medical treatment, the defendant cupped AV6's breast in his hand while he used his stethoscope to listen to her heartbeat. This conduct is charged in Count 14 of the Indictment.

///

///

///

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**          **Page 20**

### g.   Facts Relevant to Count 15:  Sexual Assault of Adult Victim 7

**Charged Conduct**

AV7 suffered from a bleeding disorder and sought medical treatment from the defendant after experiencing severe rectal bleeding.  On one occasion, when AV7 went to the medical unit complaining of rectal bleeding, the defendant used his fingers to penetrate her vagina.  AV7, who was not seeking treatment related to her vagina, told him that she wanted him to stop.  The defendant continued using his fingers to penetrate her vagina.  When he finally stopped, the defendant told AV7 that she was going to need to get a colonoscopy outside of the facility, and he made a note in her medical chart.  This conduct is charged in Count 15 of the Indictment.

**Uncharged Conduct**

In addition to the charged incident, AV7 may testify about another incident in which she was experiencing chest pain but did not want to seek medical attention, fearing she would encounter the defendant.[4]  When she finally decided to be seen by medical staff, AV7 discovered that the defendant was working.  Although he and another nurse began the evaluation of AV7, the other nurse soon stepped out of the room, leaving AV7 alone with the defendant.  While the defendant was putting electrocardiogram (EKG) tabs onto AV7's upper body, he reached under her sports bra and grabbed her breasts, massaging them and twisting her nipples.  This conduct is direct and relevant evidence of Count 25; it is also admissible pursuant to Rules 413 and 404(b).

### h.   Facts Relevant to Count 16:  Sexual Assault of Adult Victim 8

The defendant assaulted AV8 while he examined her in the medical unit early one morning. Once she arrived in the medical unit, the defendant called her into the exam room and asked her

---

[4] At this time, the United States does not know whether this incident occurred before or after the charged incident.

to pull up her pant leg so that he could examine her knees.  Because AV8 could not pull her jeans high enough to expose her knees, the defendant directed her to take her pants off, and he gave her something to drape over herself.  As AV8 sat on the exam table, the defendant stood in front of her.  He placed both of his hands on her legs and moved his hands up her inner thighs.  Then, he penetrated her vagina with his fingers.  This conduct is charged in Count 16 of the Indictment.

### i.  Facts Relevant to Count 17: Sexual Assault of Adult Victim 9

On the day the defendant sexually assaulted her, AV9 was in the medical unit to get a new ACE bandage for her wrist.  The defendant re-wrapped her bandage and asked, "There.  Is that better?"  AV9 told him it was.  Then, the defendant reached between her legs and rubbed her vagina, over her clothes, and repeated, "There, is that better?"  AV9 jumped off the exam table and quickly left the exam room.  This conduct is charged in Count 17 of the Indictment.

### j.  Facts Relevant to Count 18: Sexual Assault of Adult Victim 10

On the day the defendant sexually assaulted AV10, she was seeking care for a laceration on her finger.  The defendant told her that before he examined her wound, he needed to perform a physical examination.  He stood behind AV10, directed her to bend forward, and pressed his body against hers.  AV10 felt the defendant's erection, so she leaned away from him.  In response, the defendant grabbed her hips and pulled her toward him.  Both the defendant and AV10 were fully clothed, but she could feel his erection pressed against her buttocks.  The defendant reached his hands under AV10's shirt and touched the sides of AV10's breast, over her sports bra.  When he stopped, he directed AV10 to sit on the exam table so he could change her bandage.  The defendant then put the medical supplies in AV10's lap; while he reached for the various supplies, he brushed his hands against AV10's legs and genital area as he changed her dressing.  This conduct is charged in Count 18 of the Indictment.

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**          **Page 22**

### k.  **Facts Relevant to Count 19:  Sexual Assault of Adult Victim 11**

AV11 had at least two interactions with the defendant in which he engaged in sexual conduct toward her.  The first occurred in 2013 or 2014, during a prior incarceration, and the second is charged as Count 19 of the Indictment.  The earlier incident is direct evidence of Counts 23 and 25.  Additionally, it provides necessary context and specifically explains the defendant's statement to AV11 during the charged assault.  The earlier incident is also admissible pursuant to Rules 413 and 404(b).

**Uncharged Conduct**

Around 2013 or 2014, AV11 was exercising on her housing unit with two other inmates, including AV16, when AV11 was called to the medical unit so that she could use medical tools to clip her toenails.  Because she had been exercising, she was permitted to go to the medical unit wearing shorts, which ordinarily was not allowed.  After he clipped her toenails, the defendant caressed her leg and worked his hand up toward her genital area, reaching under her shorts and rubbing her thigh.  He then reached into her underwear and penetrated her vagina with his fingers. When he was done, AV11 returned to her housing unit and, still in shock, told AV16 what had just occurred.

**Charged Conduct**

On the day of the charged assault, AV11 went to the medical unit for treatment related to her foot.  While she was there, the defendant leaned forward and touched her genital area, over her pants, and cupped her vagina with his hand.  The defendant told her words to the effect of, "Why don't you come back wearing shorts?"  This conduct is charged in Count 19 of the Indictment.

Because of the defendant's comment, AV11 understood him to be referring to the assault years earlier, when she was wearing shorts and he penetrated her vagina with his fingers.

### l.   **Counts 20 and 21:  Sexual Assaults of Adult Victim 12**

The defendant sexually assaulted AV12 while she was seeking medical treatment on two separate occasions.  During the first, the defendant called AV12 to the medical unit to discuss the lab results of a recent medical test.  At that appointment, he directed her to lie down on the exam table and pull up her shirt so that he could examine her stomach.  While he did so, the defendant also touched her breasts over her sports bra.  This conduct is charged in Count 20 of the Indictment.  On another occasion, AV12 was experiencing chest pain and went to the medical unit where the medical providers performed an EKG.  While the defendant was connecting the electric probes, he touched her breasts and rubbed her genitals over her clothes.   This conduct is charged in Count 21 of the Indictment.

## IV.   **Summary of Defendant's Uncharged Conduct the United States Seeks To Admit at Trial**

The United States also intends to offer at trial evidence of the defendant's sexual conduct toward women, previously incarcerated at Coffee Creek, who are not listed in the Indictment.  The United States has identified nine additional women, referred to as AVs 13 through 21, whom the defendant either sexually assaulted (as defined by Rule 413) or otherwise sexually touched or propositioned through words or actions.  Much of this uncharged sexual conduct is direct evidence of the defendant's perjury, charged in Counts 22 through 25 of the Indictment.  Alternatively, the evidence is admissible under Rule 413, Rule 404(b), or both.

