NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:   (541) 465-6771
**CAMERON A. BELL, CSB #305872**
Trial Attorney—Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Cameron.Bell@usdoj.gov
Telephone:   (202) 802-7643
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 3:22-cr-00084-SI** |
| **v.** | |
| | **GOVERNMENT'S OMNIBUS** |
| **TONY DANIEL KLEIN,** | **MOTION *IN LIMINE*** |
| **Defendant.** | |

The United States of America hereby files this omnibus motion *in limine* to exclude certain evidence and argument by the defendant at trial.

///

///

///

///

**Government's Omnibus Motion *in Limine*** **Page 1**

# TABLE OF CONTENTS

RELEVANT BACKGROUND ......................................................................................... 8

MOTIONS *IN LIMINE* ................................................................................................. 9

   I.  Motions To Exclude Improper Character Evidence ............................................. 9

     A.  Motion to Exclude Evidence of the Defendant's Good Character and Specific Acts of Good Conduct (Motion *in Limine* 1) ............................................................. 10

     B.  Evidence of Victims' Purported Bad Character or Conduct and Sexual Behavior ........ 11

       1.  Motion to Exclude Prior Criminal Convictions Beyond Rule 609's 10-Year Limitation (Motion in *Limine* 2) ............................................................... 11

       2.  Motion to Exclude Name and Nature of AV3's Criminal Convictions, Under Rule 403 (Motion in *Limine* 3) ............................................................... 13

       3.  Motion to Exclude Questions About or Evidence of Prior Arrests That Did Not Result in Conviction, and to Limit Questions or Evidence About Pending Criminal Charges (Motion *in Limine* 4) ............................................................... 14

       4.  Motion to Exclude Prison Disciplinary Records and Evidence of Other Conduct While in Custody (Motion *in Limine* 5) ............................................................... 15

       5.  Evidence of Victims' Other Sexual Behavior Is Inadmissible (Motion *in Limine* 6) ..... ............................................................... 17

   II.  Motion To Limit Use of Victims' Medical Information (Motion *in Limine* 7) ................. 18

   III.  Motion To Exclude or Limit Evidence That Contains Inaccurate, Irrelevant, or Improper Legal Standards (Motion *in Limine* 8) ............................................................... 20

   IV.  Motion To Limit Evidence of Civil Settlements Against Defendant and ODOC (Motion *in Limine* 9) ............................................................... 21

   V.  Motion To Preclude Defendant's Use of Self-Serving Hearsay Statements (Motion *in Limine* 10) ............................................................... 24

     A.  The Rule of Completeness Does Not Compel the Admission of Otherwise Inadmissible Hearsay ............................................................... 25

     B.  The Defendant's Self-Serving Statements Are Hearsay Without Any Applicable Exception ............................................................... 26

     C.  The Defendant Cannot Use His Expert Witness To Circumvent the Hearsay Rules ..... 28

   VI.  Motions To Exclude Certain Testimony of Defendant's Proffered Expert As Unreliable, Irrelevant, and Unhelpful to the Jury, and To Limit Other Testimony (Motions *in Limine* 11 and 12) ............................................................... 30

   A.   Motion to Exclude Ms. Alleyne's Opinions Related to Mental Health or Trauma Because She Lacks Appropriate Qualifications (Motion *in Limine* 11)................................ 31

   B.   Motion to Exclude Ms. Alleyne's Opinions About Credibility and Limit Her Opinions to Those That Are Helpful to the Jury.  (Motion *in Limine* 12) ............................... 32

VII.   Motion To Exclude Evidence or Argument About a Particular DNA Test During OSP Investigation (Motion *in Limine* 13) ............................................................ 33

VIII.   Motion To Exclude Evidence of Changes to the Facility, Policies, or Trainings That Were Made After the Relevant Incidents (Subsequent Remedial Measures) (Motion *in Limine* 14)…….............................................................................................. 33

IX.   Motion To Exclude Evidence and Argument Related to Prosecutorial Decisions About Local Charges Against Defendant and Results of Internal Investigation (Motion *in Limine* 15)…….............................................................................................. 35

X.   Motion To Exclude Evidence and Argument Aimed at Jury Nullification (Motion *in Limine* 16) ............................................................................................... 38

   A.   Evidence or Argument That CCCF Is a Poorly Run Institution ..................................... 39

   B.   Evidence or Argument That Defendant Has Already Suffered Enough Consequences…… ........................................................................................... 40

   C.   Argument Concerning Penalties or Punishment If Convicted ....................................... 42

XI.   Motion To Exclude Witnesses But Allow Case Agents to Be Present During Trial (Motion *in Limine* 17) ................................................................................... 43

CONCLUSION.............................................................................................. 44

# TABLE OF AUTHORITIES

## Cases

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960 (9th Cir. 2013) ................... 31

*Allis v. United States*, 155 U.S. 117 (1894) ................................................................ 31

*Cascadia Wildlands v. Scott Timber Co.*, 2022 WL 3017684 (D. Or. 2022) ............................... 30

*Cooper v. Fed. Aviation Auth.*, 622 F.3d 1016 (9th Cir. 2010) ..................................... 18

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ...................................... 29

*Davis v. Alaska*, 415 U.S. 308 (1974) ........................................................... 21

*Diggs v. Guynup*, 2022 WL 3355959 (N.D.N.Y. 2022) .............................................. 12

*Doe v. City of New York*, 15 F.3d 264 (2d Cir. 1994) ............................................ 18

*Edwards v. Techtronic Indus. N. Am., Inc.*, 2015 WL 13649297 (D. Or. 2015) ...................... 28

*Edwards v. Techtronic Indus. N. Am., Inc.*, 2015 WL 3616558 (D. Or. 2015) ........................ 12

*Ellis v. Navarro*, 2012 WL 3580284 (N.D. Cal. 2012) ............................................. 13

*Emery v. Harris*, 2014 WL 467081 (E.D. Cal. 2014) .............................................. 12

*Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016) ................................. 15

*Fed. Aviation Auth. v. Cooper*, 566 U.S. 284 (2012) ............................................. 18

*Flores v. Pierce*, 617 F.2d 1386 (9th Cir. 1980) ................................................ 23

*Garcia v. Giurbino*, 46 F. App'x 881 (9th Cir. 2002) ............................................ 28

*Herzog v. United States*, 226 F.2d 561 (9th Cir. 1955) ............................................ 9

*J.W. v. City of Oxnard*, 2008 WL 4810298 (C.D. Cal. 2008) ...................................... 35

*Kennedy v. Lockyer*, 379 F.3d 1041 (9th Cir. 2004) .............................................. 15

*McDevitt v. Guenther*, 522 F. Supp. 2d 1272 (D. Haw. 2007) ..................................... 28

*Merced v. McGrath*, 426 F.3d 1076 (9th Cir. 2005) .............................................. 37

*Michelson v. United States*, 335 U.S. 469 (1948) ................................................ 13

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260 (9th Cir. 1998) .............. 18

*Peterson v. Mickles*, 2020 WL 214749 (D. Or. 2020) .......................................... 33, 34

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) ................................................ 30

*Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807 (9th Cir. 2014) ................ 29

*Rogers v. United States*, 422 U.S. 35 (1975) .............................................................. 41

*Screws v. United States*, 325 U.S. 91 (1945) ............................................................... 19

*Seals v. Mitchell*, 2011 WL 1399245 (N.D. Cal. 2011) ................................................ 15

*Shannon v. United States*, 512 U.S. 573 (1994) ......................................................... 41

*Sparf v. United States*, 156 U.S. 51 (1895) ................................................................ 37

*Suarez v. Peters et al.*, 3:19-cv-95 (D. Or. 2019) ......................................................... 7

*United States v. Anchrum*, 590 F.3d 795 (9th Cir. 2009) ............................................ 36

*United States v. Angelini*, 678 F.2d 380 (1st Cir. 1982) ............................................... 8

*United States v. Bisanti*, 414 F.3d 168, 172-73 (1st Cir. 2005) ................................... 36

*United States v. Carson*, 870 F.3d 584 (7th Cir. 2017) ............................................... 17

*United States v. Cazares*, 788 F.3d 956 (9th Cir. 2015) .............................................. 27

*United States v. Charley*, 1 F.4th 637 (9th Cir. 2021) .................................................. 8

*United States v. Collicott*, 92 F.3d 973 (9th Cir. 1996) ............................................... 24

*United States v. Connelly*, 613 F. App'x 604 (9th Cir. 2015) ...................................... 11

*United States v. Dees*, 34 F.3d 838 (9th Cir. 1994) .................................................... 21

*United States v. Emmert*, 829 F.2d 805 (9th Cir. 1987) .............................................. 26

*United States v. Espinal*, 38 F. App'x 624 (2d Cir. 2002) ........................................... 35

*United States v. Fontenot*, 14 F.3d 1364 (9th Cir. 1994) ....................................... 26, 27

*United States v. Frank*, 956 F.2d 872 (9th Cir. 1992) ................................................. 41

