NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:  (541) 465-6771
**CAMERON A. BELL, CSB #305872**
Trial Attorney—Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Cameron.Bell@usdoj.gov
Telephone:  (202) 802-7643
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**UNITED STATES OF AMERICA**

          **Case No. 3:22-cr-00084-SI**

  **v.**

          **GOVERNMENT'S TRIAL BRIEF**

**TONY DANIEL KLEIN,**
      **Defendant.**

   The United States of America hereby files this trial brief for the convenience of the Court.

This brief contains a summary discussion of the nature of this case, the elements of the offenses

charged in the Indictment, and certain evidentiary and legal issues that may arise during trial.

**I.   Status of the Case**

   On March 8, 2022, a federal grand jury returned a 25-count Indictment charging the

defendant, Tony Daniel Klein, with 21 violations of 18 U.S.C. § 242 and four violations of 18

U.S.C. § 1623.  ECF No. 1.  The charged conduct related to the defendant's former employment

**Government's Trial Brief**                   **Page 1**

as a nurse—an "Institution RN"—at the Coffee Creek Correctional Facility ("Coffee Creek" or CCCF), the only women's prison facility in the state of Oregon.  Counts 1 through 21 charge that between 2016 and 2017, the defendant, acting under color of law, deprived 12 different women of their Eighth Amendment rights under the United States Constitution by sexually assaulting them or subjecting them to other sexual conduct without their consent while they were incarcerated at Coffee Creek.  Those women are identified in the Indictment as Adult Victims ("AVs") 1 through 12.  Counts 1, 4, 6, and 8 charge that the offense included aggravated sexual abuse; Counts 1, 4, and 10 charge that the offense resulted in bodily injury.  Counts 22 through 25 charge the defendant with committing perjury when he falsely denied, during a civil deposition in November 2019, that he had ever engaged in particular acts or sexual conduct with any incarcerated woman while he was employed at Coffee Creek.

The pretrial conference is set for June 30, 2023, and trial is set to begin on July 10, 2023. The parties expect trial to last approximately three weeks.

## II.    Summary of the Expected Evidence

From 2010 until January 2018, the defendant worked as a nurse at CCCF.  During that time, he interacted with female inmates who either sought medical treatment or who were employed to work as "orderlies" in the medical unit.  Aided by his access to those women and his position of power, he sexually assaulted or engaged in nonconsensual sexual conduct toward many of the female inmates who were entrusted to his care.

The specific nature of the defendant's sexual conduct toward AVs 1 through 12, the victims identified in the Indictment, is described in detail in ECF No. 87.  In summary, the defendant's charged sexual conduct ranged from over-the-clothes touching to oral and vaginal sexual assault. In addition to those charged victims, the defendant sexually assaulted or engaged in other

unwanted sexual conduct toward at least nine additional women, who are identified in court filings as AVs 13 through 21.  The defendant's conduct toward these women was similar in kind to the charged conduct.  In addition, the defendant engaged in a pattern of harassing sexual comments and touching, particularly directed toward the women who worked in the medical unit as orderlies (AVs 3, 4, 13, 14, 15, 20, and 21).

Furthermore, the United States expects to prove its case through the testimony of multiple witnesses.  Most of these witnesses are (or were) either employed by or incarcerated at Coffee Creek.  These witnesses include current and former medical staff, current and former corrections staff, and current and former inmates who were victims of and witnesses to the defendant's conduct.  For the victims whom the defendant assaulted during the course of medical treatment, the United States expects to offer excerpts of those medical records to show that the defendant and victim interacted during the specified time, which corresponds to the dates charged in the Indictment.[1]  For the victims who reported the defendant's sexual misconduct while they were still incarcerated, the United States may offer documentary evidence, including grievances or other prison paperwork, that details their allegations; these reports may be admissible as prior consistent statements, discussed below.  Additionally, the United States expects to offer the expert testimony of Robert Dumond, whose testimony will provide helpful context to the jury about sexual assault and sexual abuse in women's prisons.  The expected evidence will also include diagrams and

---

[1] The United States is aware of a discrepancy between some of the dates of the medical records and the dates listed in the Indictment.  For Counts Three and Four, the United States expects the evidence at trial to show that AV2's related medical appointments—and thus the assaults—occurred on September 19, 2017, not September 17, the date listed in the Indictment.  The United States has proposed an "On or About" instruction, *see* ECF No. 86, and a two-day discrepancy is "reasonably near" the date alleged in the Indictment.  *United States v. Tsinhnahijinnie*, 112 F.3d 988, 991 (9th Cir. 1997) ("The government ordinarily need prove only that the crime occurred on a date reasonably near the one alleged in the indictment, not on the exact date.").

