**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:22-cr-84-SI |
| v. | **ORDER** |
| **TONY DANIEL KLEIN**, | |
| Defendant. | |

Natalie K. Wight, United States Attorney, Gavin W. Bruce and Hannah Horsley, Assistant
United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 405 East 8th Avenue, Suite 2400,
Eugene, OR 97401; and Cameron A. Bell, Trial Attorney—Civil Rights Division, 950
Pennsylvania Avenue, NW, Washington, DC 20530. Of Attorneys for United States of America.

Matthew G. McHenry, LEVINE & MCHENRY LLC, 1050 SW Sixth Avenue, Suite 1414, Portland,
OR 97204; and Amanda A. Thibeault, ALVAREZ THIBEAULT LLC, 330 NE Lincoln Street,
Suite 200, Hillsboro, OR 97124. Of Attorneys for Tony Daniel Klein.

Ellen F. Rosenblum, Attorney General, Elleanor H. Chin, Senior Assistant Attorney General,
Jessica Spooner, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court
Street NE, Salem, OR 97301. Of Attorneys for Nonparty Oregon Department of Corrections

**Michael H. Simon, District Judge.**

On March 9, 2022, a federal grand jury indicted Defendant Tony Klein (Klein), charging

him with 21 counts of deprivation of rights under color of law, in violation of 18 U.S.C. § 242,

and four counts of making false declarations in a proceeding before or ancillary to a court of the

United States, in violation of 18 U.S.C. § 1623. ECF 1. As alleged in the indictment, Klein was

employed as a corrections nurse with the Coffee Creek Correctional Facility (CCCF), the only

women's prison in the state of Oregon. In the first 21 counts, the indictment alleges that on

PAGE 1 – ORDER

various occasions in 2016 and 2017, Klein, while acting under color of law, and without a legitimate penological or medical purpose, engaged in various sexual acts with female inmates serving sentences at CCCF. The indictment further alleges that these acts were done without the consent of the female inmates and Klein's conduct willfully deprived these inmates of their right not to be subjected to cruel and unusual punishment, a right secured and protected by the Constitution and laws of the United States. The indictment also alleges that Klein's conduct resulted in bodily injury to these female inmates and included aggravated sexual abuse. In the final four counts, the indictment alleges that on November 20, 2019, Klein, having taken an oath to testify truthfully at a deposition ancillary to a civil lawsuit then pending in the United States District Court for the District of Oregon, knowingly made false and material declarations.

Under Rule 17 of the Federal Rules of Criminal Procedure, Klein served a subpoena on the Oregon Department of Corrections (ODOC). Before the Court is ODOC's motion for a protective order seeking to modify aspects of that subpoena.[1] The parties agreed upon the entry of a protective order and an order directing the production of health information of adults in the custody of ODOC subject to Oregon Revised Statutes §§ 179.495(1) and 179.505, both of which the Court has entered. *See* ECF 81, 85. Thus, the disputes remaining from ODOC's motion are: (1) the deadline by which ODOC must comply with the subpoena; (2) the scope of Request No. 3 relating to video security footage; (3) the scope of Request No. 4 relating to investigation files against Klein; and (4) the scope of Request No. 5 relating to investigation files against others. For the reasons discussed below, the Court grants ODOC's motion and modifies the subpoena as requested.

---

[1] Klein also served a subpoena on the Oregon State Board of Nursing, who originally joined in the motion for protective order with ODOC. Before the motion was fully briefed, however, the Oregon State Board of Nursing produced the responsive documents in its possession, custody, or control, mooting its motion.

## A. Standards

Rule 17(c)(1) of the Federal Rules of Criminal Procedure provides, in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.

Rule 17(c) is not intended to provide a means of discovery in criminal cases; rather, its purpose is to expedite trial by "providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698-99 (1974) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)); *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (stating that there "is no general constitutional right to discovery in criminal cases"); *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (instructing that "a Rule 17(c) subpoena is not intended to serve as a discovery tool, or to allow a blind fishing expedition seeking unknown evidence" (citation omitted)).

