NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:  (541) 465-6771
**CAMERON A. BELL, CSB #305872**
Trial Attorney—Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Cameron.Bell@usdoj.gov
Telephone:  (202) 802-7643
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 3:22-cr-00084-SI** |
| v. | |
| **TONY DANIEL KLEIN,** | **UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S** |
| Defendant. | **MOTIONS IN LIMINE [ECF NO. 91]** |

The United States of America hereby files this Response to the defendant's Motions *in Limine.*  ECF No. 91.

///

///

///

///

///

**United States of America's Response to Defendant's Motions *in Limine***        **Page 1**

## ARGUMENT

I.    **Defendant's Motion To Allow Counsel To Conduct Individual Questioning of Prospective Jurors (Defense Motion *in Limine* 1)**

The United States does not object to this motion but maintains its request that the Court employ a jury questionnaire.  The parties' proposed questionnaire, as amended by the Court, will facilitate gathering candid and comprehensive responses from potential jurors, thereby allowing counsel to more efficiently and effectively use challenges and conduct any individual *voir dire* the Court permits.  The use of a questionnaire in this case will also promote judicial efficiency by streamlining the jury selection process, which is particularly important given the expected length of trial and the sensitivity of the issues the United States expects both parties to question jurors about during *voir dire*.

II.    **Defendant's Motion To Exclude Evidence Not Presented to the Grand Jury (Defense Motion *in Limine* 2)**

The defendant moves to exclude the use of evidence at trial that was not presented to the grand jury, claiming that the use of such evidence will violate his constitutional rights, the statute of limitations, and the Federal Rules of Evidence (FRE).  The defendant's motion should be denied.

As an initial matter, the defendant's argument that evidence not presented to the grand jury should be excluded is fundamentally flawed.  There is no requirement that all admissible evidence be presented to the grand jury so that it can later be used at trial.  To the contrary, the legal standard to convict a person is substantially higher than the standard to indict him, and it would make no sense to forbid the admission of additional evidence at trial, given the higher burden on the prosecution at that stage of proceedings.  "All a federal grand jury needs to indict is 'probable cause,' and it can indict based on hearsay."  *United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005); *see also United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983) ("It is well

settled that an indictment may be based *solely* on hearsay.") (emphasis added).  If an indictment may be based exclusively on inadmissible evidence, it follows that admissible evidence cannot be excluded at trial simply because it was not presented to the grand jury.  The defendant cites no legal authority for such a proposition, as it is wholly unsupported by the law.

The defendant next moves the Court to prohibit the United States from introducing evidence of uncharged sexual misconduct, asserting that the admission of such evidence would result in a constructive amendment to the Indictment or a variance in the United States' proof.  The defendant's request should be denied for two reasons.  First, as discussed in the United States' Notice of Intent to Introduce Intrinsic Evidence or Alternatively to Introduce Other Acts Evidence Pursuant to Rules 413 and 404(b) (ECF No. 87), nearly all of the defendant's uncharged sexual misconduct serves as direct proof that the defendant committed perjury when he denied, under oath and in four separate statements, that he did not engage in a range of sexual conduct with *any* incarcerated woman.  The defendant himself has acknowledged that "[t]he False declaration charges are not linked to any particular individual."  ECF No. 91 at 3.  Accordingly, evidence of the defendant's sexual conduct with any incarcerated woman, even one who is not specifically identified in the Indictment, is direct proof of Counts 22 through 25.  *See* ECF No. 87.  Admitting evidence of uncharged conduct for this purpose will not amount to a constructive amendment or variance.