### a. Uncharged Acts of Sexual Assault

At trial, the United States intends to offer evidence of the defendant's sexual assaults and other relevant behavior toward AVs 13 through 18.  This evidence is admissible for four independent reasons.  First, all of the uncharged conduct toward AVs 13 through 18 is direct evidence of Counts 22 through 25, which charge the defendant with lying about his sexual behavior.  In addition, with one exception,[5] all of this evidence is admissible pursuant to Rule 413, because it is evidence of the defendant's other sexual assaults.  Third, all of the evidence is admissible pursuant to Rule 404(b).[6]  Finally, the witnesses who will testify about the defendant's uncharged sexually assaultive behavior also, as noted below, witnessed some of the conduct charged in Counts 1 through 21 of the Indictment.  In that way, some of this evidence is inextricably intertwined with the charged conduct; AVs 13 through 18 observed the defendant's behavior and recognized it as sexual and inappropriate because of what they themselves had experienced of the defendant's sexual comments, conduct, and assaults.  Consequently, the United States anticipates it will call these witnesses to testify at trial about Counts 1 through 21; their additional testimony about the defendant's uncharged conduct toward them will therefore not significantly prolong the trial.

///

///

---

[5] The incident in which the defendant wrapped a stethoscope around AV14's neck and pulled it taut may not be included within the meaning of "sexual assault" as defined by Rule 413.
[6] This notice does not contain a separate, Rule 404(b) legal analysis of the evidence of the defendant's sexual assaults because the analysis overlaps substantially with the analysis under Rule 413.  This notice does, however, contain a separate section analyzing the admissibility under Rule 404(b) of the defendant's other sexual conduct that does not rise to the level of an "assault" as defined in Rule 413.

### i. Conduct Toward Adult Victim 13

AV13 worked as an orderly in the medical unit with AV3 and AV14.  AV13 will testify at trial about what she observed of the defendant's behavior toward AV3 and, if permitted, toward AV14.  She will also testify about statements that AVs 3 and 14 both made about their assaults, near the time that they occurred.[7]  In addition, the United States intends to offer AV13's testimony about the occasions on which the defendant assaulted her, because it is direct evidence of Counts 23 and 25.  Evidence of the defendant's sexual assaults of AV13 is also admissible under Rules 413 and 404(b).  Finally, AV13's testimony about her own assaults is inextricably intertwined with the charged conduct: when AV13 witnessed some of the defendant's sexual behavior toward AVs 3 and 14, she recognized it as inappropriate and sexually suggestive because it was very similar to how the defendant began his sexual behavior toward her.  Because of what AV13 witnessed and heard about the defendant's assaults of AV3 (and AV14), the United States expects that AV13 will testify at trial, whether or not she is permitted to testify about the assaults the defendant perpetrated against her.

Early into AV13's tenure as an orderly, the defendant asked her whether there was "anything he could do for her," which she understood as him offering her sexual favors; she did not pursue that offer.  Nevertheless, the defendant's behavior became sexual.  Just as the defendant did with the other female orderlies, he subjected AV13 to a consistent barrage of sexual comments and conduct.  AV13 witnessed the defendant press or rub his body against AV3's and AV14's, and she also experienced that conduct herself.  The defendant sometimes dropped something on

---

[7] The United States expects that, should AVs 3 and 14 testify about their assaults and be subjected to cross-examination that implies that they have fabricated their accounts, the United States will offer AV13's testimony about these witnesses' prior consistent statements; such testimony would then be admissible pursuant to Fed. R. Evid. 801(d)(1)(B).

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**          **Page 26**

the ground, pretending it was accidental, and then asked AV13 to bend over and retrieve it.  On more than one occasion, the defendant said that a secluded medical room needed to be cleaned, which AV13 understood as him luring or directing her to an area where the defendant might try to assault her without anyone seeing.  In those situations, she tried to clean the room as quickly as possible and leave immediately.

The defendant exposed his penis to AV13 about five to eight times; this conduct is admissible under Rule 404(b).  The defendant also pressed his body and penis against her numerous times.  This conduct is direct evidence of Count 25, and it is also admissible under Rules 413 and 404(b).

In addition, AV13 will testify about three specific instances when the defendant sexually assaulted her.  During all three interactions, AV13 did not want the defendant to touch her and did not give him permission to do so.  On one occasion, the defendant followed AV13 into the janitor closet, where he pressed his erection against her and forced his hand down her pants, ultimately penetrating her vagina with his fingers.  In response, AV13 turned around, hit the defendant in the chest, and walked out of the closet.  The defendant's conduct in this incident is direct evidence of Counts 23 and 25; it is also admissible under Rules 413 and 404(b).  On another occasion, the defendant forced his hand into AV13's pants and underwear, and he touched her anus with his finger.  This conduct is relevant and direct evidence of Count 25.  On the third occasion, the defendant dropped something for AV13 to pick up, and when she bent down, the defendant grabbed her hair and pulled her toward him.  As he did so, he caused her face to brush against his exposed and erect penis, causing AV13 to fear the defendant was about to rape her.  She stood up, pushed him away, and walked out of the room.  This conduct is direct evidence of Count 25; it is also admissible under Rules 413 and 404(b).

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**          **Page 27**

### ii. Conduct Toward Adult Victim 14

The United States intends to offer evidence of the defendant's sexually explicit conduct toward AV14, as well as four instances in which the defendant sexually assaulted her. This conduct is direct of Counts 22, 23, and 25. The evidence is also inextricably intertwined with other witness testimony, such as that of AV3, who observed the defendant's conduct toward AV14 and was sometimes directly affected by it: on at least one occasion, AV3 was assaulted after AV14 rebuffed the defendant.

While AV14 worked as an orderly in the medical unit, she was a frequent target of the defendant's sexual comments and conduct. In addition, AV14 worked with other women, including AV3, AV13, and AV21; all four women observed the defendant's conduct toward the others. The defendant's conduct toward AV14 began with him complimenting her and making sexually explicit comments that he was attracted to her. Then, he started rubbing against her body or pressing his body against hers, pulling her hair, commenting on her hairstyle, and attempting to kiss her. On one occasion, just as he did with AV3, the defendant wrapped his stethoscope around AV14's neck and pulled it taut so that AV14 looked up at him; when she did, she observed the defendant bite his lip as though he was sexually aroused. All of this conduct is admissible pursuant to Rule 404(b). In addition, the defendant frequently grabbed AV14's buttocks. This conduct is direct evidence of Count 25, and is also admissible pursuant to Rules 413 and 404(b).