*United States v. Gambler*, 662 F.2d 834 (D.C. Cir. 1981) ...................................... 22, 23

*United States v. Glazer*, 850 F. App'x 488 (9th Cir. 2021) ........................................... 9

*United States v. Glenn*, 667 F.2d 1269 (9th Cir. 1982) ............................................... 10

*United States v. Gordon*, 780 F.2d 1165 (5th Cir. 1986) ............................................. 11

*United States v. Haines*, 918 F.3d 694 (9th Cir. 2019) ............................................... 16

*United States v. Harris*, 185 F.3d 999 (9th Cir. 1999) .......................................21, 22, 23

*United States v. Hedgcorth*, 873 F.2d 1307 (9th Cir. 1989) ......................................... 9

*United States v. Int'l Bus. Machines Corp.*, 84 F.R.D. 651 (S.D.N.Y. 1979) .............. 22

*United States v. Jackson*, 882 F.2d 1444 (9th Cir. 1989) ............................................ 13

*United States v. Kail*, 2021 WL 261135 (N.D. Cal. 2021) ............................................ 8

**Government's Omnibus Motion *in Limine***                                    **Page 5**

*United States v. Keiser*, 57 F.3d 847 (9th Cir. 1995) ........................................................ 8

*United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981) .................................................... 23

*United States v. Lockett*, 919 F.2d 585 (9th Cir. 1990) .................................................... 36

*United States v. Lukashov*, 694 F.3d 1107 (9th Cir. 2012) .............................................. 31

*United States v. Marrero-Ortiz*, 160 F.3d 768 (1st Cir. 1998) ........................................ 35

*United States v. Matlock*, 415 U.S. 164 (1974) ............................................................... 24

*United States v. Miller*, 874 F.2d 1255 (9th Cir. 1989) ................................................... 26

*United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007) .................................................. 24

*United States v. Muse*, 83 F.3d 672 (4th Cir. 1996) ........................................................ 37

*United States v. Nazzaro*, 889 F.2d 1158 (1st Cir. 1989) ................................................. 9

*United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995) ..................................................... 41

*United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000) .................................................... 24

*United States v. Osazuwa*, 564 F.3d 1169 (9th Cir. 2009) .............................................. 11

*United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993) .................................................. 42

*United States v. Porter*, 562 F. Supp. 3d 1162 (E.D. Cal. 2022) ..................................... 16

*United States v. Rodriguez*, 971 F.3d 1005 (9th Cir. 2020) ....................................... 37, 40

*United States v. Rushin*, 844 F.3d 933 (11th Cir. 2016) .................................................. 38

*United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993) ............................................... 37

*United States v. Sine*, 493 F.3d 1021 (9th Cir. 2007) ...................................................... 31

*United States v. Thomas*, 134 F.3d 975 (9th Cir. 1998) .................................................... 9

*United States v. Thomas*, 835 F.2d 219 (9th Cir. 1987) .................................................. 42

*United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001) ............................................... 37

*United States v. Vallejos*, 742 F.3d 902 (9th Cir. 2014) .............................................. 24, 25

*United States v. W.R. Grace*, 504 F.3d 745 (9th Cir. 2007) ............................................ 28

*United States v. Washington*, 106 F.3d 983 (D.C. Cir. 1997) ........................................... 9

*United States v. Yang*, 2019 WL 5536213 (N.D. Cal. 2019) ........................................... 22

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684 (C.D. Cal. 2010) ............. 22

**Statutes**

18 U.S.C. § 242 ........................................................................................................ 20, 42

**Federal Rules of Evidence**

106 ................................................................................................................................ 25
401 ................................................................................................................. 21, 33, 36
402 ................................................................................................................................ 21
403 ........................................................................................................................ passim
404 ...................................................................................................................... 9, 11, 41
405 .......................................................................................................................... 9, 10
407 ................................................................................................................................ 34
408 ................................................................................................................................ 22
412 ........................................................................................................................ 11, 17
607 .................................................................................................................................. 9
608 ............................................................................................................ 9, 11, 15, 16
609 ........................................................................................................................ passim
615 ................................................................................................................................ 43
702 ................................................................................................................................ 30
703 ................................................................................................................................ 29
801 ........................................................................................................................ 24, 25
803 ................................................................................................................................ 27
806 ................................................................................................................................ 30
807 ................................................................................................................................ 27

## RELEVANT BACKGROUND

Defendant Tony Daniel Klein is charged with 21 counts of 18 U.S.C. § 242 and four counts of 18 U.S.C. § 1623.  All of the charges stem from the defendant's conduct while employed by the Oregon Department of Corrections (ODOC) at the Coffee Creek Correctional Facility (CCCF or "Coffee Creek") as an "Institution Nurse" from 2010 to 2018.  The indictment charges that between 2016 and 2017, the defendant, while acting under color of law, willfully deprived 12 female inmates of their constitutional rights by sexually assaulting them or subjecting them to other sexual touching without their consent.  The indictment further charges the defendant with four counts of perjury for falsely denying during a deposition that he had ever engaged in particular sexual acts or conduct with any incarcerated woman at CCCF.  That deposition was taken in a federal civil case brought by ten women who were formerly incarcerated at CCCF.  *See Suarez v. Peters et al.*, 3:19-cv-95 (D. Or. 2019) (and related cases).

The victims in this case began reporting the defendant's conduct to authorities as early as 2017.  Their reports caused the Oregon State Police (OSP) to initiate an investigation.  During that investigation, OSP conducted audio-recorded interviews of numerous witnesses, including the defendant.  OSP then referred the matter to the Washington County District Attorney's Office, which declined to prosecute.  Meanwhile, having participated in some of OSP's interviews, ODOC conducted an internal investigation.  The United States then opened and conducted its own independent federal criminal investigation.

///

///

///

**Government's Omnibus Motion *in Limine***                                                                  **Page 8**

MOTIONS <em>IN LIMINE</em>

## I.    Motions To Exclude Improper Character Evidence

The United States moves to exclude improper character evidence pertaining to the defendant, the victims, and other testifying witnesses in this case, in accordance with Federal Rules of Evidence 404, 405, 412, 607, 608, and 609.

In general, "evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a); *see also United States v. Charley*, 1 F.4th 637, 645 (9th Cir. 2021). The general prohibition has limited exceptions for a defendant or victim in a criminal case: a defendant may offer evidence of the defendant's pertinent trait, or he may offer evidence of an alleged victim's pertinent trait. Fed. R. Evid. 404(a)(2)(A)-(B). "The word 'pertinent' is read as synonymous with relevant." *United States v. Kail*, 2021 WL 261135, at *6 (N.D. Cal. 2021) (citing *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982)). If the defendant opens the door to character evidence, the prosecutor may offer evidence to rebut the defendant's evidence. Fed. R. Evid. 404(a)(2)(A)-(B) (explaining methods for rebuttal). In addition, evidence of a witness's character may be admitted under Federal Rules of Evidence 607, 608, and 609. Fed. R. Evid. 404(a)(3).

Under Rule 405(a), where character evidence is admissible, it may be proved only by "testimony about the person's reputation or by testimony in the form of opinion," unless character is an essential element of a charge, claim or defense, an exception not applicable here.[1] On cross-

---

[1] Rule 405(b) provides, "When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." Where, as here, proof or lack of proof of a character trait does not satisfy an element of the charge or defense, "then character is not essential and evidence should be limited to opinion or reputation." *United States v. Keiser*, 57 F.3d 847, (9th Cir. 1995).

examination of the character witness, the court may allow inquiry into relevant specific instances of conduct.  Fed. R. Evid. 405(a).

### A.  Motion to Exclude Evidence of the Defendant's Good Character and Specific Acts of Good Conduct (Motion *in Limine* 1)

The defendant should be precluded from offering testimony that he was professional, devoted to his job, or dedicated to public service.  These traits are irrelevant to the charges against him or to any of his potential defenses.  *See United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) (court properly excluded evidence of government service to the extent it was offered to show terrorism defendant was patriotic or pro-government); *United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (evidence of defendant's "[d]edication, aggressiveness and assertiveness" as an officer not pertinent to nor an essential element of corruption charges); *United States v. Nazzaro*, 889 F.2d 1158, (1st Cir. 1989) (trial court properly excluded evidence of police officer's awards and commendations because "the traits which they purport[ed] to show—bravery, attention to duty, perhaps community spirit— were hardly 'pertinent' to" the defendant's mail fraud conspiracy and perjury charges); *cf. United States v. Thomas*, 134 F.3d 975, 979 (9th Cir. 1998) (defendant could introduce non-hearsay evidence on lack of criminal history only as it was necessary to entrapment defense).  Evidence of those traits, or the defendant's general good conduct, has no bearing on the question of whether the defendant committed the charged crimes. "A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions."  *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955); *see also United States v. Glazer*, 850 F. App'x 488 (9th Cir. 2021) (quoting *Herzog*).  Evidence of non-pertinent character traits risks confusing the issues relevant to this case and could unfairly lead the jury to reach its verdict based on personal opinions or sympathies.  Fed. R. Evid. 403.