**Government's Trial Brief**                                                                                              **Page 3**

photographs of the facility, including the areas of the facility where the defendant committed his sexual assaults.

The United States also expects to offer evidence of the defendant's training, which will show that he was clearly and repeatedly taught not only that it was unlawful to engage in sexual conduct with inmates, but also that it was critical to maintain clear boundaries with them. Specifically, the defendant was taught that the purpose of maintaining clear boundaries was, in part, to prevent staff from being "compromised by an inmate"—such as being subjected to inmates' false allegations that the staff member had engaged in misconduct.

Throughout the United States' case, the evidence will show that despite the defendant's training, which was designed to protect staff and inmates alike, the defendant frequently and actively sought opportunities to be alone with inmates, especially the female orderlies he supervised in the medical unit. The defendant also disregarded the strict boundaries that he had been taught to uphold—instead, he brought inmates gifts, trinkets, and treats. The United States will offer evidence of the defendant's training, as well as evidence that he acted inconsistently with that training, both to establish that the defendant acted willfully and to rebut the defendant's anticipated defense that he was ill equipped to protect himself from false accusations. Indeed, a member of the Coffee Creek staff who was concerned about being falsely accused of misconduct, as the defendant may argue he was, would have taken care to follow the prison's rules about maintaining boundaries and avoiding casual relationships with inmates. Instead, the defendant ignored those rules entirely.

Since 2017, the defendant has maintained that these allegations are false and that he never engaged in any sexual conduct with any inmates at Coffee Creek. Indeed, he so testified under oath in November 2019, during a federal deposition, after he was civilly sued for engaging in

unwanted sexual conduct with multiple women, including several women who are identified in the Indictment. *Suarez v. Peters, et al.*, 3:19-cv-0095 (D. Or. 2019). The United States intends to offer portions of this deposition during the trial, to prove Counts 22 through 25 of the Indictment.

## III. Summary of the Law

The defendant is charged with 21 counts of violating 18 U.S.C. § 242—Deprivation of Rights under Color of Law, which has three basic elements. In addition, five of those counts charge a fourth element—either that the offense included aggravated sexual abuse, that the offense resulted in bodily injury, or both. This fourth element functions as a statutory aggravating factor, and proof of all four elements results in a felony, rather than a misdemeanor, conviction. The defendant is also charged with four counts of 18 U.S.C. § 1623. The elements for each offense are set forth below. Additional law is set forth in the United States' Proposed Jury Instructions. *See* ECF No. 86.

### A. Deprivation of Rights Under Color of Law

Counts 1 through 21 of the Indictment charge the defendant with violating 18 U.S.C. § 242. That statue reads, in relevant part:

> Whoever, under color of any law . . . willfully subjects any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the [United States] Constitution . . . shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section . . . shall be fined under this title or imprisoned not more than ten years, or both; and if . . . such acts include . . . aggravated sexual abuse . . . shall be fined under this title, or imprisoned for any term of years or for life, or both.

18 U.S.C. § 242. To establish a violation of the statute, the United States must prove beyond a reasonable doubt that the defendant: 1) acted under color of law; 2) deprived the victim of a right protected or secured by the United States Constitution; and 3) acted willfully. In addition, to establish a felony violation, the United States must prove either that the offense included

**Government's Trial Brief**                                                                 **Page 5**

aggravated sexual abuse or that it resulted in bodily injury.  Each element is discussed in greater detail below.

### 1.  Color of Law

The first element requires that the defendant act under "color of law."  A defendant acts under color of law when he is an official or employee of the federal, state, or local government, and he uses or abuses power he possesses because of his official position.  *West v. Atkins*, 487 U.S. 42, 49-50 (1988).  A government official acts "under color of law" if he is performing his official duties, or pretending to perform those official duties, even if he abuses or misuses his official authority by doing something the law forbids.  *See Griffin v. Maryland*, 378 U.S. 130, 135 (1964); *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000) ("color of law" applies to acts "performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties").  The evidence at trial will establish that the defendant, who was on duty and acting in his capacity as an Institution RN, was acting under color of law.