Rule 17(c)(2) provides that a district court may quash or modify a subpoena "if compliance would be unreasonable or oppressive." The decision whether to quash or modify a subpoena is within the discretion of the district court. *Nixon*, 418 U.S. at 702 ("Enforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues.").

The party issuing a subpoena under Rule 17(c) bears the burden of showing the relevancy, admissibility, and specificity of the requested materials. *Id.* at 700. "Even upon a showing of relevance, admissibility, and specificity, a court must consider whether the material is 'otherwise procurable,' whether the proponent can 'properly prepare for trial without such production,' and whether 'the failure to obtain such inspection may tend unreasonably to delay

the trial.'" *United States v. Mason*, 2008 WL 1909115, at *1 (D. Or. Apr. 25, 2008) (quoting

*Nixon*, 418 U.S. at 699); *see also United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) ("In

order to justify a subpoena for production before trial, the proponent must also demonstrate that

the subpoenaed materials are not available from any other source and their examination and

processing should not await trial in the circumstances shown."). "Further, a Rule 17(c) subpoena

'should be quashed or modified if it calls for privileged matter.'" *United States v.*

*Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006) (quoting 2 Charles Alan Wright & Arthur R.

Miller, *Federal Practice & Procedure* § 275). In addition, when a party seeks to enforce a

subpoena under Rule 17(c), the "subpoena must refer to specific documents or, at least, to

specific kinds of documents." *United States v. Venecia*, 1997 WL 325328, at *3 (D. Or. May 16,

1997). Finally, a party must show that he is "not engaged in the proverbial 'fishing expedition.'"

*Reyes*, 239 F.R.D. at 599 (quoting *Nixon*, 418 U.S. at 699-700).

Within the Ninth Circuit, "requesting entire files instead of specific documents indicates

a fishing expedition." *Venecia*, 1997 WL 325328, at *3 (citing *United States v. Reed*, 726

F.2d 570, 577 (9th Cir. 1984)). For example, in *Reed*, the Ninth Circuit upheld the district court's

decision to quash a Rule 17(c) subpoena for the city's arson files in part because the appellants

"did not request specific documents, but sought entire arson investigation files." 726 F.2d at 577.

The Ninth Circuit explained that "Rule 17(c) was not intended as a discovery device, or to 'allow

a blind fishing expedition seeking unknown evidence.'" *Id.* (quoting *MacKey*, 647 F.2d at 901).

Similarly, in *Venecia*, the court refused to reauthorize a Rule 17(c) subpoena directed to

the Klickitat County District Attorney and quashed a Rule 17(c) subpoena directed to the

Washington State Patrol because they failed the specificity requirement. 1997 WL 325328 at *3.

The subpoena served on the district attorney sought the "complete file and all log notes and work

product" from the defendant's case. *Id.* (quotation marks omitted). The subpoena served on the

Washington State Patrol also sought the defendant's complete case file as well as all

accompanying case notes. *Id.* The court found that the "subpoenas do not refer to specific

documents or specific kinds of documents," and thus did "not meet the requirements of

Rule 17(c)." *Id.*

In a case quashing a Rule 17(c) subpoena *duces tecum*, a district judge in the Southern

District of New York explained:

> The subpoena seeks "any and all" documents relating to several
> categories of subject matter (some of them quite large), rather than
> specific evidentiary items, thus clearly indicating that Defendant
> seeks to obtain information helpful to the defense by examining
> large quantities of documents, rather than to use Rule 17 for its
> intended purpose—to secure the production for a court proceeding
> of specific admissible evidence. The party seeking a subpoena
> must be able to "reasonably specify the information contained or
> believed to be contained in the documents sought" rather than
> "merely hop[e] that something useful will turn up."

*United States v. Louis*, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005) (footnotes and citations

omitted; quotation marks and brackets in originial).

## B. Discussion

ODOC argues that the subpoena requests materials in vague and overbroad terms. ODOC

contends that the subpoena is a "fishing expedition" of the type precluded by Rule17(c).

Nonetheless, ODOC offers to produce responsive documents with modifications in scope.