Second, the evidence of uncharged sexual conduct is also admissible under FREs 413 and 404(b), and those rules contradict the notion that admitting evidence of uncharged acts would result in a constructive amendment or variance.  In fact, Rule 413 creates a presumption of admissibility in sexual misconduct cases and permits the factfinder to consider evidence of uncharged sexual assaults to prove propensity, subject to Rule 403 balancing.  *United States v. LeMay*, 260 F.3d

1018, 1027-28 (9th Cir. 2001) (setting forth multi-factor balancing test); *see also United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004) (Fed. R. Evid. 413-415 favor the admission of propensity evidence in cases involving charges of sexual misconduct); *Doe ex rel Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) ("It is generally accepted that a defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant and in conformity with the standards set out in [Rules 401 and 402].").[1]

Instead of addressing the evidence of uncharged sexual conduct under Rules 413 and 404(b), which weigh in favor of admission here, the defendant asks this Court to simply declare that the admission of any uncharged sexual misconduct would violate the defendant's constitutional rights under the Fifth Amendment.  In making this argument, the defendant cites *United States v. Ward*, in which the Ninth Circuit reviewed the propriety of the defendant's conviction for Aggravated Identity Theft.  747 F.3d 1184 (2014).  But rather than supporting the defendant's position, *Ward* strengthens the United States' argument that, with a proper limiting instruction, evidence of uncharged sexual misconduct may be admitted without running afoul of the defendant's constitutional rights. The United States has proposed a limiting instruction for this purpose.  *See* ECF No. 86 at 29 (citing Ninth Circuit Model Criminal Jury Instruction 2.11 (2022).

In *Ward*, the Indictment charged that the defendant's conduct was directed toward two specific individuals (G.G. and C.H.), and the jury heard testimony that the defendant victimized three additional individuals as well.  Then, "the jury was instructed that it could convict [the defendant] . . . if he stole the identity of 'a real person,' without further specificity."  *Ward,* 747

---

[1] See ECF No. 87 for a more complete discussion and analysis of the United States' proposed 413 and 404(b) evidence.

F.3d at 1192-93.  By instructing the jury in this way, the district court broadened the universe of potential proof—to include any victim, not just those identified in the Indictment—that the United States could use to prove that element.

The instant case does not raise the same issues present in *Ward*—or to the extent it does, the defendant's concern can be avoided with the use of jury instructions that specify the victim in each charged count and a proposed verdict form that identifies each victim, timeframe, and conduct for Counts 1 through 21.  *See, e.g.*, ECF No. 86 at 61 ("the second element . . . is that the defendant deprived *the person named in each count* of the right . . .") (emphasis added); ECF No. 86-1 (identifying the relevant victim, date or date range, and conduct for each count).

The United States has charged the defendant in Counts 1 through 21 with specific acts targeting a specific victim during a specific time period.  Unlike in *Ward*, here, the Court can make clear that the jury may not substitute any victim for AVs 1 through 12; the counts and verdict form will clearly identify a specific victim, and the jury will be instructed to evaluate the evidence pertaining to each count.  Offering other-acts evidence pursuant to Rule 413 or 404(b) will not contravene this instruction.  Under Rule 413, while evidence of any other sexual assault may be considered "on any matter that is relevant," the jury is not permitted to "convict the defendant simply because he may have committed other unlawful acts"—and the jury may be so instructed. Fed. R. Evid. 413; *see* Ninth Circuit Model Criminal Jury Instruction 2.11 (2022); *see also Pilati v. United States*, 2016 WL 4083245, at *18 (N.D. Ala. 2016) (admission of uncharged sexual misconduct did not amount to constructive amendment or variance because the jury was "sufficiently informed … of the applicable law and its responsibility in assessing the 'other acts' evidence.").  The United States has proposed including this limiting instruction, which will make clear to the jury *how* it is to consider the other-acts evidence.  *See* ECF No. 86 at 27-29.  These

safeguards will protect against a constructive amendment or variance that may violate the defendant's constitutional rights. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."); *see also United States v. Christensen*, 624 F. App'x 466, 480 (9th Cir. 2015) (same).