Over time, the defendant's behavior became more aggressive, and AV14 will testify that the defendant sexually assaulted her four times. During all four incidents, AV14 did not want the defendant to touch her and she did not give him permission to do so. First, AV14 was cleaning alongside her work partner, AV3. The defendant walked behind AV14, forced his hand into her pants, and used his fingers to penetrate her vagina. This incident is direct evidence of Counts 23

and 25; it is also admissible under Rules 413 and 404(b). On another occasion, the defendant entered a secluded area in the medical unit where AV14 was standing at a counter, folding laundry. The defendant approached AV14 from behind, pushed her over the counter, pulled down her pants, and performed oral sex on her. She submitted to the defendant's will, hoping it would be over quickly. This is direct evidence of Counts 23 and 25, and is also admissible pursuant to Rules 413 and 404(b). Another time, the defendant summoned AV14 into a smaller room in the medical area, where he exposed his erect penis and pressed her head down toward it, causing her to perform oral sex on him—direct evidence of Count 25, as well as 413 and 404(b) evidence. On the final occasion, AV14 sought medical treatment from the defendant. After he scheduled her to see a doctor the next day, he put his hands on her hips, turned her to face the exam table, pulled down her pants, and used his penis to penetrate her vagina from behind. AV14 froze, as the defendant's assault caused her to relive the trauma of having been sexually abused during her childhood. This incident is direct proof of Counts 22, 23, and 25 of the Indictment, and is also admissible pursuant to Rules 413 and 404(b).

### iii. Conduct Toward Adult Victim 15

AV15 worked in the medical unit as an orderly, where she was a target of the defendant's sexual comments and conduct. Additionally, because she sometimes worked alongside AV4, AV15 witnessed the defendant's conduct toward AV4. The United States expects that AV15 will testify at trial about what she witnessed related to AV4, because it is relevant evidence that tends to prove Count 10. Additionally, the United States intends to offer evidence about how the defendant engaged in sexually explicit behavior toward AV15, ultimately culminating in three separate occasions of sexual assault. Just as he had with many of his other victims, the defendant began his sexual behavior toward AV15 with explicit comments—specifically by calling AV15 a

"hot, sexy redhead."  Then, on three separate occasions, the defendant sexually assaulted AV15 by coercing her to perform oral sex on him.  Each time, the defendant exposed his penis to AV15, and then he asked her to touch or put her mouth on his penis.  Each time, AV15 made clear that she did not want to, but the defendant persisted until AV15 finally relented.  Testimony about the assaults of AV15 is direct evidence of Count 25, and is also admissible pursuant to Rules 413 and 404(b).

### iv.  Conduct Toward Adult Victim 16

The United States intends to offer the testimony of AV16, which is relevant to prove Counts 23 and 25 and also admissible pursuant to Rules 413 and 404(b).  In addition, AV16 is an "outcry witness" whose testimony will corroborate AV11's; AV16 was one of the first people to whom AV11 reported her 2013 or 2014 assault—an assault in which the defendant penetrated AV11's vagina (relevant to Count 23), and an assault that is also inextricably intertwined with Count 19.[8] Furthermore, AV16 was herself assaulted by the defendant when she sought treatment from him for hip bursitis.  In general, when she sought medical treatment from the defendant, AV16 noticed that the defendant was particularly "handsy," and he touched her more than she thought was necessary.  During bursitis-related exams, the defendant used two open hands to touch her buttocks—something that no other medical provider had done when evaluating her bursitis.  In addition, the defendant attempted to touch AV16's vagina during an exam on two separate occasions.  Each time, as the defendant reached his fingers toward AV16's vagina, he made sexual grunting noises.  AV16 repeatedly said "no" and squirmed away from him, which prevented him

---

[8] The United States expects AV11's prior statements to AV16 about her assault will be admissible as a "prior consistent statement," pursuant to Rule 801(d)(1)(B).

from touching her.   This evidence is direct proof of Count 25 of the Indictment.   It is also admissible pursuant to Rules 413 and 404(b).

### v. Conduct Toward Adult Victim 17

AV17 encountered the defendant after she slipped and fell in the kitchen and needed emergency medical treatment.   The defendant transported AV17 to the medical unit, and she complained of pain in her tailbone.   Nevertheless, the defendant touched and rubbed her foot and her leg.   AV17 continued to explain that it was her tailbone, not her foot or leg, that was injured. When she tried to leave the medical unit, the defendant slipped his hand down the back of AV17's pants and underwear and touched her buttocks; based on his conduct, AV17 believed he was attempting to touch her genitals.   This evidence is direct proof of Count 25 of the Indictment.   It is also admissible pursuant to Rules 413 and 404(b).

### vi. Conduct Toward Adult Victim 18

On two separate occasions when AV18 saw the defendant for medical treatment, he engaged in sexual conduct toward her.   On one occasion, while he changed a bandage on her lower leg, he put her leg in his lap; she observed that the defendant had an erection and that his erect penis was touching her foot.   Another time, the defendant again had an erection and he exposed the tip of his penis for AV18 to see.   After changing her bandage, the defendant walked toward AV18, reached into her pants, and used his fingers to penetrate her vagina.   During both interactions, AV18 did not want the defendant to touch her in that way and she did not give him permission to do so.   This conduct is direct evidence of Counts 23 and 25 of the Indictment.   It is also admissible pursuant to Rules 413 and 404(b).

### b. Other Evidence of the Defendant's Uncharged Acts

In addition to the conduct described above, the defendant directed toward AVs 19, 20, and 21 both sexual comments and other sexual behavior that does not rise to the level of sexual assault. Nevertheless, the defendant's sexual conduct is direct and relevant evidence of the perjury counts charged in the Indictment. In addition, the defendant's conduct toward AV20 is inextricably intertwined with the charged conduct, as described in greater detail below. In the alternative, this evidence is admissible pursuant to Rule 404(b) as evidence of the defendant's mental state—his intent, plan, opportunity, knowledge, and lack of mistake or accident.

### i. Conduct Toward Adult Victim 19

The defendant engaged in sexual conduct toward AV19 on multiple occasions between March and September 2017, when AV19 regularly went to the medical unit to obtain a week's supply of catheters. His conduct was gradual: at first, the defendant followed AV19 into the supply closet and put his hand on her lower back, which she thought was strange. Later, he followed her into the supply closet, put his hand on her lower back, and kissed her. The defendant then kissed her on multiple occasions after that. The conduct escalated, and AV19 performed oral sex on the defendant twice. Ultimately, the defendant used his penis to penetrate her vagina on three separate occasions; in the two final instances, as he did with many of his other victims, he bent AV19 over the exam table, stood behind her, and used his penis to penetrate her vagina from behind.[9] When

---

[9] Based on AV19's account, she arguably consented to the defendant's conduct the first time he used his penis to penetrate her vagina. On the two subsequent occasions, she did not explicitly say "no," but she also did not indicate that she did consent. Though these two instances may nonetheless be a "sexual assault" under Rule 413's definition, the United States is not offering evidence of any of these three incidents under that Rule. The United States may, however, offer this evidence as direct proof of Count 22 (which charges the defendant for falsely denying that he had sexual intercourse with an inmate) or under Rule 404(b).

the defendant tried to engage in sexual conduct with her after the third incident, she lied and claimed that she was on her period, in order to deter him.  This conduct is direct evidence of Counts 22, 23, 24, and 25.  Additionally, the incidents involving oral sex are admissible pursuant to Rule 413, and all of the other evidence is admissible pursuant to Rule 404(b).