**B. Evidence of Victims' Purported Bad Character or Conduct and Sexual Behavior**

Evidence of the victims' purported bad character and specific bad acts should not be admitted, except as appropriate to impeach under Rules 607, 608, and 609.  The United States anticipates that the defendant may reference or seek to introduce improper evidence of the victims' purported bad character or specific instances of bad conduct, such as their arrests, convictions, prior sexual behavior, disciplinary record while incarcerated, gang affiliations, tattoos, or other activities while incarcerated.  Evidence of any victim's character, other than their character for truthfulness (or untruthfulness) is either not relevant to the crimes charged in this case, barred by statute, or both.  Fed. R. Evid. 404, 412, 608, 609.  Character evidence that is not probative of truthfulness or untruthfulness should therefore be excluded.  In the event that these topics, such as prior convictions permitted under Rule 609, *are* appropriate areas for impeachment, the Federal Rules limit the means by which such evidence can be presented to the jury.

1. <u>Motion to Exclude Prior Criminal Convictions Beyond Rule 609's 10-Year Limitation (Motion in *Limine* 2)</u>

Federal Rule of Evidence 609 controls the admissibility of evidence of prior convictions to impeach a witness's character for truthfulness.  Under Rule 609, felony convictions are admissible, subject to Rule 403, to impeach a witness other than the defendant.  Fed. R. Evid. 609(a)(1)(A).  In addition, Rule 609 permits impeachment by evidence of a prior conviction, whether a misdemeanor or felony, "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.  Fed. R. Evid. 609(a)(2).  As the Ninth Circuit has concluded, "Generally, crimes of violence, theft crimes, and crimes of stealth do not involve 'dishonesty or false statement' within the meaning of rule 609(a)(2)." *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982)).  But convictions

involving "dishonesty or false statement" that *do* fall within 609(a)(2)'s scope are "automatically admissible" and not subject to Rule 403 balancing. *Id.* at 1272; *see also* Fed. R. Evid. 609(a)(2).

Both categories of conviction are subject to the temporal limit imposed by Rule 609(b), which excludes convictions that are more than ten years old or for which the witness's release from confinement occurred more than ten years ago, whichever is later, unless the probative value of the conviction substantially outweighs its prejudicial effect. Fed. R. Evid. 609. "Convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *United States v. Connelly*, 613 F. App'x 604 (9th Cir. 2015) (quoting Fed. R. Evid. 609(b) advisory committee's note). Finally, if a prior conviction is admissible under Rule 609, the scope of the inquiry into the conviction is limited. *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) ("only the prior conviction, its general nature, and punishment of felony range [are] fair game for testing the defendant's credibility"). "Absent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction." *Id; see also United States v. Gordon*, 780 F.2d 1165, 1176 (5th Cir. 1986) (limiting cross-examination to "the number of convictions, the nature of the crimes and the dates and times of the convictions" and excluding "the particular facts of [the witness's] previous offenses) (cited with approval in *Osazuwa*, 564 F.3d at 1175).

The parties agree that the chart attached to this motion lists the convictions that may be used for impeachment under Fed. R. Evid. 609. To the extent the defendant seeks to admit additional criminal convictions, the United States moves to exclude them under Rule 609(b), because the probative value of these additional crimes is substantially outweighed by the prejudicial effect. The jury will learn that each witness who was incarcerated at Coffee Creek has

at least one criminal conviction—that is how they encountered the defendant.    Additional

convictions, beyond 609(b)'s ten-year limitation, are cumulative and a waste of time.[2]

2.  <u>Motion to Exclude Name and Nature of AV3's Criminal Convictions, Under Rule 403
(Motion in *Limine* 3)</u>

Next, the United States moves this Court to exclude the specific name and nature of AV3's

convictions under Rule 403, because the probative value is substantially outweighed by the risk of

unfair prejudice.  The relevant rules are listed above.  AV3 pleaded guilty to attempted murder,

first-degree manslaughter, and unauthorized use of a motor vehicle in 2010, when she was 24 years

old.  She remains incarcerated as a result of those crimes.  If AV3 testifies, the fact of her felony

convictions will be admitted under Rule 609.  These particular crimes, however, are no more

probative of truthfulness than any other conviction—and the risk of unfair prejudice stemming

from the nature of the crimes is significant.  Limiting the details and excluding the nature of the

convictions is therefore appropriate under Rule 403.  *See Edwards v. Techtronic Indus. N. Am.,

Inc.*, 2015 WL 3616558, at *12 (D. Or. 2015) (where plaintiff had felony convictions for robbery,

assault, and attempted kidnapping, the fact of the convictions was admissible under Rule 609 but

excluding the specific names and nature of the crimes under Rule 403); *Emery v. Harris*, 2014 WL

467081, at *2 (E.D. Cal. 2014) (limiting information about plaintiff-prisoner's convictions related

to theft, drugs, and weapons where "credibility of all the parties and witnesses is a significant issue

in the case"); *Diggs v. Guynup*, 2022 WL 3355959, at *1-2 (N.D.N.Y. 2022) (excluding, under

Rule 403, names of convictions for attempted murder and criminal possession of weapon, but

ruling that the number of convictions, the year, and the sentence was admissible impeachment

---

[2] In the event the defendant seeks to introduce criminal convictions pursuant to Rule 609(b), the
United States hereby requests "reasonable written notice."  Fed. R. Evid. 609(b)(2).

**Government's Omnibus Motion *in Limine***                                                    **Page 13**

under Rule 609(a)); *see also Ellis v. Navarro*, 2012 WL 3580284, at *2 (N.D. Cal. 2012) (excluding entirely, under Rule 403, plaintiff-prisoner's prior conviction for attempted murder of a police officer in civil-rights action for assault by corrections officers). Although the number and year of AV3's convictions may be admitted so that the jury can consider that in assessing her credibility, the United States moves the Court to exclude the names and nature of the offenses, under Rule 403.

### 3. Motion to Exclude Questions About or Evidence of Prior Arrests That Did Not Result in Conviction, and to Limit Questions or Evidence About Pending Criminal Charges (Motion *in Limine* 4)

The United States next moves to exclude questions, evidence, and argument about witnesses' prior arrests that did not result in convictions, and to limit evidence about any pending criminal charges. "Arrest without more does not . . . impeach the integrity or impair the credibility of a witness." *Michelson v. United States*, 335 U.S. 469, 482 (1948). And as the Ninth Circuit has previously concluded, "[t]he trial court need not overemphasize the untrustworthiness of a witness by permitting cumulative impeachment." *United States v. Jackson*, 882 F.2d 1444, 1447 (9th Cir. 1989) (not reversible error to exclude evidence of witness's participation in fraud when she testified that she had previously participated in fraud scheme with defendant).

All of the victims in this case have criminal convictions—that is precisely how they came to interact with the defendant. And some of those convictions are for crimes of dishonesty, which the Federal Rules recognize as probative of truthfulness. *See* Fed. R. Evid. 609(a)(2). Additionally, some of the victims also have prior arrests that did not result in conviction or that resulted in charges that were later dropped. This Court should preclude the defendant from cross-examining witnesses on any arrests or charges that, for whatever reason, did not result in conviction; asking each victim about arrests that did not result in conviction, particularly when

every victim has at least one conviction that resulted in a prison sentence, is simply a waste of time and cumulative.  Thus, this Court should exclude the evidence under Rule 403.

For the same reasons, this Court should limit evidence or argument about pending criminal charges against any of the victims under Rule 403.  Since the defendant's indictment, some of the victims have been charged with offenses that have not yet been adjudicated.  The charges or alleged underlying conduct has no connection to the events at issue in this case.  The United States is not involved in those investigations in any way, and it has not influenced, or attempted to influence, those investigations in exchange for any witness's testimony or cooperation.  Because the charges have not yet been adjudicated, the probative value of this information is minimal, but there is a substantial risk of unfair prejudice, and that the jury will give improper weight to the existence of pending criminal charges.  To the extent the Court permits inquiry into these matters on cross-examination, the cross-examination should be limited to bias and whether the witness expects (or hopes) to receive a benefit in exchange for testimony.  The nature of the pending charges should be excluded.  Fed. R. Evid. 403.

4. <u>Motion to Exclude Prison Disciplinary Records and Evidence of Other Conduct While in Custody</u> (Motion *in Limine* 5)

Rule 608(b) sharply limits the manner in which specific-acts evidence related to truthfulness can be presented to a jury.  Under that Rule, the Court may permit cross-examination into specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness of the witness or another witness whose character the witness being cross-examined has testified about." Fed. R. Evid. 608(b).  Extrinsic evidence is not admissible. *Id.*

Victims' and witnesses' prison disciplinary records are not admissible because they are extrinsic evidence that would be introduced for purposes of impeachment, contrary to Rule 608(b).