### 2.  Deprivation of Rights Secured by Constitution

The second element that the United States must prove is that the defendant deprived the victims of a right secured and protected by the United States Constitution.  The protected right at issue is the Eighth Amendment right to be free from cruel and unusual punishment, which includes the right to be free from sexual abuse.  *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).  Indeed, this Circuit has held that prison inmates have the right to be free from nonconsensual sexual touching or sexual conduct; such conduct with a prisoner that is "for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner" violates the Constitution.  *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

In considering whether a prison official's sexual conduct was consensual or nonconsensual, courts consider many factors, such as the context in which the incident occurred, the relationship between the parties, the relative positions of power and authority between the parties, the size disparity between the parties, and the use of mental coercion. *United States v. Shaw*, 891 F.3d 441, 450-52 (3d Cir. 2018); *see also United States v. Cobenais*, 868 F.3d 731, 737 (8th Cir. 2017) ("there is no consent if the sexual act was accomplished against the will of [the victim] by the use of force, coercion, or threats"). In considering consent more generally, the United States Supreme Court has explained, "[c]onsent that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse." *Florida v. Bostick*, 501 U.S. 429, 438 (1991).

The United States anticipates that the evidence at trial will prove that the conduct charged in Counts 1 through 21 of the Indictment was nonconsensual.[2] Specifically, the testimony of AVs 1 through 12, as well as the testimony of AVs 13 through 18 and AV20, will demonstrate that the defendant's victims did not willingly and freely consent to sexual contact with him. Instead, they tried to avoid him, they asked him to stop, they froze in fear, or they submitted—afraid of what might happen if they refused or tried to fight back. Some women stopped seeking medical treatment at CCCF altogether. The United States also expects to offer the testimony of other witnesses who interacted with the defendant's victims and observed their affect or demeanor,

---

[2] The United States is aware of additional incidents of sexual conduct between the defendant and at least one victim (AV19), where the evidence does not clearly indicate a lack of consent as to specific incidents. To the extent the United States offers that evidence, the United States will do so as evidence that is inextricably intertwined with the conduct charged in Counts 1 through 21 or as evidence that constitutes direct proof of Counts 22 through 25. Alternatively, with the Court's permission, the United States may offer this evidence under Federal Rule of Evidence 404(b). *See* ECF No. 87.

**Government's Trial Brief**                                                                 **Page 7**

either immediately after the assaults or when the victims ultimately recounted or reported what the defendant had done.  This testimony will corroborate the victims' lack of consent.

### 3.  Willfulness

The third element the United States must prove beyond a reasonable doubt is that the defendant acted willfully—that is, voluntarily and intentionally, and with the specific intent to do something the law forbids.  *See Screws v. United States*, 325 U.S. 91, 104 (1945); *see also United States v. Reese*, 2 F.3d 870, 882 (9th Cir. 1993) ("if a constitutional right is clearly delineated and the defendant acted with the particular purpose of depriving the citizen victim of his enjoyment of the interests that right protects, he will be adjudged as a matter of law to have acted willfully") (internal quotation marks omitted).  The United States does not need to show that the defendant was thinking in constitutional terms to prove that he willfully violated the Constitution.  *Screws*, 325 U.S. at 106.

Evidence of a defendant's training is relevant and admissible to establish whether the defendant acted "willfully."  *See United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) ("an officer's training can help inform his state of mind in certain circumstances"); *see also id.* ("If, as here, an officer has been trained that officers should not do several things when confronted with tense situations, yet he does those things anyway, the fact that he broke from his training could make it more likely that he acted willfully.").  Training evidence may not be used to prove a constitutional violation; conduct may violate a prison's policy or training without violating an individual's rights under the U.S. Constitution.  *Cf. United States v. Hammad*, 858 F.2d 834, 839 (2d Cir. 1988) ("the Constitution prescribes a floor below which protections may not fall, rather than a ceiling").  For that reason, courts recommend issuing a cautionary limiting instruction.  *See, e.g.*, *United States v. Brown*, 934 F.3d 1278, 1296 (11th Cir. 2019) ("Although the jury may

consider a department's policies as relevant evidence, district courts should follow the example here of using limiting instructions to prevent the jury from conflating a violation of [] policy with a violation of the Constitution."); *United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015) (describing limiting instruction).

The evidence at trial will prove the defendant acted willfully.  First, the United States expects to introduce portions of the many trainings Coffee Creek provided to the defendant, in which he was taught that sexual conduct of any kind was impermissible because it violated the law and inmates' civil rights.  In those trainings, the defendant was also taught the importance of maintaining strict professional boundaries with inmates and abstain from sharing personal details about himself and his family, to ensure the safety of both staff and inmates alike.  This evidence is relevant to establishing willfulness because it demonstrates that the defendant was trained to conduct himself in a certain way with inmates and he nevertheless chose to act inconsistently with that training.  All of this training evidence—as well as evidence that the defendant acted inconsistently with his training—is particularly relevant in this case, where the United States expects the defendant to argue that he has been falsely accused by numerous women.  The fact that he "broke away from this training" is evidence of his intent, and it further rebuts his anticipated defense that the women's allegations about his conduct are false, because it demonstrates that the defendant did not take the simple—and required—steps to protect himself against such allegations. *Proano*, 912 F.3d at 439.