### 1. Compliance Deadline

Klein transmitted the subpoena to ODOC on March 20, 2023 and specified March 31,

2023 as the date by which materials must be produced. The subpoena requests records for 12

current and former adults in custody (AICs) and 22 current or former "employees/contractors,"

and years of security video footage. ODOC describes that it will take time to locate materials and

review for responsiveness and confidentiality and requests until May 15, 2023 to produce

responsive materials. Klein offers no argument in opposition, simply stating he objects to an

extension of time. The Court grants ODOC's requested extension.

### 2. Video Footage

Subpoena Request No. 3 seeks "any and all available Oregon Department of Corrections

security video recordings or logs for Coffee Creek Correctional Facility from December 1, 2016,

through and including January 31, 2018." ODOC seeks to limit the video footage to video

already being produced in response to subpoena Request Nos. 1, 4, or 5. The Court agrees that

Request No. 3 is improper under Rule 17(c). It is not a request identifying specific video footage

or a category of security footage. "Rule 17(c) was not intended as a discovery device, or to

'allow a blind fishing expedition seeking unknown evidence.'" *Reed*, 726 F.2d at 577 (quoting

*MacKey*, 647 F.2d at 901). Other circuits are in accord. In *United States v. Bradford*, 806

F.3d 1151, 1155 (8th Cir. 2015), the Eighth Circuit held that a subpoena *duces tecum* under

Rule 17 "should not issue based upon a party's mere hope that it will turn up favorable

evidence." Similarly, the Tenth Circuit has explained: "Courts have held that requests for an

entire file are evidence of an impermissible fishing expedition." *United States v. Morris*, 287

F.3d 985, 991 (10th Cir. 2002) (citing the Ninth Circuit's decision in *Reed*, 726 F.2d at 577)).

The Court grants this portion of ODOC's motion.

### 3. Investigation Files Relating to Klein

Request No. 4 seeks ODOC's "investigation files regarding any and all complaints made

against employee Tony Klein." ODOC argues that this request is vague and that as worded it

could require ODOC to review every complaint lodged by every person about anything during

Klein's employment. ODOC seeks to clarify that it be permitted search specific categories of

complaints that are relevant to this case—Prison Rape Elimination Act (PREA) investigatory

records, AIC grievances, Special Investigation Unit files, and human resource investigation files.

Klein does not identify any other category of complaint or file that may be relevant or otherwise

argue why the proposed limitation fails to fall within Rule 17(c).[2] Klein simply contends that all

complaints relating to Klein must be produced. The Court finds that Klein's refusal to accept

ODOC's compromise again runs afoul of Rule 17(c)—Klein fails to identify with specificity any

potentially relevant document or category of document that ODOC may not capture with its

offered search. The Court thus grants this portion of ODOC's motion.

### 4. Investigation Files Relating to Others

Request No. 5 of the subpoena seeks "investigation files regarding any and all complaints

made against the following employees/contractors" and lists 22 names. ODOC questions the

relevance and scope of this request in its entirety, but nonetheless agrees to produce PREA

investigations. Klein responds that these people "have been identified through investigation as

having been accused of wrongdoing by AICs while working at CCCF" and thus all files must be

produced. Klein is again using Rule 17(c) improperly as a discovery device. Requesting any and

all files relating to investigations in the hope that relevant or useful material may be produced is

the hallmark of discovery. A Rule 17(c) subpoena is not designed for that purpose. *See Reed*, 726

F.2d at 577. If Klein has obtained information in his investigations from which he believes

ODOC is in possession of specific documents relevant to this case, then Klein may specifically

identify those documents in a revised Rule 17 subpoena. The Court grants this portion of

ODOC's motion.

---

[2] The original request itself may not fall within Rule 17, but before the Court is ODOC's offered modification.

## C.  Conclusion

The Court GRANTS the remaining portion of nonparty Oregon Department of

Corrections' Motion for Protective Order, ECF 63, seeking to modify the scope of the Rule 17(c)

subpoena and to extend the response deadline.

**IT IS SO ORDERED**.

DATED this 3rd day of May, 2023.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 8 – ORDER