The statute of limitations similarly does not require exclusion of uncharged conduct.[2] Rules 413 and 404(b) permit the admission of uncharged conduct without regard to whether it would fall within the statute of limitations if charged. *See* Fed. R. Evid. 413 ("the court may admit evidence that the defendant committed *any other sexual assault*") (emphasis added). Notably, the defendant cites no law to support his assertion that conduct outside of the statute of limitations period cannot be used at trial to establish an element of the offense—because the Federal Rules of Evidence permit what he seeks to preclude. *See, e.g.*, *United States v. Thornhill*, 940 F.3d 1114, 1120 (9th Cir. 2019) (concluding, in ruling on admission of Rule 414 evidence, "there is no bright line rule for precluding evidence that is remote in time"); *United States v. LeMay*, 260 F.3d 1018, 1029 (9th Cir. 2001) (Rule 413 evidence from 11 years earlier not too remote); *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989) (upholding admission under Rule 404(b) from 12 years earlier and noting, "*given the similarity of the offenses*, the prior act was not so remote as to require exclusion") (emphasis added).

Moreover, with respect to the perjury counts, the defendant cannot impose an artificial time limitation to exclude evidence that proves his statements were false. In 2019, the defendant denied that he had *ever* engaged in sexual conduct with inmates. To prove that his statements were false,

---

[2] The defendant states that the default statute of limitations for a violation of 18 U.S.C. § 242 is five years. While this is generally true, section 242 offenses involving aggravated sexual abuse have no statute of limitations. *See* 18 U.S.C. § 3281; *see also* 18 U.S.C. § 242.

the United States may introduce evidence to show that, at any point "ever," the defendant in fact engaged in sexual conduct with women incarcerated at the Coffee Creek Correctional Facility.

Finally, the United States will not argue to the jury that a conviction on Counts 1 through 21 should be based on uncharged conduct. The United States has explained its position here and in earlier filings that admission of the defendant's uncharged sexual conduct should be admitted for specific purposes, subject to a limiting instruction, where appropriate. Doing so would not result in unfair prejudice or otherwise run afoul of Rule 403, let alone violate the Fifth Amendment. *See* ECF No. 87. The United States incorporates by reference those arguments but does not reiterate them here. The defendant's motion *in limine* should be denied.

### III. Defendant's Motion To Exclude "Overview" and "Summary" Witnesses (Defense Motion *in Limine* 3)

Although permitted by the law of this Circuit, the defendant nevertheless objects to any prosecution witness providing "overview" or "summary" testimony. The use of an "overview" or "summary" witness is not *per se* improper. In fact, this Circuit has held that summary evidence "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989); *see also United States v. Nguyen*, 267 F. App'x 699, 704 (9th Cir. 2008) (admission of agent's summary testimony and charts to link certain evidence to defendant based on previous witnesses' testimony and previously admitted evidence was not error); *United States v. Heine*, 2017 WL 449632, at *9 (D. Or. 2017) (witness testimony about summaries of voluminous documents is permitted by Rule 1006).

The out-of-circuit cases cited by the defendant each relate to summary, non-expert witnesses providing conclusory opinions based on otherwise inadmissible testimony or previewing the prosecution's case before any other witness has testified. *See United States v. Aviles-Colon*,

536 F.3d 1, 21 n.13 (1st Cir. 2008) (expressing concern about testimony where "[the testifying agent] went far beyond merely setting the table for the jury by explaining that there was an investigation of the defendant and what steps were taken pursuant to the investigation"); *United States v. Garcia*, 413 F.3d 201, 213 (2d Cir. 2005) (agent's investigative conclusions were improper as Rule 701 lay-opinion testimony because they were not based on his personal perception but rather based on totality of information gathered by various investigators); *United States v. Casas*, 356 F.3d 104, 119-20 (1st Cir. 2004) ("initial witness 'overview testimony' is inherently problematic: such testimony raises the very real specter that the jury verdict could be influenced by statements of fact or credibility assessments in the overview but not in evidence."). The United States does not intend to, and will take care not to, present testimony that would implicate the concerns raised by these cases.