### ii.   Conduct Toward Adult Victim 20

The United States expects to offer the testimony of AV20, who worked as an inmate-orderly in the medical unit at the same time as AV3.  In this role, she witnessed some of the defendant's sexual and inappropriate conduct toward AV3; she also was herself the target of some of the defendant's inappropriate sexual conduct, and the defendant sometimes directed his actions toward both women.  Because AV20's testimony is corroborative of AV3's account and Counts 5 through 9, the United States expects that AV20 will testify, regardless of whether she is permitted to discuss the defendant's conduct toward her.  Nevertheless, evidence of the defendant's conduct that was directed at AV20 is admissible for at least three reasons.  First, the defendant's conduct toward AV20 is direct evidence of Count 25.  Second, it is inextricably intertwined with the charged conduct—the defendant's conduct toward AV3 sometimes occurred while AV20 was nearby, and AV20 recognized the defendant's conduct for what it was because of what she herself had experienced from the defendant.  Finally, it is also admissible pursuant to Rule 404(b) and, in one instance, Rule 413.

During the time that she worked in the medical unit, AV20 made contemporaneous recorded statements detailing the defendant's conduct toward AV3, as well as his comments and conduct toward herself.  In a written statement from 2017, she described the defendant's conduct toward herself and AV3 as "flirtatious," and the defendant's conduct toward AV3 as "very inappropriate."   In another written statement, AV20 described the defendant as making her

workplace "awkward."  On more than one occasion, the defendant grabbed at his genitals, without exposing himself, to indicate to AV20 the size of his penis—a tactic he used with numerous witnesses, and an act that is both direct evidence of Count 25 and admissible pursuant to Rule 404(b).  In addition, the defendant directed sexual and explicit comments at AV20 that focused on the size of her lips and mouth, which is admissible as Rule 404(b) evidence.  And on at least one occasion, when he was providing medical care for AV20, he sat next to her, on the exam bed, and placed his hand on her inner thigh.  AV20's demeanor immediately changed, and the defendant reacted in a way that suggested to AV20 that his actions had not been accidental.  This conduct is direct evidence of Count 25; it is also admissible pursuant to Rules 413 and 404(b).

### iii.  Conduct Toward Adult Victim 21

The United States intends to offer the testimony of AV21, who worked as an orderly in the medical unit alongside AV14.   AV21 will testify about what she directly observed of the defendant's behavior toward AV14; this behavior includes sexual touching that is direct evidence of Count 25, as well as other evidence of the defendant's inappropriate and sexual comments. Additionally, the defendant made similar sexual overtures toward AV21, though she successfully rejected his advances.  On one occasion, AV21 was trying to get into an area of the medical unit, and the defendant was holding the door open but blocking AV21's ability to pass through.  When AV21 asked if she could get inside, to which the defendant replied, "Want to show me your boobs?"  Disgusted, AV21 said "no," and pushed past him; this is admissible under Rule 404(b). Another time, AV21 was summoned to the medication room window.  When AV21 arrived, the defendant was alone and AV21 saw that he was touching himself near his penis.  Once AV21 took the medication and showed him the pill cup was empty, the defendant exposed the tip of his penis

and smiled at her.  This incident is direct evidence of Count 25 of the Indictment; it is also admissible pursuant to Rule 404(b).

## V.     The Defendant's Uncharged Conduct Is Admissible

Every instance of uncharged conduct described above, except for the defendant's exposing himself and strictly making sexual comments without corresponding acts, is admissible as direct evidence that proves the charged offenses because it is direct and intrinsic evidence of the charged conduct—both the civil rights and at least one of the perjury offenses.  The specific bases for admission are noted above and in the chart attached to this Notice.  Consequently, this conduct falls outside the scope of Rules 404(b) and 413 and should be admitted.  In the alternative, evidence of the defendant's uncharged sexual assaults, as described above, is admissible pursuant to Federal Rule of Evidence 413.  The defendant's other behavior, such as his comments and other conduct toward AVs 19, 20 and 21, as well as his needless touching of his victims or pulling their hair, and repeatedly exposing his penis to his victims, is admissible pursuant to Rule 404(b), because it demonstrates his mental state—his intent, plan, opportunity, knowledge, and lack of mistake or accident.

Because this evidence is relevant to the charged counts and its high probative value exceeds the risk of any unfair prejudice, *see* Fed. R. Evid. 403 (discussed in Part VI, *infra*), the United States' proffered evidence of uncharged conduct should be admitted.

### a.  The Defendant's Uncharged Conduct Is Admissible Because It Is Direct Evidence of the Charged Offenses

The defendant's uncharged sexual conduct toward all of the women identified above is admissible because it is direct evidence of perjury, charged in Counts 22 through 25 of the Indictment.  With respect to AVs 1 through 12 specifically, the defendant's uncharged conduct is

also "inextricably intertwined" with the charged conduct because it usually preceded the charged conduct and provides necessary context.  That is, the defendant's uncharged conduct toward AVs 1 through 12 is necessary to tell a coherent story and complete the narrative, so that the jury understands how and why the defendant previously interacted with those specific victims and how he began grooming them for the later assaults, which are charged in the Indictment.  And as noted above, the defendant's conduct toward AV3 directly overlaps with and is inextricably intertwined with conduct related to AVs 13, 14, and 20: AVs 13 and 20 recognized the defendant's conduct toward AV3 because of their own experiences, and the defendant turned to AV3 when AV14 was unavailable to fulfill his sexual desires—a fact that AV3 was well aware of.  For these reasons, the defendant's uncharged conduct therefore falls outside the scope of Rules 404(b) and 413, and should be admissible as direct evidence of the crimes charged.

Evidence of a defendant's other acts is admissible as intrinsic evidence of the charged crimes and falls outside the scope of Rules 404(b) and 413 when the "other act" constitutes a part of the transaction that serves as the basis for the criminal charge"—that is, a necessary element of the offense—or where it is "necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."  *United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016) (uncharged acts were proof of a "scheme," a necessary element of the offense—wire fraud).  Moreover, "acts satisfy the inextricably intertwined doctrine if they complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of the charged crime." *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002) (cited with approval in *United States v. Proudfoot*, 2018 WL 6198274, at *11 (D. Or. Nov. 28, 2018)); *see also United States v. Proudfoot*,

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**          **Page 36**

837 F. App'x 590, 591 (9th Cir. 2021) (affirming district court's ruling that evidence was "inextricably intertwined").  A jury "cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992).