They should therefore be excluded.  Additionally, the United States would object to these records on hearsay grounds.  *See, e.g.*, *Seals v. Mitchell*, 2011 WL 1399245, at *6 (N.D. Cal. 2011) (granting plaintiff-prisoner's motion to exclude prison disciplinary records as irrelevant, prejudicial, inadmissible character evidence, and inadmissible hearsay).

Moreover, this Court should exclude evidence and limit cross-examination about conduct or information contained in the records that is not probative of the witness's character for truthfulness or otherwise admissible for impeachment. *See* Fed. R. Evid. 608(b).  Instead, such evidence will merely besmirch the witness's character generally.  For instance, many witnesses have inflammatory or offensive tattoos on their bodies, including tattoos that they received while incarcerated.  Some of the tattoos involve racist or antisemitic imagery; others include foul language.  These tattoos are documented in prison records.  The tattoos are not relevant in this case, which does not involve issues of identification.  Nor are the tattoos probative of truthfulness or bias.  Thus, no inquiry about them is appropriate.  In addition, some witnesses have been disciplined for physical fighting; this, too, is not probative of a witness's character for truthfulness. Finally, some witnesses are alleged to have been part of a gang called "Sisters in Skin," which some prison staff viewed as a racial gang; this is relevant only to show that the women knew each other.  Gang membership alone is not probative of truthfulness, and the Ninth Circuit has "recognized time and time again that gang evidence has the potential to be particularly prejudicial." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 602 (9th Cir. 2016); *see also Kennedy v. Lockyer*, 379 F.3d 1041, 1055 n.16 (9th Cir. 2004) (testimony about gangs or gang affiliation is "highly prejudicial").  This Court should therefore exclude any reference to a "gang" or to the name of the group, as the danger of unfair prejudice far outweighs the probative value that the word "gang" or its name could offer.  Fed. R. Evid. 403.  Cross-examination into these areas, and any other area

that lacks a connection to veracity, is inappropriate under Rules 608(b) and 403, and should be excluded.

    5.  <u>Evidence of Victims' Other Sexual Behavior Is Inadmissible (Motion *in Limine* 6)</u>

    The defendant also may not reference or introduce evidence of the victims' other sexual behavior or "sexual predisposition," whether they are victims charged in the indictment or identified in the United States' Rule 413/404(b) Notice. Federal Rule of Evidence 412 prohibits evidence offered either to prove that a victim of sexual assault engaged in other sexual behavior or to prove a victim's sexual predisposition. Fed. R. Evid. 412(a)(1) and (2); *United States v. Haines*, 918 F.3d 694, 697-98 (9th Cir. 2019) (excluding under 412 witness's other prostitution activity); *see also United States v. Porter*, 562 F. Supp. 3d 1162, 1176 (E.D. Cal. 2022) (excluding under Rule 412 rumors that the victim had sexually assaulted other people, was promiscuous, and had a sexually suggestive nickname). This rule bars evidence of a victim's sexual behavior whether it is offered either as substantive evidence or for impeachment purposes. Fed. R. Evid. 412 advisory committee's note. And "evidence, which might otherwise be admissible under Rules 402, 404(b), 405, 607, 608, 609, or some other evidence rule, must be excluded if Rule 412 so requires." *Id.* As the Advisory Committee noted: "[The rule] is designed to exclude evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder. Admission of such evidence would contravene Rule 412's objectives of shielding the alleged victim from potential embarrassment and safeguarding the victim against stereotypical thinking." *Id.*

    There are three narrow exceptions to this rule in criminal cases, and none is relevant here. *See* Fed. R. Evid. 412(b)(1) (exceptions to prove another source of semen, to prove consent, or as required by the Constitution). Even if the evidence may be admissible pursuant to an exception,

it may nevertheless still be excluded for another reason, such as Rule 403. *Porter*, 562 F. Supp. 3d at 1174 (citing *United States v. Carson*, 870 F.3d 584, 592 (7th Cir. 2017)).

By its terms, Rule 412 establishes that the defendant may not introduce evidence relating to the sexual history, sexual acts, or other sexual behavior performed by the victims in this case, other than evidence pertaining to the acts charged in the Indictment or acts of uncharged conduct described in the United States' Rule 413/404(b) Notice.  ECF No. 87.

## II.     Motion To Limit Use of Victims' Medical Information (Motion *in Limine* 7)

The United States moves to limit the admissibility of victims' medical information except where the information tends to corroborate, explain, or refute testimony that a victim interacted with the defendant on a particular date.  Any other use of these records, which contain highly sensitive information, is improper impeachment and irrelevant to the question of whether the defendant committed the charged offenses.  Furthermore, except in the limited circumstances set forth above, the probative value of the medical information is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.

During its investigation, the United States sought, and has since disclosed to the defense, complete and unredacted medical records that detail every interaction that each victim had with medical personnel while incarcerated at Coffee Creek.[3]  For nearly every victim, these records consist of many hundreds of pages.  These records serve a limited purpose: they explain why or how the defendant had access to a particular victim (for instance, to treat a chronic condition), or they establish a particular date or date range when the victim sought medical treatment related to a particular issue.  The United States anticipates using these records to corroborate witness

---

[3] These unredacted records were provided under the terms of a protective order from this Court.

testimony, such as to demonstrate that the defendant provided medical care when a victim says he did, or to show that a victim was seeking treatment during a particular timeframe, and thus reflect when she may have interacted with the defendant. They are therefore relevant to establish when the charged conduct occurred.

It is well understood that medical records contain sensitive and confidential information—"some of the most sensitive and intimate information about one's physical, mental, and emotional well-being." *Cooper v. Fed. Aviation Auth.*, 622 F.3d 1016, 1030 (9th Cir. 2010) (en banc) (analyzing whether the Privacy Act of 1974 authorizes particular damages), *rev'd by Fed. Aviation Auth. v. Cooper*, 566 U.S. 284 (2012); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) ("there are few matters that are quite so personal as the status of one's health"). This is especially true in an environment as controlled as a prison, where medical treatment that might otherwise be available at a drugstore or over-the-counter instead requires an appointment with a medical provider, generating a record. The information contained in medical records can be highly stigmatizing and inflammatory. *See, e.g.*, *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1269 (9th Cir. 1998) (information pertaining to sexual history, such as pregnancy or sexually transmitted infections, "may invite tremendous amounts of social stigma" or "often carr[y] far-reaching societal implications"). Such records therefore pose a significant risk of unfair prejudice, which must be carefully balanced against the probative value of the information.

In this case, the victims' medical records serve a limited purpose, as noted above. These records may be used to impeach a witness only in extremely narrow circumstances. Evidence about a witness's other physical medical conditions, complaints, diagnoses, or procedures, however, may be highly stigmatizing with little to no probative value. If used in any way other than to challenge witnesses about when or if they encountered the defendant, the probative value

of a witness's medical records or medical history is substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403.  If the defense intends to use medical records or medical information for any purpose other than challenging witnesses about when or if they encountered the defendant, the United States requests advance notice so that it may have an opportunity to respond and this Court can appropriately weigh the probative value of such information against the danger of unfair prejudice.

### III.    Motion To Exclude or Limit Evidence That Contains Inaccurate, Irrelevant, or Improper Legal Standards (Motion *in Limine* 8)

In a case involving a violation of 18 U.S.C. § 242, evidence about the training that a defendant received is relevant proof of willfulness.  For example, the United States intends to use training evidence in this case primarily to show that the defendant was, in fact, taught that it violated the law and the Constitution to sexually assault women in custody, but that he disregarded that training and acted with the specific intent to do something the law forbids.  *See Screws v. United States*, 325 U.S. 91, 104 (1945) ("One who does act [willfully] is aware that what he does is precisely that which the [law] forbids.").  While this evidence may reference some aspects of the relevant laws, the United States has taken care to redact exhibits that offer statements of law that are not directly (and narrowly) related to the defendant's intent.

The defendant's exhibit list includes several documents containing PowerPoint slides that appear to be from ODOC or CCCF trainings.[4]  One of these trainings, entitled "Legal Issues," is a 132-page presentation that provides, in great detail, an overview of the Bill of Rights, including the right to due process and the right against self-incrimination.  It sets forth legal standards from

---

[4] Specifically, the United States objects, on this basis, to portions of Exhibit 1077 and Exhibit 1079.

state law and administrative regulations about multiple policies not relevant to this case, such as use of the telephone or shower. It further instructs on legal standards for civil cases, and provides an explanation of "negligence" and tort claims. None of this information is relevant to the instant case, which is not about negligence, torts, deliberate indifference or any other variety of legal concepts that corrections staff learn about during the course of their employment. Instead, the introduction of such irrelevant and inapplicable legal standards will be confusing to the jury. To the extent these documents contain statements of law that are not relevant to the defendant's mental state—i.e., willfulness—they should be excluded as irrelevant, misleading, and confusing. Fed. R. Evid. 401, 402, 403. In addition, some of the trainings provided in the defendant's exhibit list are trainings that, based on his training records, do not appear to have been provided to the defendant at all. The United States therefore moves to exclude trainings that the defendant did not receive; if he did not receive a training, it cannot affect his mental state and is therefore irrelevant. Fed. R. Evid. 401.