In addition to evidence of the defendant's training, the United States expects to introduce evidence of the defendant's other statements and conduct that demonstrate the defendant's willfulness.  Some of this evidence includes the defendant's directing victims to lie about why they needed to wear shorts or his offering them illicit pills before or after he sexually assaulted them.

**Government's Trial Brief**                                                                    **Page 9**

These statements show the defendant knew what he was doing was wrong at the time because instructing women to lie or offering them gifts of contraband to buy their silence indicates the defendant knew he needed to conceal his conduct.  Finally, by making false statements in his 2019 deposition, the defendant made clear that he knew he could not have sexual contact with inmates. The United States will introduce these statements to prove both the charged false declaration counts and willfulness.

### 4.  Aggravating Elements

Counts 1, 4, 6, 8, and 10 charge at least one aggravating element, which make each of those offenses a felony.  Counts 1, 4, 6, and 8 each charge that the offense included aggravated sexual abuse.  In addition, Counts 1, 4, and 10 charge that the offense resulted in bodily injury.  These are each discussed below.

### i.  Aggravated Sexual Abuse

A defendant commits aggravated sexual abuse "by knowingly caus[ing] another person to engage in a sexual act 1) by using force against that person or 2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping."  18 U.S.C. § 2241(a).  Under this law and as applicable to this case, a "sexual act" includes "contact between the penis and the vulva" and "contact between the mouth and the penis." 18 U.S.C. § 2246(2)(A)-(B).  "The force requirement may be satisfied by a showing of the use of such physical force as is sufficient to overcome, restrain, or injure a person."  *United States v. Archdale*, 229 F.3d 861, 868 (9th Cir. 2000); *see also United States v. Allery*, 139 F.3d 609, 611 (8th Cir. 1998) (force is sufficient if it "restrain[s] the victim and allow[s] the defendant to engage in sexual contact") (cited with approval in *United States v. H.B.*, 695 F.3d 931, 936 (9th Cir. 2012)).

**Government's Trial Brief**                                                          **Page 10**

The United States will prove this element beyond a reasonable doubt through the testimony of AVs 1, 2, and 3, who will each testify that the defendant either used force or placed them in fear of death or serious bodily injury.  Specifically, the defendant used force against AV1 when he pulled down her pants, pushed her head down, "yanked" her back toward him, and then used his hands to hold her hips in position as he raped her (Count 1).  The defendant used force against AV2 when he pushed her over the exam table and pressed his body against hers, pinning her against the table, while he raped her (Count 4).  The defendant used force against AV3 when he pushed her head down onto his penis as she tried to pull away (Count 6), and he put her in fear of serious bodily injury or death when he wrapped an otoscope cord around her neck and pulled it tight.  AV3 will testify that she performed oral sex on the defendant after that because she was afraid that he would strangle her if she refused (Count 8).  (These incidents are discussed at greater length in ECF No. 87). All of this testimony will prove beyond a reasonable doubt that the charged offenses included aggravated sexual abuse.

### ii.  Bodily Injury

Drawing upon the commonly used definition of "bodily injury" in other federal statutes, courts have found that, in the context of a § 242 prosecution, the term means, "(A) a cut, abrasion, bruise, burn or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ, or mental faculty; or (E) any other injury to the body, no matter how temporary."  *United States v. Myers*, 972 F.2d 1566, 1572-73 (11th Cir. 1992); *see also* 18 U.S.C. §§ 831(g)(5), 1365(h)(4), 1515(a)(5), 1864(d)(2); *United States v. Perkins*, 470 F.3d 150, 161 (4th Cir. 2006) (adopting definition used in *Myers*); *United States v. Bailey*, 405 F.3d 102, 111 (1st Cir. 2005) (same).  The United States expects to prove that bodily injury resulted from the offenses

**Government's Trial Brief**                                                    **Page 11**

charged in Counts 1, 4, and 10 through the testimony of AVs 1, 2, and 4, who will each testify that the defendant's actions caused them pain, burning, or bleeding.