If the United States uses a witness to provide summary or overview testimony, it will do so consistent with the law of the Ninth Circuit. For instance, such testimony or visual aids may be appropriate in this case to assist the jury in understanding or synthesizing complex or voluminous evidence, such as the dates or date ranges of each assault (once a proper foundation is established). The defendant's motion to exclude summary and overview testimony should be denied.

## IV.    Defendant's Motion To Exclude Improper Opinion Testimony by Lay Witnesses (Defense Motion *in Limine* 4)

Even though Rule 701 of the Federal Rules of Evidence expressly permits lay-opinion testimony, the defendant has moved to "preclude the government from eliciting opinion testimony by lay witnesses." ECF No. 91 at 8. It is not clear whose testimony the defendant anticipates may implicate this Rule.[3]

---

[3] In accordance with Fed. Rule of Crim. P. 16(a)(1)(G), the United States noticed Robert Dumond and Ericka Sage, the Statewide PREA Coordinator for the Oregon Department of Corrections

**United States of America's Response to Defendant's Motions *in Limine*** **Page 8**

The United States agrees that opinion testimony by lay witnesses must comport with Rule 701. Specifically, such testimony must be "rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or to determining a fact in issue, and not based on scientific, technical, or other specialized knowledge *within the scope of Rule 702*." Fed. R. Evid. 701 (emphasis added). The defendant's position that testimony based on professional experience falls within Rule 702 and not Rule 701, however, is overbroad and incorrect.

For testimony to be proper lay opinion under Rule 701, the witness must have personal knowledge about the subject of the testimony, a requirement that can be satisfied "if the witness can demonstrate firsthand knowledge or observation." *United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015). "[A] lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education that cannot be placed before the jury." *United States v. Gadson*, 763 F.3d 1189, 1208 (9th Cir. 2014).

Courts within this circuit have, in certain circumstances, permitted lay opinion testimony when the testimony is based on particularized knowledge gained from professional experience or due to the witness's position in a business. *See, e.g.*, *Erhart v. Bofl Holding, Inc.* 445 F. Supp. 3d 831, 842-43 (collecting cases); *Best Western Intern. Inc. v. Patel*, 2008 WL 205286, at *3 (D. Ariz. 2008) (permitting opinion testimony under Rule 701 because witness "was experienced in the

---

(ODOC), as expert witnesses. *See* Government's Notice of Expert Witness Testimony Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at ECF No. 45. The United States provided notice about Ms. Sage in an abundance of caution because of her years of experience and specialized knowledge in her field. As indicated in the Notice, however, the United States expects that Ms. Sage will provide fact testimony based on her firsthand knowledge and experience serving in this professional role, rather than any lay or expert opinion testimony. To the extent she offers any opinion testimony, however, that opinion would also be based on her personal knowledge drawn from her professional position and firsthand experience and would thus be admissible under Rule 701. The United States requests leave to respond more fully to the defendant's motion in the event that it learns which witnesses or what testimony the defendant is seeking to exclude.

**United States of America's Response to Defendant's Motions *in Limine*** **Page 9**

business of buying and selling hotels, [] was completely familiar with the books of the hotels in question, and [] based his opinion on value and revenue losses on *matters about which he had personal knowledge*.") (emphasis added); *see also Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1105-08 (D. Ariz. 2019) (suggesting that testimony based on personal knowledge garnered through certain professional experience falls under Rule 701, whereas testimony involving analysis, "professional judgment," and general industry experience falls under Rule 702); *cf. Lloyd*, 807 F.3d, at 1155 (testimony by employee about business practices was not admissible under Rule 701 because the witness's opinions were "largely based on statements he heard from unidentified telemarketers and investors, well beyond his own personal experience with investors").