### i. The Uncharged Conduct Proves an Element of the Charged Perjury Offenses

The conduct described above is inextricably intertwined with the charged offenses because the uncharged acts prove a necessary element of the offenses charged in Counts 22 through 25: that the defendant's statements in his deposition were false.  In this way, "the evidence is offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused."  *Loftis*, 843 F.3d at 1176.  As the Ninth Circuit has noted, "Such proof can be quite time-consuming and it may be extremely prejudicial to the defendant but the court would have no discretion to exclude it [under Rule 404(b)] because it is proof of the ultimate issue in the case."  *Id.*

*United States v. Gorman*, 613 F.3d 711 (7th Cir. 2010), provides a helpful guide for a perjury prosecution.  There, the defendant was charged with perjury for lying to a federal grand jury in a money-laundering investigation that involved his cousin and others.  *Id.* at 714-15.  A grand juror asked the defendant whether he had ever had a Bentley in his garage—presumably proceeds from his cousin's illicit activity—and the defendant replied, "No."  In fact, that statement was false, and the evidence of its falsity was that Gorman had orchestrated a criminal scheme to remove the car from his garage without the keys, and then pry open the trunk (which contained large bags of cash) and abandon the car.  The district court admitted the evidence of the theft as "inextricably intertwined" with his false statement that he had never had a Bentley in his garage.

The Seventh Circuit affirmed but, citing the basis for his perjury charge, noted that "his theft of the car and extrication of the money from within were *direct evidence of his false testimony*. The fact that [he] removed the Bentley from the garage demonstrated that he 'had' a Bentley in the garage." *Id.* at 719 (emphasis added).

The conclusion in *Gorman* supports admitting the defendant's uncharged conduct to prove the perjury counts. Specifically, to prove Counts 22 through 25, the United States must prove beyond a reasonable doubt that the defendant provided false testimony under oath. 18 U.S.C. § 1623. Put differently, the United States must prove that although the defendant denied ever doing so, he *did* in fact: engage in sexual intercourse with an inmate (Count 22); use his penis, fingers, or tongue to penetrate an inmate's vagina or anus (Count 23); kiss an inmate (Count 24); and engage in other sexual contact with an inmate to abuse, arouse, or gratify his sexual desire (Count 25). The testimony of AVs 1 through 12 will provide some evidence of this conduct; AVs 13 through 21 will offer additional evidence about the defendant's behavior, providing further proof of the falsity of his statements under oath—an element of perjury and "direct evidence of the fact in issue." *Loftis*, 843 F.3d at 1176; *Senffner*, 280 F.3d at 764.

Some of the defendant's conduct that is not explicitly and specifically charged in Counts 1 through 21 is nevertheless essential to proving the elements of the defendant's perjury. For example, kissing is not charged in Counts 1 through 21, as it may not, without more, rise to the level of a constitutional violation. But in order to prove Count 24, the United States must offer evidence that the defendant kissed inmates. Moreover, the defendant committed additional sexual acts, not charged in the Indictment, that prove Counts 22, 23, and 25; the sexual conduct that is explicitly described in Counts 1 through 21 does not address or encompass all of the conduct that the defendant later lied about. Because an essential element of perjury is that the defendant made

a false statement, and testimony by AVs 1 through 21 about the defendant's sexual behavior will prove that element of the offense, it is direct evidence of the charged crimes. *Gorman*, 613 F.3d, at 719. All of the testimony about the defendant's sexual assaults—whether charged or uncharged—that tends to prove an element of Counts 22 through 25 should therefore be admitted.

### ii. The Uncharged Conduct Is Inextricably Intertwined with Charged Counts

In addition, some of the defendant's uncharged conduct toward the women to whom he provided medical care, as well as his uncharged conduct toward some of the medical orderlies, fits squarely within the "inextricably intertwined" doctrine because it is necessary to provide a coherent and comprehensible story about the charged conduct. With respect to AVs 1, 2, 3, 4, 6, and 11, the defendant's uncharged assaults or other sexual conduct and comments pre-date the assaults charged in the Indictment, and the uncharged conduct is necessary to complete the story of the charged conduct. Furthermore, the testimony of AVs 13, 14, and 20, whose accounts overlap with AV3's, is "blended or connected" with the charged crimes. *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002). Because they explain the circumstances surrounding the assaults charged in the Indictment, excluding testimony about the defendant's prior sexual conduct toward these women would create a void in the story of the defendant's crimes, leaving the jury confused and unable to assess the defendant's actions in their appropriate context.

In general, the defendant's uncharged conduct was part of a scheme to gradually gain the trust of his victims and, in many cases, to slowly ratchet up his sexual behavior as he ventured progressively farther over the line. His sexual abuse toward them did not occur in a vacuum: most of the AVs whom the defendant assaulted while they were seeking medical treatment had previously interacted with the defendant and observed that he seemed friendlier and more invested

in their well-being than other staff.  This is particularly true of AVs 1, 2, 3, 4, 6 and 11; for these women, the defendant's earlier, uncharged sexual comments and conduct later culminated in the charged sexual assaults.  As the United States' expert, Robert Dumond, is expected to testify, the defendant's earlier conduct and pattern of behavior laid the necessary foundation for the charged assaults.  The defendant's escalating conduct was not coincidental; it was by design.

The defendant's brazen sexual conduct was obvious to the inmates who worked in the medical unit; they observed many of his sexual overtures, a prelude to his sexual assaults of the orderlies.  Indeed, AVs 13, 14, and 20 were witnesses to or present during the defendant's behavior toward AV3, and his conduct toward the uncharged victims cannot be separated from the charged conduct without sacrificing a coherent narrative.  For instance, AV13, who often worked alongside AVs 3 and 14, consistently observed the defendant rub his body against other orderlies.  AV13 recognized this behavior and knew it was not accidental, because the defendant had previously done the same thing to her.  On one occasion, AV3 returned from the medical unit to the cell she shared with AV13, and AV3 revealed she had obtained a pack of syringes.  AV13 assumed the defendant gave them to AV3 as a "gift" for sexual favors—since AV13 remembered the defendant making her a similar offer when she started working in the medical unit.

In addition, the frequency of the defendant's assaults on AV3 is directly tied to AV14's time in the medical unit.  While AV14 worked in the medical unit, the defendant focused his attention toward her, but on at least one occasion and specifically after AV14 rebuffed his advances, the defendant assaulted AV3.  The defendant's conduct toward AV3 occurred more frequently in mid-to-late 2017, mere months after AV14 stopped working in the medical unit.  For AV3's testimony and the circumstances surrounding her assaults to make sense, she must be permitted to testify about her understanding of the defendant's sexual conduct toward AV14.

Finally, AV20 witnessed the defendant's conduct toward AV3 and experienced similar conduct at the same time, while both women worked together in the medical unit and the defendant's sexual conduct and comments pervaded the workplace.

Because it is necessary to complete the story of the conduct charged in the Indictment, testimony about the uncharged conduct toward AVs 1, 2, 3, 4, 6, 11, 13, 14, and 20 is inextricably intertwined with the charged offenses. The probative value is not substantially outweighed by the risk of unfair prejudice, as discussed below. This evidence should therefore be admitted.