## IV.    Motion To Limit Evidence of Civil Settlements Against Defendant and ODOC (Motion *in Limine* 9)

The United States moves to limit evidence of civil lawsuits and subsequent financial settlements against the defendant and ODOC. Evidence of civil lawsuits is relevant only as it relates to the credibility of a testifying witness, and even then must be narrowly tailored to avoid unfairly prejudicing a party, confusing the issues, misleading the jury, or potentially encouraging nullification by implying that because the recipient of a settlement has already been made whole, criminal prosecution is unwarranted. The United States moves to tailor cross-examination about the civil lawsuits to questioning the witness about the existence of a civil suit, whether she expected any pecuniary gain in filing the suit, or any inconsistencies between statements made in

the civil suit and her other statements.  Questions about the initial demand in the complaint or the ultimate settlement sum should be excluded under Rules 401, 402, and 403.

Seven of the women identified in the Indictment (AVs 1, 4, 6, 8, 9, 10, and 11) have filed federal civil lawsuits against the defendant and ODOC alleging violations of their constitutional rights under 42 U.S.C. § 1983, based on much of the same conduct that is charged here.  Two other women (AVs 14 and 18) also filed civil lawsuits.  All of the lawsuits have reached a financial settlement and been voluntarily dismissed; there are no pending lawsuits related to the defendant's conduct.[5]

For each of the women who testifies at trial, evidence of her civil lawsuit could be relevant; one possible "attack on the witness's credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska*, 415 U.S. 308, 316 (1974).  It is well established that "pecuniary interest may be shown to prove bias." *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999); *see also* Fed. R. Evid. 408(b) (evidence of offers to compromise may be admitted to prove a witness's bias or prejudice).  Though a pecuniary interest such as a civil lawsuit may reveal a witness's potential bias, courts have recognized the difference between a pending suit and a completed one.  *See, e.g.*, *Harris*, 185 F.3d at 1008 (district court erred by not admitting evidence of witness's *pending* civil lawsuit that would be directly affected by outcome of criminal case); *United States v. Dees*, 34 F.3d 838, 844 (9th Cir. 1994) ("if [witness] stood to gain more from a conviction than an acquittal, then the

---

[5] The United States is aware that one person on its witness list has a pending lawsuit for injuries she suffered while incarcerated at CCCF but that are completely unrelated to the defendant.  The United States does not intend for this Motion *in limine* to apply to that litigation.

[excluded evidence] was relevant as to bias"); *United States v. Yang*, 2019 WL 5536213, at *7 (N.D. Cal. 2019) (permitting cross-examination into existence and amount of *ongoing* civil lawsuit); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *23 (C.D. Cal. 2010) ("Inquiry into a witness' financial interest in the outcome of a case, and the extent of that interest, is essential [to bias].") (citing *United States v. Int'l Bus. Machines Corp.*, 84 F.R.D. 651, 652 (S.D.N.Y. 1979)); *but see United States v. Gambler*, 662 F.2d 834, 837-38 (D.C. Cir. 1981) (excluding amount of lawsuit was not abuse of discretion because witness's lawsuits against defendant had been settled and terminated) (cited with approval in *United States v. Harris*, 185 F.3d 999, 1008 n.27 (9th Cir. 1999)).

The Court should limit cross-examination about any witness's civil lawsuit, because any pecuniary interest in the litigation has passed; the lawsuits have settled, there are no pending suits, and no witness has a pecuniary interest in the outcome of *this* criminal case. "The district court can exercise discretion to avoid undue consumption of time and confusion of issues in the cross examination." *Harris*, 185 F.3d at 1008. Here, cross-examination should be limited to questioning the witness about the existence of a civil suit, whether she expected any pecuniary gain in filing the suit, or any inconsistencies between statements made in the civil suit and her other statements. If the witness acknowledges the existence of the lawsuit, an expectation of pecuniary gain, or any inconsistencies between her statements, no further evidence should be admitted on the subject.

Additional details about the lawsuits, including the amount of the initial demand in the complaint or the amounts a victim may have ultimately received through a negotiated settlement agreement, should be excluded. This information is not only irrelevant, but the probative value is substantially outweighed by the risk of confusing the issues and misleading the jury. This is

particularly true where, as here, a witness's lawsuit has been settled and terminated. *See United States v. Gambler*, 662 F.2d 834, 837-38 (D.C. Cir. 1981) (cited with approval in *United States v. Harris*, 185 F.3d 999, 1008 n.27 (9th Cir. 1999)).  Furthermore, evidence about specific sums of money confuses the issues—it tempts the jury to wonder why each woman demanded or received the amount of money that she did, and what that might mean.  But many factors contribute to any financial award—whether through settlement or otherwise—that may result from a civil lawsuit, including factors such as the nature of the complained-of conduct and the severity of any injury.  A financial award may also include both punitive and compensatory damages, including for physical injury as well as emotional and mental distress. *See, e.g.*, *Flores v. Pierce*, 617 F.2d 1386 (9th Cir. 1980) (discussing various bases for damages).  Questions or evidence that wade into these topics would be unduly prejudicial, mislead the jury, and confuse the focus of this criminal trial—guilt or innocence—with determinations made in a separate, civil context, with different factual considerations and a different burden of proof.

### V.    Motion To Preclude Defendant's Use of Self-Serving Hearsay Statements (Motion *in Limine* 10)

The United States moves the Court to prohibit the defendant from eliciting his own out-of-court statements, either by introducing them through defense witnesses or eliciting them from the prosecution's witnesses on cross-examination.  The United States will seek to introduce in its case in chief some of the defendant's prior statements, pursuant to Rule 801(d)(2).  Under this Rule, the defendant's statements are admissible by the United States, even if the defendant does not testify. *See United States v. Kenny*, 645 F.2d 1323, 1339-40 (9th Cir. 1981).  A defendant's own out-of-court statements, when offered by the prosecution, "surmount all objections based on the

hearsay rule" and are "admissible for whatever inferences the [factfinder] could reasonably draw."
*United States v. Matlock*, 415 U.S. 164, 172 (1974).

The defendant himself may not, however, offer into evidence his own prior, out-of-court statements. When offered by the defendant, such statements constitute inadmissible hearsay because they are offered by, not against, the party to whom the statement is attributable. *United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007) ("These statements were inadmissible hearsay; as [the defendant] was attempting to introduce them himself, they were not party-opponent admissions"). Put differently, Rule 801(d)(2) precludes the defendant from putting his own out-of-court statements before the jury without being subjected to cross-examination. *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (defendant not permitted to elicit his hearsay statements on cross examination because doing so would have allowed him to "to place his exculpatory statements before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids.") (quotation omitted).

## A. The Rule of Completeness Does Not Compel the Admission of Otherwise Inadmissible Hearsay

The Rule of Completeness, codified at Federal Rule of Evidence 106, provides a very limited exception to Rule 801(d)(2). Under Rule 106, "if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 does not, however, "compel admission of otherwise inadmissible hearsay evidence." *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). Rather, a defendant may elicit portions of his own statements only "to avert misunderstanding or distortion caused by introduction of only part of a document." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014). Absent a need to admit

some additional portion of a defendant's statement to correct a misleading impression, the defendant's out-of-court statements remain inadmissible hearsay.

In particular, the United States expects this issue is most likely to arise in the context of the defendant's deposition. Statements from his deposition serve as the basis for Counts 22 through 25 of the Indictment, and the United States plans to offer these statements. Doing so, however, does not invite the defendant to introduce other portions of his deposition, either directly or through cross-examination, because the statements require no further explanation or clarification to "avert misunderstanding or distortion." *Vallejos*, 742 F.3d at 905. The statements charged in the Indictment are part of their own "chapter" of the defendant's deposition and they require no additional context to be properly and fairly understood. To the extent the United States intends to offer other statements from the defendant's deposition, it will ensure those statements are also placed in their proper context. Finally, if the United States intends to offer in its case-in-chief statements from the defendant's deposition other than those charged in the Indictment, the United States will provide the defendant with advance notice of the portions it seeks to admit.

### B. The Defendant's Self-Serving Statements Are Hearsay Without Any Applicable Exception

The United States anticipates that the defendant may attempt to introduce his own statements, contained in emails that he sent to supervisory staff while he was employed at Coffee Creek. If offered by the defendant, these statements are inadmissible hearsay not falling within any exception and therefore should be excluded.

In the final months of his employment, the defendant sent multiple emails to supervisory staff members related to his job duties and the fact that he spent time alone with inmates during the course of performing his duties. In some of these emails, the defendant inquired about the

feasibility of infrared cameras based on a purported desire to better protect employees.  And in one, he explicitly raised concerns about being alone with inmates, and how that put him at "increased risk" of being "set up"—precisely the narrative that the United States expects is at the heart of the defense theory.