### B.  False Declarations Before Court

To prove Counts 22 through 25, the United States must prove four elements beyond a reasonable doubt:  1) that the defendant testified under oath at a deposition ancillary to court proceedings; 2) the testimony was false; 3) the defendant knew that the testimony was false; and 4) the false testimony was material to the matters before the court.  The charges stem from four discrete statements that the defendant made during a civil deposition related to a federal civil-rights case:  *Suarez v. Peters, et al.*, 3:19-cv-0095 (D. Or. 2019).  During the deposition, he was asked whether he had ever:

- had vaginal intercourse with an incarcerated adult (Count 22);

- penetrated the vagina or anus of any adult incarcerated female using his penis, fingers, or tongue (Count 23);

- kissed any adult incarcerated female (Count 24);

- had any sexual contact with any adult female incarcerated person with the intent to abuse, arouse, or gratify his sexual desire (Count 25).

ECF No. 1, at 12-15.  The defendant denied taking any of these actions.

The evidence at trial will prove each of these elements beyond a reasonable doubt.  As noted above, the defendant provided this testimony, under oath, as part of a federal civil rights lawsuit brought by several women alleging that the defendant sexually assaulted them or engaged in other sexual conduct toward them.  The defendant's testimony was material because it directly responded to the central issue in that case:  whether the defendant engaged in sexual contact with female inmates.  Finally, the testimony of AVs 1 through 12 about the defendant's behavior toward

**Government's Trial Brief**                                                                            **Page 12**

them, as well as the testimony of AVs 13 through 21 about the defendant's uncharged behavior (to the extent permitted by the Court), will prove that the defendant in fact engaged in the very conduct that he denied, and that he knew his denials were false when he made them.

## IV.    Anticipated Evidentiary and Legal Issues

The United States has raised several evidentiary and legal issues in its Omnibus Motion *in Limine*.  ECF No. 88.  The United States notes that the following additional evidentiary or legal issues may arise during the trial.

### A.  Prior Consistent Statements

The United States anticipates eliciting testimony from victim-witnesses about their outcry statements and/or testimony of the friends, family, or other staff to whom they disclosed what the defendant had done to them, as prior consistent statements.  Fed. R. Evid. 801(d)(1)(B).  Under this Rule, a declarant-witness's prior statement is admissible to rebut an express or implied charge that the declarant recently fabricated their testimony or acted from a recent improper influence or motive in so testifying.  Fed. R. Evid. 801(d)(B)(i); *see also United States v. Beltran*, 165 F.3d 1266, 1269-70 (listing preconditions for prior consistent statement's admissibility, including that "[the statement] must be made prior to the time that the supposed motive to falsify arose").

The United States anticipates that the defendant will attack some of the testifying victims because they filed lawsuits against him seeking monetary damages, in order to imply that the women are lying and not credible.  If and when the defendant attacks any victim-witness's credibility, the United States will move to admit, under this Rule, any prior consistent statements that pre-date the "supposed motive to falsify."  *Beltran*, 165 F.3d at 1270.

///

///

**Government's Trial Brief**                                                                                    **Page 13**

**B.  Medical Records**

The United States anticipates eliciting testimony and admitting exhibits related to some of the victims' medical treatment or medical appointments, during which the defendant assaulted them.  The records the United States seeks to admit are typically authored by the defendant and usually organized using the "SOAP" rubric for medical chart notes, which identifies the "Subjective" statement of the patient, the "Objective" observation of the medical practitioner, the "Assessment," and the "Plan."  These records fall within multiple exceptions to the rule against hearsay: the "subjective" statements are statements for the purpose of medical diagnosis or treatment, Fed. R. Evid. 803(4); the "Objective," "Assessment," and "Plan," when authored by the defendant are admissible pursuant to Rule 801(d)(2) and when authored by someone other than the defendant, are records of a regularly conducted activity, Fed. R. Evid. 803(6).  Medical records related to witnesses should be admissible under these evidentiary rules.

///

///

///

///

///

///

///

///

///

///

///

**Government's Trial Brief**                                                                 **Page 14**

**CONCLUSION**

The foregoing is a summary of issues the United States anticipates may arise at trial. Should any additional legal issues arise that have not been addressed in this brief or other pretrial filings, the United States respectfully requests leave to address those issues in due course.

Dated:  April 21, 2023

Respectfully submitted,

NATALIE K. WIGHT                                    KRISTEN CLARKE
United States Attorney                              ASSISTANT ATTORNEY GENERAL

*/s/  Gavin W. Bruce*                               */s/    Cameron A. Bell*
GAVIN W. BRUCE                                      CAMERON A. BELL
Assistant United States Attorney                    Trial Attorney
                                                    Civil Rights Division

**Government's Trial Brief**                                                    **Page 15**