        In the instant case, the United States intends to present the lay testimony of Coffee Creek staff who will discuss the training they received pertaining to boundaries and sexual assault in prison.  Their testimony will illustrate that the defendant's actions—leading up to his assaultive behavior and the assaults themselves—were inconsistent with staff training, experience, and common sense.  To the extent this is "opinion" rather than "fact" testimony, this testimony is admissible pursuant to Rule 701 because it will consist of facts based on particularized knowledge the officers gained from their years of training and firsthand experience, not from specialized or technical expertise.  *See Best Western Intern. Inc.*, 2008 WL 205286, at *3 (permitting opinion testimony under Rule 701 because witness had relevant professional experience and personal knowledge).

        If a witness's lay-opinion testimony is "rationally based" on that witness's observation, even if it also draws on professional experience, it is nonetheless properly within the scope of Rule

701.  Because any witness may, consistent with Rule 701, offer lay-opinion testimony that draws

on professional experience and firsthand knowledge, the defendant's motion should be denied.

## V.      Defendant's Motion To Admit 404(b) Evidence of Four Victims the Government May Call (Defense Motion *in Limine* 5)

The defendant has provided notice of intent to offer other-acts evidence, pursuant to Rule

404(b) of the Federal Rules of Evidence.  Specifically, the defendant has identified pending

criminal charges related to AV2, AV8, AV11, and AV12.  Additionally, the defendant has

indicated that he intends to offer evidence and cross-examine witnesses about their disciplinary

history while in custody.[4]  The United States objects to the admission under Rule 404 of this

evidence, and contends that Rules 607, 608, and 611 govern the scope of questioning into this

conduct.[5]

These distinctions are important because they affect whether the defendant may offer

affirmative evidence (under Rule 404(b)) or extrinsic evidence (under the various rules governing

impeachment for bias and credibility) about the victim-witnesses' other bad acts, or whether the

defendant is limited to inquiry on cross-examination (such as under Rule 608) into those specific

instances of conduct.

### A.  Admissibility of Pending Charges As "Motive to Lie"

The defendant has identified four victims with pending charges.  In his summary, the

defendant has highlighted that many of the pending charges involve crimes of dishonesty or relate

---

[4] The defendant also states he will seek to cross examine witnesses and offer evidence of other grievances they filed while at CCCF.  The grievances, and impeachment related to them, may be an appropriate topic for cross-examination, depending on the context at trial.

[5] Because these are pending charges, and not convictions, Rule 609 does not apply.  The parties have separately reached agreement as to which convictions are admissible impeachment under Rule 609.  *See* ECF No. 91 at 9 n.1; ECF Nos. 88 and 88-1.

**United States of America's Response to Defendant's Motions *in Limine***          **Page 11**

to other conduct that implicates dishonesty, such as being untruthful with law enforcement.  For example, the defendant noted that AV11 "lied about her identification to the release officer" when she was arrested.  The defendant claims to want to admit evidence of these bad acts, pursuant to Rule 404(b), as "motive" to "testify the way the Government wants them to."  ECF No. 91 at 12.

First and foremost, the United States wants each witness to testify in only one way: truthfully.  Second, the defendant's contention that these witnesses have *now*, in 2023, developed a motive to fabricate or "change their testimony to curry favor with the government," ECF No. 91 at 11, is not plausible.[6]  All of the women the defendant identifies in his motion (AVs 2, 8, 11, and 12) each reported to local police in 2017 or 2018 that the defendant sexually assaulted them.  It is not clear why, five or six years later and only after picking up new charges, they would feel compelled to "mold" their testimony to "whatever the Government wants it to be, regardless of truth or falsity."[7]  ECF No. 91 at 11.  Importantly, the United States does not anticipate that their testimony at trial will differ in any material way from their initial reports to local police and the FBI, which occurred between four and six years ago.