### b. In the Alternative, Evidence of the Defendant's Other Sexual Assaults Is Admissible Under Rule 413

Rule 413 of the Federal Rules of Evidence provides, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). Rule 413 defines "offenses of sexual assault" to include "contact, without consent, between any part of the defendant's body . . . and another person's genitals or anus," Fed. R. Evid. 413(d)(2), "contact, without consent, between the defendant's genitals or anus and any part of another person's body," Fed. R. Evid. 413(d)(3), and "conduct prohibited by 18 U.S.C. chapter 109A." Fed. R. Evid. 413(d)(1). The third category, Chapter 109A, prohibits nonconsensual "sexual contact," defined as the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttock of any person with intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3); *see, e.g.*, *United States v. Erramilli*, 788 F.3d 723 (7th Cir. 2015) (defendant convicted under 18 U.S.C. § 2244, a Chapter 109A offense, for groping airplane passenger's inner thigh

without consent).  Moreover, for the purposes of Rule 413, any "attempts" to engage in the above conduct falls within the definition of a "sexual assault."  Fed. R. Evid. 413(d)(5).

For Rule 413 to apply, the defendant must be accused of an offense of sexual assault, the proffered evidence must relate to the commission of another sexual assault, and the evidence must be relevant.  *Doe ex rel Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000).  Rule 413 creates a presumption of admissibility in sexual misconduct cases and permits the use of evidence of uncharged sexual assaults as propensity evidence, subject to Rule 403 balancing. *United States v. LeMay*, 260 F.3d 1018, 1027-28 (9th Cir. 2001) (setting forth multi-factor balancing test); *see also United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004) (Fed. R. Evid. 413-415 favor the admission of propensity evidence in cases involving charges of sexual misconduct); *Glanzer*, 232 F.3d at 1268 ("It is generally accepted that a defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant and in conformity with the standards set out in [Rules 401 and 402].").

The defendant is charged with 21 Counts of depriving AVs 1 through 12 of their right to be free from cruel and unusual punishment, which includes the right to be free from sexual assault. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000); *see also Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020) ("sexual assault serves no valid penological purpose").  The proffered evidence of the defendant's sexual assaults of AVs 13 through 18, and the incident where the defendant touched AV20's inner thigh without consent, constitute acts of sexual assault, as defined by Rule 413.  Evidence of these assaults is therefore presumptively admissible, subject to Rule 403 and the *LeMay* factors, discussed in Section VI, *infra*.

### c. Evidence of the Defendant's Other Acts Is Admissible Under Rule 404(b)

The defendant's uncharged conduct toward AVs 1 through 21 is also alternatively admissible pursuant to Rule 404(b). "Such evidence may be admitted if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Romero*, 282 F.3d 686, 688 (9th Cir. 2002). The fourth prong is applied in cases where knowledge and intent are at issue. *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996). If the evidence satisfies this test, it is still subject to Rule 403. Although the evidence of sexual assaults is admissible under both Rules 413 and 404(b), the analysis immediately below focuses on the defendant's conduct that is not admissible under Rule 413: his sexually explicit comments, his sexual touching, and his exposing his penis for an inmate to see.

The above-described conduct reveals the defendant's mental state—his intent, plan, opportunity, knowledge, and lack of mistake or accident. The charges against the defendant are not the result of his inadvertent touching or being too friendly, nor are they—as the defendant has previously suggested—part of an elaborate lie by nearly two dozen women. Instead, the charges stem from the defendant's deliberate scheme to abuse his position of authority as a prison nurse and sexually assault vulnerable women who were entrusted to his care. Specifically, the defendant gained inmates' trust over time and tested their boundaries by making sexual comments and suggestively touching them. Multiple witnesses (specifically, AVs 3, 4, 5, 6, 10, 13, 14) each reported that some of the defendant's first acts included pressing up against them, whether in the course of medical treatment or while they were working in the medical unit, causing them to feel his erect penis. The defendant may argue that brushing or pressing against the women so that they

could feel his penis was accidental, but the fact that he did it so many times and with so many women proves it was neither an accident nor a mistake. For the women who worked in the medical unit, the defendant pretended to supervise their cleaning duties, but instead intentionally summoned or followed them into secluded areas where he sexually assaulted them, touched their buttocks, or exposed his penis. On more than one occasion, he explicitly asked an orderly for help to clean another area so that he could lure her out of sight and assault her. For the women who sought medical treatment from him, the defendant abused them during and under the guise of providing them legitimate medical care. In doing so, he exploited their serious medical conditions, such as cancer, chronic kidney disorders, or heart problems, knowing that they would not report his sexual conduct and risk their treatment.

The remaining three factors are easily met. All of the conduct—charged and uncharged—occurred between 2013 and 2017, and some of the charged and uncharged conduct occurred during approximately the same timeframe. In each instance, there is sufficient evidence, in the form of testimony by AVs 1 through 21 and, for some instances, in the form of testimony by other witnesses or medical records corroborating their interaction with the defendant, to support a jury's finding that the defendant committed these uncharged acts. Finally, the uncharged conduct is extremely similar to the charged conduct; in fact, some of it is nearly identical. With respect to the 404(b) evidence specifically, the defendant exposed his penis to numerous women on several different occasions or suggestively grabbed or gestured at his penis through his scrub pants, as if to see how they would react. He made sexual comments toward nearly all of them: commenting on the size of AV20's lips, asking whether AV21 would show her breasts, or calling AV15 "hot" and "sexy" and making comments about her hair color. For many of the women, he pulled their hair (AVs 3, 4, 14), touched their bodies—namely their inner thighs—when it was not medically

necessary or appropriate for the medical treatment he was providing (AVs 16 and 20), or touched or slapped their buttocks (AVs 3, 4, 14, and 16).  His conduct toward AV19 mirrored his pattern of conduct toward other women: first touching her, then kissing her, and ultimately pushing her over an exam table and using his penis to penetrate her vagina from behind.  For these reasons, this evidence should be admitted, subject to Rule 403, discussed below.

### VI.    The Proffered Evidence Is Admissible Under the *LeMay* Factors and Rule 403 Because Its Probative Value Outweighs Any Risk of Unfair Prejudice

Evidence that is otherwise admissible as relevant evidence is nonetheless subject to Rule 403's balancing test, which provides for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  For evidence that is specifically offered under Rule 413, courts apply a five-factor balancing test, as set forth in *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001).  Under the appropriate tests, the probative value of the proffered evidence far outweighs the risk of any unfair prejudice to the defendant, and the evidence should thus be admitted.