These self-serving emails are hearsay and do not fall into any exception; they also do not contain any indicia of reliability and trustworthiness at the heart of the hearsay exceptions.  *See, e.g.*, Fed. R. Evid. 807 (requiring "sufficient guarantees of trustworthiness" under residual hearsay exception).  In particular, the defendant cannot avail himself of Rule 803(3) to admit these statements.  That rule permits "a statement of the declarant's then-existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health."  Fed. R. Evid. 803(3).  It does not permit, however, "a statement of memory or belief to prove the fact remembered or believed."  Fed. R. Evid. 803(3).  Moreover, "[t]he state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind."  *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987); *see also United States v. Fontenot*, 14 F.3d 1364, 1371 (9th Cir. 1994) (statements not admissible under 803(3) because "they contain statements of belief, not condition").  "[T]he rationale of the hearsay exception in Rule 803(3) is that the declarant presumably has no chance for reflection and therefore for misrepresentation."  *United States v. Miller*, 874 F.2d 1255, 1264 (9th Cir. 1989) (excluding statement because the declarant "had had a sufficient opportunity to fabricate" his statement, offered two hours after the event to which it related).

Nearly all of the defendant's emailed statements are beliefs, not conditions.  For instance, in his email about cameras in the medical unit, the defendant ends by writing, "I'm hoping

something more can be done to help protect the employees here."  This final statement is flatly inadmissible; it explains what the defendant was hoping for and why.  It is a statement of belief, not condition.  *Fontenot*, 14 F.3d at 1371.  Similarly, the defendant's statement that he "believe[d] all the nurses and medical providers are at increased risk because of [CCCF's practices]" is— explicitly—a belief, not a statement of mental condition.  These statements of belief should therefore be excluded.

### C.  The Defendant Cannot Use His Expert Witness To Circumvent the Hearsay Rules

Finally, the defendant may not offer his own statements through his expert witness, Constantine Alleyne, in an attempt to circumvent the hearsay rules.[6]  The defendant's expert notice indicates that Ms. Alleyne's testimony will explain circumstances that arise in custodial settings that can contribute to false accusations being made against staff or other forms of exploitation.  ECF No. 59, at 3.  If Ms. Alleyne's conclusions and opinions depend upon information provided by the defendant's own statements, which would be inadmissible hearsay if offered by him, this Court should preclude Ms. Alleyne from testifying about the content of the defendant's prior statements or about any other inadmissible evidence.

"Expert witnesses may rely on inadmissible hearsay in forming their opinions, so long as it is of a type reasonably relied upon by experts in their field."  *United States v. Cazares*, 788 F.3d 956, 977 (9th Cir. 2015).  Though an expert may, in forming her opinion, use *reasonably-relied-upon* information that is otherwise inadmissible, "the proponent of the opinion may disclose [the

---

[6] At the time of filing, the United States lacks sufficient information about Ms. Alleyne's proposed opinions or the bases for her opinions, other than her generalized experience.  *See* ECF Nos. 59, 67.  Consequently, the United States cannot currently identify any specific opinions that the defendant may attempt to offer that raise this issue but nevertheless expects it may arise at trial.

underlying evidence] only if [its] probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.  In conducting this balancing, the Court "must consider the information's probative value in assisting the jury to weigh the expert's opinion on the one hand and the risk of prejudice resulting from the jury's potential misuse of the information for substantive purposes on the other." Fed. R. Evid. 703 advisory committee's note.  In other words, Rule 703 provides "a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose." Fed. R. Evid. 703 advisory committee's note.  When the underlying inadmissible evidence is admitted, "a limiting instruction typically is needed—i.e., the evidence is admitted only to help the jury evaluate the expert's evidence." *United States v. W.R. Grace*, 504 F.3d 745, 759 n.7 (9th Cir. 2007).

An expert witness cannot merely parrot facts that would otherwise be inadmissible hearsay, such as statements made by the defendant, whether in emails, in conversations, or in preparation for litigation. *See McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1294 (D. Haw. 2007) (excluding portions of expert report that "simply recite[] facts that constitute inadmissible hearsay"); *cf. Garcia v. Giurbino*, 46 F. App'x 881, 882 (9th Cir. 2002) (proper to exclude defendant's self-serving hearsay as basis for expert opinion because the hearsay was not corroborated by any evidence at trial).  This is particularly true where there is a threat of potential misuse. *Edwards v. Techtronic Indus. N. Am., Inc.*, 2015 WL 13649297 (D. Or. 2015) (in a products-liability lawsuit, excluding out-of-court statements made by the inventor of the technology at issue because "the jury may potentially misuse for substantive purposes any information it receives about out-of-court statements").

In sum, the United States requests that this Court prohibit the defendant from eliciting self-serving statements from witnesses, including his own expert, through cross-examination, or by introducing portions of his recorded statements.  Nor should the defense be permitted to recite the defendant's hearsay statements in its opening statement or in closing argument.  If the defendant wants to introduce his own statements, he may testify and face cross-examination.[7]

## VI.  Motions To Exclude Certain Testimony of Defendant's Proffered Expert As Unreliable, Irrelevant, and Unhelpful to the Jury, and To Limit Other Testimony (Motions *in Limine* 11 and 12)

The United States moves the Court to exclude opinions by the defendant's proffered expert, Constantine Alleyne, about topics where Ms. Alleyne lacks expertise or areas that are nontechnical issues well within the ordinary experience of the jury.  The United States requests leave to supplement this motion with additional information about Ms. Alleyne's specific opinions and the bases for them if it becomes available.

Admission of expert testimony rests primarily on the dictates and principles set forth in Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The trial judge must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.  *Daubert*, 509 U.S. at 597.  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014).

---

[7] If the defendant successfully offers one of his own out-of-court statements, the defendant's credibility may then be challenged "by any evidence which would be admissible for those purposes if the declarant had testified as a witness."  Fed. R. Evid. 806.

**A. Motion to Exclude Ms. Alleyne's Opinions Related to Mental Health or Trauma Because She Lacks Appropriate Qualifications (Motion *in Limine* 11)**

The test for "reliability" is a flexible one, and "the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Methods to qualify an expert witness are broad, and extend beyond experience, training or education to include knowledge and skill as well." *Cascadia Wildlands v. Scott Timber Co.*, 2022 WL 3017684, at *7 (D. Or. 2022). Nevertheless, an expert must have some qualifications, otherwise her testimony is merely that of a lay witness in disguise.

The defendant's notice provides that Ms. Alleyne "will testify about how the trauma backgrounds that many female [inmates] have can contribute to a culture where false accusations can arise." ECF No. 59, at 3. Ms. Alleyne, however, has no apparent qualifications that permit her to offer such an opinion. As far as the United States can tell, Ms. Alleyne has no training or experience related to mental health and trauma. According to her notice, she has a Master's degree in Public Health and an Executive Master's degree in Business Administration. Neither of these necessarily involve courses or training in mental health or "trauma backgrounds." The notice does not suggest Ms. Alleyne has any work experience specific to mental health or the effects of "trauma backgrounds" either. Nor does the notice, or her CV, indicate whether she has any experience working with female inmates, the specific population she explicitly identified in the notice about which she intends to offer an opinion. Without the necessary qualifications, Ms. Alleyne cannot offer expert testimony about how a "trauma background" may "contribute to a culture where false accusations can arise." This Court should exclude that opinion and any other testimony that

ventures into the realm of mental health or trauma, areas in which Ms. Alleyne has not demonstrated the requisite qualifications.

**B.  Motion to Exclude Ms. Alleyne's Opinions About Credibility and Limit Her Opinions to Those That Are Helpful to the Jury.  (Motion *in Limine* 12)**

Even if an expert's proffered testimony is reliable, the judge must evaluate the bases for the opinions and ensure that the proffered testimony is relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue."  *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).   Additionally, "expert testimony should be excluded if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury."  *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012).   This includes the issue of credibility, as that is within the exclusive realm of the jury.  *United States v. Sine*, 493 F.3d 1021, 1040 (9th Cir. 2007) ("the jury has the ultimate task of making credibility determines about individual witnesses"); *see also Allis v. United States*, 155 U.S. 117, 121 (1894) (it is the "exclusive province and duty [of the jury] to determine . . . the weight and credibility of the testimony of the witnesses").

At the level of generality in the defendant's notice and supplement, ECF Nos. 59 and 67, it is difficult to parse Ms. Alleyne's opinions, the bases for them, and how, specifically, they will be helpful to a jury, beyond merely offering a credibility assessment of the victims.  The defendant explains, "Ms. Alleyne's testimony will give necessary context to the testimony of the witnesses, as she will explain the unique circumstances that arise in a custodial setting that can contribute to false allegations being made against staff."  To the extent this testimony amounts to a credibility assessment of people who are incarcerated, it is improper and should be excluded; no expert can properly opine about whether another witness is credible.  *United States v. Sine*, 493 F.3d 1021,

1040 (9th Cir. 2007).  Without more, this testimony is unhelpful to a jury and invades the exclusive

province of the jury to assess credibility.  It should therefore be excluded.