In his motion, the defendant has conflated several evidentiary rules, each of which have separate mechanics for either admitting or inquiring about the specific acts that the defendant seeks to introduce.  Though the defendant cites Rule 404(b), which offers the most permissive means of admitting other-acts evidence, the proffered evidence is not admissible under that Rule, as

---

[6] The United States does not intend to limit appropriate cross-examination into a witness's bias or about an intent or attempt to curry favor with the government, if warranted.  But the defendant's motion conflates multiple purposes for this evidence, suggesting that he seeks to admit this evidence primarily to impugn the victims' character.

[7] As stated in other filings, *see* ECF No. 88 at 15, the United States has explained and will continue to make clear to these witnesses that the United States is not offering to help them with their pending charges in exchange for their testimony.

described more fully below.  Instead, the defendant's proffered evidence is more properly governed by Rules 607 and 608 of the Federal Rules of Evidence, as well as caselaw pertaining to the scope and procedure for impeachment due to the witness's self-interest or bias.

The defendant's reliance on Rule 404(b) is misplaced.  Specifically, the defendant claims that because the victims have a "motive to testify falsely," evidence of their other bad acts is admissible, not just as a topic of cross-examination questioning but as affirmative evidence, under Rule 404(b).  But the word "motive," as used in Rule 404(b), "does not refer to a motive to testify falsely."  *United States v. Farmer*, 923 F.2d 1557, 1567 (11th Cir. 1991); *see also Navarro v. Ryan*, 2018 WL 6681867 at *17 (D. Ariz. 2018) (Report and Recommendation) ("Under the Federal Rules of Evidence, a motive to lie is not the type of motive within the contemplation of Rule 404.") *modified by Navarro v. Ryan*, 2018 WL 6667239 at *6 (D. Ariz. 2018) (disagreeing, based on state-law cases, with Magistrate Judge as to interpretation of Ariz. R. Evid. 404(b)).  Instead, "motive" in Rule 404(b) refers to the motive for the commission of the crime charged.  *United States v. Sampol*, 636 F.2d 621, 659 n.24 (D.C. Cir. 1980).  "Motive to testify falsely," on the other hand, "is merely an aspect of credibility" governed by Rule 608.  *Id.*

In reality, the defendant seeks to offer this evidence not to reveal an alleged "motive" six years in the making but instead to attack each woman's character for truthfulness under Rules 607 and 608.  Put differently, the purpose of this "bad acts" evidence is simply to show the jury that the defendant's accusers are dishonest:  they were dishonest when they accused him, they have pending charges related to crimes of dishonesty, and they are dishonest today.[8]  This is not Rule 404(b) evidence, this is Rule 608 evidence.  Fed. R. Evid. 404(b)(1) ("Evidence of any other [bad

---

[8] If the defendant believes this evidence is admissible pursuant to Rule 404(a)(2)(B), the United States seeks a clear ruling from the Court so that the United States may offer appropriate rebuttal evidence.  *See* Fed. R. Evid. 404(a)(2)(B)(i)-(ii).

**United States of America's Response to Defendant's Motions *in Limine***          **Page 13**

act] is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character."); *see also* Fed. R. Evid. 404(a)(3) ("Evidence of a witness's character may be admitted under Rules 607, 608, and 609."). The defendant's focus on AV11's false statement to a police officer is telling—the only purpose for offering evidence about that encounter is to show that AV11 has committed specific instances of conduct that bear on her veracity. That purpose is not permitted under the Federal Rules of Evidence. Under Rule 608, a witness's character for truthfulness may be attacked only by reputation or opinion evidence. Fed. R. Evid. 608(a). The Court may permit cross-examination into specific instances of conduct, but extrinsic evidence is not admissible to "prove up" specific instances of conduct. Fed. R. Evid. 608(b). This is a far more limited use than what is permitted for evidence properly admitted under Rule 404(b).