#### a.    Evidence of the Defendant's Other Sexual Assaults Is Highly Probative and Not Unfairly Prejudicial

When evaluating whether relevant 413 evidence should nevertheless be excluded as unfairly prejudicial under Rule 403, courts in the Ninth Circuit apply the test set forth in *United States v. LeMay,* 260 F.3d 1018, 1028 (9th Cir. 2001), and consider at least five factors:

> 1) The similarity of the prior acts to the acts charged, 2) the closeness in time of the prior acts to the acts charged, 3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.

All five of these factors weigh in favor of admitting the above-described evidence under Rule 413.

The similarity of the charged and uncharged assaults is striking and weighs in favor of admissibility.  Most obviously, the defendant used his position as a nurse to gain proximity and access to each of the victims, whether they were orderlies or inmates seeking treatment.  *United States v. Charles*, 691 F. App'x 367, 369 (9th Cir. 2017) (conduct similar where defendant used familial relationship to gain proximity and access).  His conduct toward AVs 13, 14, and 15, who worked as medical orderlies, bears a strong resemblance to his charged conduct toward AVs 3 and 4, who also worked as orderlies.  The defendant fabricated reasons to be alone with the orderlies, he followed them into janitors' closets or other secluded areas, and he summoned them into doctors' offices where he pretended to chaperone their cleaning duties.  Then, he used his fingers to penetrate his victims' vaginas, or exposed his penis and then "asked" for oral sex or, without asking, used his hand to push his victims' heads down toward his penis, so they would perform oral sex on him.  These similarities were not limited to the medical orderlies, either.  The defendant's conduct toward AV17 is nearly identical to his assault of AV5 because in both instances, the women went to him for treatment to relieve back pain, and at the end of the appointment, he reached his hand toward each woman's anus.  His uncharged conduct toward AVs 16 and 18 shares similarities with the charged conduct toward AVs 6, 8, and 11; despite being in the medical unit for various reasons: a wound check, a hip exam, an x-ray, or an examination of a foot or heart, the defendant massaged or stroked each woman's leg as he worked his way up to her vagina, which he then touched or penetrated with his fingers (or in the case of AV16, attempted to).

Factors two, three, and four, which all relate to timing of the other offenses, strongly favor admissibility.  The uncharged sexual assaults occurred during approximately the same date ranges as the charged conduct:  the earliest uncharged sexual assault occurred around 2013 and the final

charged assaults occurred in 2017.  The uncharged and charged conduct all occurred during that same four-year period.  *See United States v. Gatewood*, 601 F. App'x 580, 580-81 (9th Cir. 2015) ("closeness in time factor weighed in favor of admissibility, given that almost all of the prior acts occurred during the same time period as the charged acts").  The sheer number of sexual assaults during that timeframe is indicative of their frequency, and the evidence of recurring similar conduct illustrates that the charged assaults were not "isolated occurrence[s]."  *LeMay*, 260 F.3d at 1029.  The frequency of the uncharged assaults reveals that the defendant's charged conduct was not a mistake, medically necessary, or fabricated by the charged victims, as the defendant has previously contended.  This factor, too, favors admission.  Finally, because the uncharged and charged conduct occurred at roughly the same time, there is no evidence indicating there was any period of time between the uncharged and charged acts during which the defendant abstained from any misconduct.  *Cf. Glanzer*, 232 F.3d at 1268 (upholding district court's exclusion of evidence in part due to "the large time lapse between the [charged and uncharged] events without any intervening alleged misconduct").

The final factor is the necessity of the evidence beyond the testimonies offered at trial. "Evidence of other acts need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*."  *United States v. Door*, 663 F. App'x 570, 572 (9th Cir. 2016) (citing *LeMay*, 260 F.3d 1018).  In similar cases, where the defendant attacked the victims' credibility, courts have found that testimony about other sexual assaults is "necessary."  For instance, in *Door*, the Ninth Circuit upheld the district court's admission of the defendant's prior sexual assault.  There, the defendant "testified that, other than oral sex, he did nothing like what [the victim] described in her testimony."  *Door*, 663 F. App'x at 572-73.  The court concluded that the defendant attacked his accuser's credibility by presenting

a theory of the case that contradicted her testimony and depended on "the jury doubting [the victim] and [the fact that] there were no eyewitnesses who could corroborate her testimony."  The evidence of an uncharged sexual assault was therefore necessary to counter the defendant's theory of the case.  *Id.*; *see also United States v. Charles*, 691 F. App'x. 367, 370 (9th Cir. 2017) (testimony from victims of uncharged conduct was necessary because it corroborated the charged victims' testimony, in a case where the defendant's primary defense was to attack the victims' credibility); *LeMay*, 260 F.3d 1018, 1029 (9th Cir. 2001) (evidence of other sexual assault was necessary where the prosecution's case rested on the testimony of the two charged underage victims, "no other scientific, forensic, medical, or psychological witness was available," and the defendant "had attacked the credibility of the [two charged victims] and capitalized on the lack of eyewitness and expert testimony").

Evidence has been found to be "necessary" even when the number of charged and uncharged victims is substantial, as is the case here.  The Ninth Circuit's decision in *United States v. Gatewood*, 601 F. App'x 580 (9th Cir. 2015), is instructive.  There, the defendant was charged with 23 counts of sexual assault and kidnapping, stemming from 15 incidents involving nine victims, including eight who were under age 16.  *Gatewood*, 602 F. App'x at 582 (Friedland, J., dissenting).  All of the victims testified, and six additional witnesses provided corroborating testimony.  Nevertheless, the district court admitted 23 uncharged acts of sexual assault; "a large majority of the acts for which evidence was presented at trial were uncharged."  *Id.* at 583.  Moreover—and unlike here—"the *uncharged-acts* evidence was the most heinous evidence that the jury heard at trial."  *Id.* (emphasis added).  Still, the Ninth Circuit affirmed the admission of other-acts testimony.  Here, the uncharged conduct is similar to, but no more egregious than the

charged conduct.  The United States has charged the most egregious acts in the Indictment, which includes counts alleging aggravated sexual abuse and bodily injury.

The number of victims, charged and uncharged, and their respective accounts is necessary, because the defendant's anticipated theory of the case is that all of his accusers are lying.  Indeed, when faced with accusations in a civil suit from six of the 12 victims named in the Indictment, the defendant denied, one by one and under oath, that he had engaged in sexual misconduct with any of them.  Furthermore, the defendant will likely point to these civil suits and argue that those six women, and another woman identified in the Indictment and who filed a separate lawsuit against him, have (or had) a motive to lie, in order to obtain a financial settlement.  *See LeMay*, 260 F.3d at 1023 (testimony was "necessary" in part because defense counsel suggested the victims may have a motive to lie to avoid foster care).  The victims' credibility is therefore paramount, and the defendant will likely attack their credibility on that basis.  But in contrast to the women who are identified in the Indictment, only two of the nine women who make up AVs 13 through 21 filed civil lawsuits against the defendant.  Evidence that the defendant sexually assaulted these women, who do not have a motive to lie, is therefore necessary and helpful to a jury in assessing the credibility of AVs 1 through 12.