VII.    **Motion To Exclude Evidence or Argument About a Particular DNA Test During OSP Investigation (Motion *in Limine* 13)**

As far as the United States is aware, of the many women who have alleged that the

defendant sexually assaulted them during their incarceration, only one attempted to preserve DNA

evidence that was later tested.[8]  The results of those tests revealed that there was some male DNA

evidence, but the amount was insufficient to compare to the defendant's sample.  The United States

does not intend to offer any evidence of the defendant's sexual conduct with that woman, and the

United States does not plan to call her to testify.  Accordingly, evidence of this particular test

should be excluded because it is irrelevant, confuses the issues, and threatens to mislead the jury.

Fed. R. Evid. 401, 403.  By this motion, the United States does not intend to exclude appropriate

evidence or argument about the lack, more generally, of DNA evidence tying the defendant to the

charged conduct or uncharged conduct (as described in the United States' Notice, ECF No. 87).

VIII.    **Motion To Exclude Evidence of Changes to the Facility, Policies, or Trainings That Were Made After the Relevant Incidents (Subsequent Remedial Measures) (Motion *in Limine* 14)**

The United States moves to exclude evidence of changes to the facility that is offered to

prove the facility's conditions at the time of the charged conduct was inadequate or flawed, and to

limit inquiry about photographs or evidence that reflects conditions other than those in place at the

time of the incidents, other than to clarify the record, as described in greater detail below.  This

---

[8] To protect her privacy, the woman is not named here.  Her identity has been disclosed to the defense in a separate communication and in materials provided through discovery.

**Government's Omnibus Motion *in Limine***                                    **Page 33**

evidence is improper under Fed. R. Evid. 407 and irrelevant, as these physical changes have no tendency to prove whether the defendant committed the charged sexual assaults.

Federal Rule of Evidence 407 provides: "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . culpable conduct, a defect in a product or its design, or a need for a warning or instruction." Rule 407 "rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407 advisory committee's note. "Courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, [and] changes in company rules." *Id*; *see also Peterson v. Mickles*, 2020 WL 214749, at *5 (D. Or. 2020) (evidence that prison added closed-circuit television cameras was a subsequent remedial measure and inadmissible to prove culpable conduct).

Evidence of physical changes to the facility and argument about the significance of those changes should be excluded. At trial, the United States intends to use photographs of the facility as a visual aid to orient the jury to the relevant areas of the prison, including the specific rooms where the defendant's sexual conduct occurred. Some of the photos were taken in preparation for trial—long after the defendant's conduct occurred. In these photos, it is apparent that CCCF has made some changes to the facility, such as increasing the size of windows or adding windows to areas where they had not been previously. The United States does not intend to draw attention to the fact that changes have been made, other than to clarify the record, as needed, that a photograph shows a condition that did not exist before 2018. The United States seeks a ruling that clarifications of this nature, consistent with Rule 407, will not open the door to any further inquiry into *why* the change was made. Aside from this limited purpose, photographs or other evidence of conditions that did not exist at the time is irrelevant, misleading to the jury, and confuses the

**Government's Omnibus Motion *in Limine***                                                      **Page 34**

issues; such evidence should therefore be excluded.  Fed. R. Evid. 403.  The fact that ODOC made changes to the physical layout of the facility, including by adding mirrors or windows or increasing the size of windows, does not illuminate whether the defendant sexually assaulted anyone while he worked at Coffee Creek. Furthermore, this Court should exclude any argument or implication that the facility's changes affirmatively reflect that there was previously a "defect" in the facility's design, or that CCCF could have been doing more to protect or "support" the defendant from the threat of allegedly false allegations.  *See Peterson v. Mickles*, 2020 WL 214749, at \*5 (D. Or. 2020).  That argument would have the effect of discouraging ODOC from making positive changes to CCCF or other facilities, precisely what Rule 407 forbids.  The United States objects to the defendant's use of subsequent remedial measures for these purposes.

Likewise, if ODOC or CCCF have made any changes to policies and training since the defendant's first accuser came forward, evidence about these changes should also be excluded under Rules 407 and 401.  Not only are these changes subsequent remedial measures being offered to prove a defect, but also they are irrelevant.  In this case, training and policy evidence is relevant to show the defendant's intent.  Therefore, the only relevant policies and training are those that the defendant was actually taught or tasked with knowing.  Evidence or argument about these changes, including through the defendant's expert witness, should also therefore be excluded.

IX.     **Motion To Exclude Evidence and Argument Related to Prosecutorial Decisions About Local Charges Against Defendant and Results of Internal Investigation (Motion *in Limine* 15)**

The Court should exclude any direct or indirect reference to, or evidence of, decisions by state prosecutors not to pursue criminal charges against the defendant because those decisions are

irrelevant, constitute inadmissible hearsay, and are unfairly prejudicial.  Similarly, the findings or results of any internal investigation should be excluded on the same bases.

As noted above, OSP initiated an investigation in 2017 into the defendant's conduct, and the local prosecutor declined to prosecute.  ODOC also conducted an internal investigation and made findings.  These investigations involved some, but not all, of the women identified in the Indictment and as AVs 13 through 21.  The United States later obtained the full investigative files from both entities but conducted its own, complete investigation.  The earlier investigative files have been produced in discovery.

The jury in this case must consider only whether the United States has proven each element of the charged offenses beyond a reasonable doubt.  The evaluation and conduct of local prosecutors—a separate sovereign acting on different evidence and with different legal standards—does not tend to make any fact consequential to this federal case "more or less probable than it would be" otherwise.  Fed. R. Evid. 401.  The discretionary decisions by local authorities do not speak to the defendant's culpability, or lack thereof, under federal law.  *See United States v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir. 1998) (upholding exclusion of evidence that local charges arising from same subject matter were dismissed); *see also United States v. Espinal*, 38 F. App'x 624, 626 (2d Cir. 2002) ("A not-guilty verdict or other dismissal of criminal charges does not establish that the defendant was, in fact, innocent of those charges."); *J.W. v. City of Oxnard*, 2008 WL 4810298, at *22 (C.D. Cal. 2008) (finding district attorney's decision not to prosecute defendant is "highly discretionary," "nothing more than the opinion of the prosecutor," and "has no probative value").  Under the same logic, findings or conclusions from the internal investigation should be excluded as well.

Even if evidence of the non-prosecution or internal-investigation findings could be relevant, it should be excluded as inadmissible hearsay and improper opinion testimony. The findings could be construed to reflect another's opinion of the defendant's guilt of these charges in this separate matter. Neither a lay witness nor an expert witness is permitted to offer a direct opinion about the defendant's guilt or innocence. *See United States v. Anchrum*, 590 F.3d 795, 804 (9th Cir. 2009) (discussing expert witness); *United States v. Lockett*, 919 F.2d 585, 590 (9th Cir. 1990) (discussing witnesses generally). Presenting the implied, and highly subjective, local prosecutors' or investigators' opinions about other crimes or policy violations, based on a different set of evidence and legal standard, risks infringing upon the jury's role.

Finally, introducing another agency's findings or opinions risks confusing and misleading the jury. It will require the parties to engage in a wasteful mini-trial about the basis and facts related to those conclusions and how the federal case is different, ultimately unfairly prejudicing the government. *See* Fed. R. Evid. 403; *United States v. Bisanti*, 414 F.3d 168, 172-73 (1st Cir. 2005) ("an acquittal in a prior court proceeding involving similar subject matter is . . . not generally probative of the defendant's innocence in the case at trial and the information has a tendency to confuse the jury rather than assist it."). Furthermore, the evidence may implicitly and improperly encourage jury nullification by suggesting that the jury should not care about these offenses because the local authorities did not pursue it.

In an effort to tell a coherent narrative, the United States may offer testimony or evidence that initially was provided to OSP, or photographs that were taken by the ODOC investigator. Referring to "an investigation" or "an interview with OSP" does not open the door to evidence or argument about the *findings or results* of those investigations. Accordingly, the Court should exclude reference to the local authorities' charging decisions as irrelevant to the federal criminal

charges at issue in this case, as improper hearsay and opinion evidence, and as misleading and unfairly prejudicial to the United States.

## X.        Motion To Exclude Evidence and Argument Aimed at Jury Nullification (Motion *in Limine* 16)

The United States moves the Court to preclude the defendant from offering evidence or argument calculated to induce jury nullification or likely to have that effect.  For more than a century, courts have consistently recognized that jury nullification is inconsistent with the ideals of our legal system.  *See Sparf v. United States*, 156 U.S. 51, 102 (1895) (holding that, while juries are finders of fact, "it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them to be from the evidence"); *Merced v. McGrath*, 426 F.3d 1076, 1079-80 (9th Cir. 2005) (no juror has a right to engage in nullification and "trial courts have a duty to forestall or prevent such conduct").  Thus, while jury nullification may be a feature of our criminal justice system, "neither the court nor counsel should encourage jurors to exercise this power," and "[a] trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."  *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993); *see also United States v. Muse*, 83 F.3d 672 (4th Cir. 1996) (citing *Sepulveda*); *United States v. Thompson*, 253 F.3d 700, at *16 (5th Cir. 2001) (same).