Evidence that bears on a witness's bias or self-interest, which may be applicable here, is subject to a different standard. As the United States explained in its earlier briefing, the law permits the defendant to inquire on cross-examination into pending charges or other areas of bias or self-interest. *See* ECF No. 88 at 14-15; *see also Hughes v. Raines*, 641 F.2d 790, 792 (9th Cir. 1981) ("the right to confront witnesses . . . includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying"). "Because of the importance of bias or interest, inquiry into the area is never collateral, and a witness's denial of the facts constituting bias or interest may be rebutted with extrinsic evidence." *United States v. Frankenthal*, 582 F.2d 1102, 1106 (7th Cir. 1978); *see also United States v. Noti*, 731 F.2d 610, 613 (9th Cir. 1984) (when impeaching a witness through bias or self-interest, "the adverse party . . . may offer extrinsic evidence to rebut" the witness's testimony). Notably, however, extrinsic evidence that may be related to bias or self-interest may nonetheless be scrutinized to see

whether the facts support the stated purpose for the evidence.  For instance, in *United States v. McCoy*, the Ninth Circuit concluded the district court did not abuse its discretion by excluding extrinsic evidence of prior misconduct where the proffered testimony "was relevant only to [the witness's] lack of credibility," because "there [was] no evidence the government was aware of [the witness's misconduct] or agreed to overlook these activities in return for [the witness's] cooperation."  23 F.3d 216, 217 (9th Cir. 1994); *see also United States v. Davis*, 2015 WL 519455 at *3 (C.D. Cal. 2015) (the defendant "may not offer the extrinsic evidence she seeks to admit if the only sufficiently supported purpose for that extrinsic evidence is to impeach the veracity of [the witness]").  Similarly, if the defendant's proffered other-acts evidence is relevant only to the victims' lack of credibility, the probative value of the impeachment evidence is low and the risk of unfair prejudice is high.  Fed. R. Evid. 403.  Evidence and cross-examination into these areas should be limited by the Court, as appropriate.  *See* Fed. R. Evid. 611.

Thus, the defendant should not be permitted to admit extrinsic evidence of victims' specific acts by engaging in mental gymnastics to fit within Rule 404 conduct that is properly placed within the scope of Rules 607 and 608, or bears generally on the witness's bias or self-interest.  The United States respectfully requests that the Court deny the defendant's Rule 404(b) motion to admit other-acts evidence.  Instead, the defendant should be permitted to examine the witnesses consistent with the law described above.

### B.  Disciplinary History

As set forth in its Fifth Motion *in Limine*, the United States objects to the use of a witness's in-custody disciplinary history unless there is a clear connection to a witness's veracity.  ECF No. 88 at 15-17.  The defendant's motion suggests that he intends to use disciplinary records "from around the time the complaining witnesses accused Mr. Klein of sexual misconduct."  ECF No. 91

at 12.  The defendant posits that these disciplinary records are relevant because they demonstrate a motive to cooperate with the government.  As noted above, this type of "motive" is not governed by Rule 404(b) but rather by impeachment more generally, as it goes to bias or self-interest in potentially slanting her testimony.  *See Hughes*, 641 F.2d at 792.  As general impeachment, the records, and the discipline, may be relevant if they were truly probative of a witness's interest in cooperating with the government or altering her testimony for some self-interested benefit.  *See, e.g.*, *id*.  But, for the purpose articulated by the defendant, the United States opposes this use of disciplinary evidence; a victim's in-custody discipline for conduct that post-dated both the defendant's sexual assaults and the victims' disclosures of the assaults does not show, as the defendant suggests, a reason to cooperate with the government to avoid discipline.