Like in *LeMay*, there is also no direct scientific or forensic evidence in this case corroborating the victims' testimony.  As in *Door*, the defendant will present a theory of the case that contradicts his accusers' testimony and depends on the jury doubting the victims, all of whom have felony convictions, which the defendant will almost certainly highlight to impeach their credibility.  *See* Fed. R. Evid. 609.  The most egregious conduct has been charged, so the risk of unfair prejudice from the jury learning about uncharged conduct that is more inflammatory than the charged conduct is abated or fully eliminated.  *Cf. Gatewood*, 602 F. App'x at 583 (Friedland,

J., dissenting); *see also United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (other-acts evidence that represented a "tiny fraction" of testimony heard by the jury and "did not involve conduct any more sensational or disturbing" than the charged crimes was not unfairly prejudicial under Rule 403).

This case presents precisely the situation that Congress contemplated when it passed Rule 413, and the 413 evidence should therefore be admitted.

> **b.  The Probative Value of Other-Acts Evidence Is Not Substantially Outweighed by Risk of Unfair Prejudice, Misleading the Jury, or Confusing the Issues**

As noted above, because the credibility of AVs 1 through 21 is a central issue in this case, the other-acts evidence is highly probative of the charged conduct, and the risk of unfair prejudice is low.  "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).  Like the "necessity" analysis in the Rule 413 context, "a decision regarding probative value must be influenced by the availability of other sources of evidence on the point in question." *United States v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012).

The probative value of the proffered evidence is high: it tends to show that the defendant committed the assaults charged in Counts 1 through 21, and it tends to show that the defendant committed the very conduct that he denied in Counts 22 through 25.  Moreover, the testimony from AVs 13 through 21, detailing the sexual assaults *and* the defendant's other sexual conduct under 404(b), is particularly critical because he has previously alleged that all of his accusers are lying, and his defense likely depends on attacking their credibility at trial.  Courts, and Congress, have recognized that cases involving allegations of sexual assault are uniquely affected by the

conflict between an accuser's account and the defendant's—it is the very rationale behind Rule 413. *See e.g.*, *United States v. Schaffer*, 851 F.3d 166, 178 (2d Cir. 2017) ("knowledge that the defendant has committed rapes on other occasions is frequently critical in assessing the relative plausibility of these claims and accurately deciding cases that would otherwise become unresolvable swearing matches") (quoting 140 Cong. Rec. S12990-01, S12990 (Sept. 20, 1994)) (statement of Sen. Dole); *see also United States v. Enjady*, 134 F.3d 1427, 1432 (10th Cir. 1998) ("corroboratory information about the defendant also limits the prejudice to the victim that often results from jurors' tendencies to blame victims in acquaintance rape cases") (citing other sources). The defendant's victims are the only people who can testify about what the defendant did to them—contradicting his theory of the case and his prior false statements. This evidence is thus essential to proving that the defendant committed the very conduct he denies.

Nor does admitting this evidence present needlessly cumulative evidence, waste time, confuse the issues or mislead the jury. "Rule 403's cumulative evidence provision does not prohibit the introduction of cumulative evidence; rather, it merely permits courts to exclude cumulative evidence when it has little incremental value." *United States v. Miguel*, 87 F. App'x 67, 68 (9th Cir. 2004). Here, the value of the proffered evidence is significant: it tends to prove the very conduct charged in Counts 1 through 25 of the Indictment, especially the conduct charged in Counts 22 through 25. Furthermore, it demonstrates that the accounts of the charged victims are truthful. The Ninth Circuit has held that "evidence was not needlessly cumulative in light of the difficulty in establishing" one of the elements of the offense, and in light of the defense theory of the case. *United States v. Skillman*, 922 F.2d 1370 (9th Cir. 1990). Here, for Counts 1 through 21, there are only two witnesses to each crime—the victim and the defendant. The perjury counts have additional witnesses only insofar as there are multiple victims for each category of conduct

that the defendant denied.  Consequently, in this case, just like in *Skillman*, it is extremely difficult to establish a critical element of the offense—that the conduct occurred as the victim alleged.  In light of this difficulty, and the defendant's anticipated theory that he, not his accusers, is the one telling the truth, evidence from women other than those charged in the Indictment is not "needlessly" cumulative.

Moreover, this evidence is not likely to prolong the trial.  As noted above, nearly every woman listed above will offer testimony that directly corroborates the charged counts—whether because they heard some of the defendant's comments, because they observed his sexual behavior or recognized it for what it was because he did it to them, or because the charged victims disclosed the defendant's conduct to them soon after it occurred.[10]  In other words, the United States expects that many of the women identified as AVs 13 through 21 will testify at trial even if they do not testify about how the defendant sexually assaulted them or made sexual comments to them.  The probative value of this evidence is high, and the risk of unfair prejudice is low.  On balance, the evidence should be admitted.

## VII.    Limiting the Number of Victims Who Testify

Although the United States believes the evidence of uncharged acts described above is important and relevant proof of the perjury counts and—where inextricably intertwined— necessary to complete the story of the charged offenses, the United States nevertheless anticipates it may not seek to introduce the accounts of all nine listed victims of uncharged conduct (AVs 13 through 21) at trial.  Still, the United States seeks a ruling that all are admissible.  Should the Court rule, pursuant to Federal Rule of Evidence 403, to limit the number of uncharged victims to be

---

[10] The government's trial brief provides a greater discussion of evidence it may expect to offer pursuant to Fed. R. Evid. 801(d)(1)(B).

called, the United States respectfully requests that the Court give the United States discretion to select which witnesses it calls to testify.

**VIII.   Limiting Instruction**

Furthermore, the Court can ensure that the jury will not confuse the purposes for which evidence of the defendant's other sexual assaults or other bad acts is offered by instructing the jury as to the specific purposes for which it may consider the evidence.  Doing so will mitigate any risk of unfair prejudice that may exist.

**IX.     Conclusion**

For the reasons stated above, the United States respectfully requests the Court issue an order admitting evidence of the proffered other acts as direct and intrinsic evidence of the charged offenses.  In the alternative, the United States requests that this Court admit the proffered evidence of other sexual assaults pursuant to Rule 413, and that the Court admit the proffered evidence of acts other than sexual assault pursuant to Rule 404(b).

Dated:  April 21, 2023

Respectfully submitted,

NATALIE K. WIGHT                                  KRISTEN CLARKE
United States Attorney                              ASSISTANT ATTORNEY GENERAL

*/s/ Gavin W. Bruce*                                    */s/  Cameron A. Bell*
GAVIN W. BRUCE                                    CAMERON A. BELL
Assistant United States Attorney                Trial Attorney
                                                                Civil Rights Division

**Notice of Intent to Introduce Intrinsic Evidence or 413/404(b) Evidence**          **Page 53**