If an attorney may not openly invite the jury to ignore the law, then more subtle attempts to achieve the same end must also be prohibited.  In this case, more subtle attempts might include offering evidence that is not relevant to the defendant's guilt or innocence of the charges but intended only to paint him as more sympathetic to the jury.  *See United States v. Rodriguez*, 971 F.3d 1005, 1020 (9th Cir. 2020) (affirming exclusion of testimony that "had little connection to *the issues in dispute* . . . [and] would unduly target the sympathies of the jury") (emphasis added).

**Government's Omnibus Motion *in Limine*** **Page 38**

The risk of nullification is heightened when the defendant is a member of corrections staff and the victims are inmates. *See, e.g.*, *United States v. Rushin*, 844 F.3d 933, 939 (11th Cir. 2016) ("The risk of jury nullification is accentuated by the fact that defendants were guards and the victims prisoners.").

With that in mind, the United States moves to preclude the following improper evidence or argument calculated to induce jury nullification: (1) evidence that CCCF is a poorly run institution or was in some way negligent as to its duties to protect staff or inmates, and argument that the defendant therefore should not be held responsible for the charged crimes; (2) evidence or argument that the defendant has already suffered enough consequences; and (3) argument concerning the penalties or punishment that the defendant could face if a jury convicts him of any or all of the crimes with which he is charged. Each of these suggest to the jury that it should acquit without consideration of evidence of the very conduct with which the defendant is charged. That is, these arguments and evidence in support of these arguments make no fact at issue more or less probable; instead, they invite the jury to ignore the evidence before it and the law as instructed by this Court. Accordingly, the Court should preclude arguments or evidence aimed, explicitly or more subtly, at jury nullification, in order to ensure that the jury's verdict is based on the facts and the law, rather than appeals to passion or prejudice.

### A. Evidence or Argument That CCCF Is a Poorly Run Institution

The United States expects, based on the defendant's prior statements and his expert notice, that he may attempt to divert blame to ODOC and CCCF, arguing that CCCF is a poorly run facility. This is merely an attempt to confuse the jury and distract from the issue in front of it, which is not whether CCCF was understaffed, had poor working conditions and an unsupported

civilian workforce, or lacked robust policies around sexual assault.  Instead, the issue for the jury to decide is whether the defendant committed the charged crimes.

Common sense illustrates how testimony about ODOC's shortcomings, as perceived by the defendant, are irrelevant.  If the defendant were being accused of providing deficient medical care, the conditions under which he provided that care could have some tendency to prove or disprove a fact of consequence.  But poor working conditions does not compel someone to commit sexual assault.  It may be true that CCCF medical staff had low morale, that working at CCCF is difficult, that CCCF policies fell short of the defendant's standards (or his expert witness's), or that civilian staff such as the defendant may have felt "unsupported."  If true, it could explain why the defendant may have been frustrated with his workplace—a feeling that the United States expects the defendant may try to offer and argue to the jury, in an effort to invite undue sympathy that is irrelevant to the question of his guilt or innocence of the charged offenses.  Put another way, evidence of the conditions of the defendant's employment does not tend to prove or disprove whether he sexually assaulted the women in his care and then lied about it under oath.  Such evidence should be excluded.

**B.  Evidence or Argument That Defendant Has Already Suffered Enough Consequences**

Next, the United States moves to exclude evidence or argument that suggest the defendant has already suffered enough consequences as a result of these allegations or his conduct.  Just as it would be improper to discuss potential punishment (addressed below), it would be improper for the defense to argue or insinuate that the defendant should be acquitted because he has already been sufficiently punished.

As a result of these allegations, the defendant has been civilly sued by multiple women; investigated by several entities, including OSP, the FBI, and the Oregon State Board of Nursing

(OSBN); disciplined by OSBN; and fined for making false statements in his OSBN renewal application.  If appropriately tailored, these facts could be relevant to the issues at trial.  As noted above, that a particular witness filed a lawsuit could be a valid basis for impeachment.[9]  If the defendant testifies or puts his character for truthfulness at issue, his other false statements would be relevant as to his credibility.  *See* Fed. R. Evid. 404(a)(2)(A).

Other consequences, however, have no bearing on the central issues to be decided in this case.  For instance, since these allegations initially came to light, in 2017, the defendant resigned from ODOC, and he presumably no longer practices nursing in the state of Oregon, as public records indicate he no longer has a valid nursing license.  The civil lawsuits and the federal criminal charges have been widely publicized in local and national news, and the defendant reportedly received harassing communications from members of the public after the federal indictment was unsealed.  While harassing communications are entirely inappropriate, they and the publicity are irrelevant as to whether the defendant committed the crimes with which he is charged.  Instead, such consequences, if raised at trial, would only serve to generate sympathy for the defendant and encourage the jury to weigh those emotions more heavily than the evidence presented at trial. *United States v. Rodriguez*, 971 F.3d 1005, 1020 (9th Cir. 2020) (affirming exclusion of evidence that would paint the defendant as more sympathetic but that "had little to do with [] guilt or innocence of the charges").  With no probative value, any risk of unfair prejudice cautions against permitting this evidence.  Fed. R. Evid. 403.  It should be excluded.

///

///

---

[9]Any argument that the criminal charges are unnecessary because the victims have been made whole by virtue of their lawsuit settlements, however, is improper and should be excluded.

**Government's Omnibus Motion *in Limine*** **Page 41**

## C. Argument Concerning Penalties or Punishment If Convicted

Finally, the United States moves to exclude any evidence or argument concerning potential penalties or punishment at any phase of the trial, including jury selection, opening statements, examination of witnesses (including of the defendant if he testifies), and closing argument. Impermissible references to punishment could be overt, by informing the jury, for instance, that a conviction could result in a statutorily authorized term of imprisonment of up to life. *See* 18 U.S.C. § 242. But these references could also be more subtle, such as pointing out the fact that some of the charges against the defendant are felonies, or that a conviction could have an adverse effect on the defendant's career plans, family, education, or future. Any such reference is inadmissible because it is irrelevant and unfairly prejudicial.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992); *see also Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"). Information about penalty and punishment "draw[s] the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromise verdicts, and confuses the issues to be decided." *United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."). Accordingly, the defense should be precluded from making any reference to the penalties the defendant may face, if convicted.

## XI.    Motion To Exclude Witnesses But Allow Case Agents to Be Present During Trial (Motion *in Limine* 17)

The United States moves to exclude third-party witnesses from the trial and other proceedings until after they have testified and the Court has excused them.  The United States requests, however, that the case agents—FBI Special Agents Caryn Ackerman, Elizabeth Bowditch, and Eric Hiser—be permitted to freely enter and exit the courtroom during the course of the trial, to assist with the presentation of the case and management of witnesses.[10] Additionally, the United States requests that one designated case agent be permitted to sit at counsel table during the trial.

Rule 615(b) allows an employee of a non-natural party designated as the party's representative to be present throughout trial, notwithstanding the exclusion of witnesses.  The Ninth Circuit has repeatedly held that Rule 615(b) permits case agents who will testify to be present at counsel table during the trial.  *See, e.g.*, *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987) (no abuse of discretion where district court permitted government's investigating officer who testified as a witness to sit at counsel table throughout the trial).  Similarly, Rule 615(b) allows multiple testifying agents to be present at or near counsel table.  *See, e.g.*, *United States v. Phibbs*, 999 F.2d 1053, 1072 (6th Cir. 1993) (explaining that "certain prosecutions may be complex enough that the aid of more than one law enforcement officer is needed . . . .").

Permitting the United States' case agents to remain in the courtroom, or enter and exit during the course of the trial, will facilitate the efficient presentation of its case—one that involves

---

[10] Although the United States has listed all three case agents on its witness list, it does not intend to call each agent in its case in chief; however, the need may arise for an agent to testify about any given witness's prior statement during trial preparations, and that agent could be any one of the three who are assigned to this case.

multiple victims and dozens of witnesses—because the case agents will play an active role in coordinating the witnesses' appearances in court.  Moreover, to the extent these agents are needed to testify, their testimony will not be influenced by hearing the testimony of other witnesses because the case agents will have already assisted counsel for the United States in preparing witnesses to testify and will be familiar with the testimony before the trial begins.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant its motions *in limine*.

Dated:  April 21, 2023

Respectfully submitted,

NATALIE K. WIGHT                             KRISTEN CLARKE
United States Attorney                          ASSISTANT ATTORNEY GENERAL

/s/  Gavin W. Bruce                              /s/    Cameron A. Bell
GAVIN W. BRUCE                              CAMERON A. BELL
Assistant United States Attorney            Trial Attorney
                                                            Civil Rights Division