The defendant's motion identifies discipline related to only one woman, AV1, whom the defendant states was found, in December 2019, to have committed racketeering and extortion.  As a preliminary matter, the defendant's characterization is misleading—there is no 2019 finding that AV1 was engaged in extortion.  According to her disciplinary records, AV1 was found, by a preponderance of the evidence, to have committed Racketeering (Rule 4.35), defined by the disciplinary records as "illicit activity that is carried out for the purpose of personal or financial gain through acts of crime, extortion of money, or advantage by threats of force."  US00079660-61.  In other words, the finding identified three separate ways Rule 4.35 can be violated.  AV1 was found to have "conspired with civilians to have [contraband] delivered to [AV1] through the mail for personal gain," which is conduct that would fall under the first prong of Rule 4.35.  *Id.*  There is no specific finding or even any allegation contained in her disciplinary hearing summary that suggests that she was involved in extortion.

As the United States explained in its motion, ECF No. 88, evidence of in-custody discipline may be used in certain, narrow circumstances, such as for impeachment generally (revealing interest, motive to lie, or bias) or under Rule 608(b).  In his motion, the defendant indicates that these disciplinary records are relevant because they show a "motive to cooperate with the Government in an attempt to avoid discipline for their own behavior."  ECF No. 91 at 12.

The example of AV1 demonstrates this faulty reasoning.  The defendant sexually assaulted AV1 in September 2017, and she reported his conduct in December 2017.  More than two years later, in December 2019, she was ultimately disciplined for racketeering, based on conduct that occurred just a few months earlier.  Her 2019 conduct is unrelated both to the defendant's sexual assault of AV1 in 2017 and to her decision to report that assault.  Furthermore, because AV1 was disciplined a full two years after the United States interviewed her, AV1 has "no motive to cooperate" related to this incident.  It is simply implausible that, six years after her initial report and four years after being disciplined for her in-custody conduct, AV1 would *now* want to cooperate with the United States to avoid already-imposed discipline, which was completed in 2020.

In summary, the defendant may be able to use information contained in disciplinary records in a limited fashion, consistent with the Federal Rules of Evidence and for a proper purpose.  If this evidence is being offered to show a victim's veracity, it is governed by Rules 607 and 608, not Rule 404.  Moreover, if the evidence is being offered to impeach a witness based on her bias or motive to testify untruthfully, the facts must credibly suggest that there may be a bias or reason to slant testimony—which is absent from the defendant's explanation about AV1's alleged "motive."  Finally, as the United States previously noted in its Motion *in limine*, the documents themselves are inadmissible hearsay.  ECF No. 88 at 15-16 (citing *Seals v. Mitchell*, 2011 WL

1399245, at *6 (N.D. Cal. 2011) (excluding prison disciplinary records as irrelevant, prejudicial, inadmissible character evidence, and inadmissible hearsay)).

## VI.    Defendant's Motion To File Additional Motions (Defense Motion *in Limine* 6)

The United States does not object to the defendant's request for leave to file additional motions, as warranted.[9]    The United States believes it has complied with its discovery and disclosure obligations, and recognizes that it has a continuing and ongoing obligation to provide discovery.    Additional legal authority and argument demonstrating that the United States has not failed to provide *Brady* material is contained in the United States' response to Defendant's Motion to Exclude Government Witnesses (ECF 95).

Dated:  May 12, 2023

Respectfully submitted,

NATALIE K. WIGHT                                    KRISTEN CLARKE
United States Attorney                              ASSISTANT ATTORNEY GENERAL

*/s/ Gavin W. Bruce*                                */s/  Cameron A. Bell*
GAVIN W. BRUCE                                      CAMERON A. BELL
Assistant United States Attorney                    Trial Attorney
                                                    Civil Rights Division

---

[9] The United States notes that the defendant referenced certain materials received "today" (referring to April 21, 2023) from ODOC, implying that the timeframe is at least a contributing factor in the defendant's request for leave to file additional motions after April 21.  Based on the defendant's description of the records and the information contained therein, ECF No. 91 at 13-14, the United States believes the bulk of these same records were provided to the defendant in its initial production more than one year ago, on March 30, 2022. Still, the United States recognizes the value in resolving evidentiary issues in advance of trial, where possible and appropriate.