Matthew G. McHenry, OSB 043571
Levine & McHenry LLC
1050 SW Sixth Avenue, Suite 1414
Portland, OR 97204
503-546-3927
email: matthew@levinemchenry.com

Amanda Alvarez Thibeault, OSB 132913
Alvarez Thibeault LLC
330 NE Lincoln Street, Suite 100
Hillsboro, OR 97124
503-640-0708
email: amanda@aatlegal.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>TONY KLEIN<br><br>　　　　Defendant. | No. 3:22-cr-00084-SI<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE WITNESSES** |

Defendant Tony Klein responds to the government's Opposition to Defendant's Motion to Exclude Witnesses (ECF 104) as follows.

The government's ongoing casual approach to its constitutional and ethical requirements to provide impeaching and exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), is increasingly alarming. Its Opposition to the

Defendant's Motion to Exclude Witnesses further demonstrates the government's misapprehension of its obligations.

The government's latest pleading is permeated with one theme—in its view, it is under no obligation to make any effort to obtain or provide any *Brady* information that it does not already possess.[1] This is a fundamental misconstruction of the constitutional import and direction provided by *Brady* and its progeny. Quite contrary to the government's assertions, the prosecutor has a "duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Further, "a prosecutor cannot evade this duty simply by becoming or remaining ignorant of the fruits of his agents' investigations." *United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009). The obligation "encompasses impeachment evidence, and evidence that would impeach a central prosecution witness is indisputably favorable to the

---

[1] *E.g.*, "the United States does not have an obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to affirmatively obtain and then turn over materials that are not in the United States' possession but rather under the control of state officials" (Gov't Opposition at 2 (ECF 104)); "The United States does not have an obligation to affirmatively obtain materials pertaining to a local entity's criminal investigation or prosecution, which are wholly unrelated to this case" (*id.*); "Because the United States has not had contact with [its own fact witnesses] while they've been in warrant status, there is no information for it to disclose" (*id.* at 3 (ECF 104)); "the United States is not required to obtain and provide information that is not within its possession, custody or control" (*id.*).

2

accused." *Id.* at 907. *See also United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) ("*Brady/Giglio* information includes material that bears on the credibility of a significant witness in the case.") (internal citations omitted).

Moreover, the prosecutor's "duty to learn" is clearly triggered when the prosecutor's agents are "aware of the exculpatory information." *Price*, 566 F.3d at 908–09 (prosecutor had duty to learn and disclose *Brady* information where prosecutor's agent "determined that [government witness] had some arrests and some violation convictions"). *Brady* information "cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does." *Blanco*, 392 F.3d at 388. As the prosecuting arm of the government, the United States Attorney "is in a unique position to obtain information known to other agents of the government" and "may not be excused from disclosing what it does not know but could have learned." *Carriger v. Stewart*, 132 F.3d 463, 479–80 (9th Cir. 1997) (en banc).

When an agent of the government learns of the existence of *Brady* information such as arrests, charges, or convictions, the prosecutor has a duty to learn of and disclose the information to the defense. *E.g.*, *Price*, 566 F.3d at 908–09 (if prosecutor's agent "did in fact know of [government

3

witness's] 'arrests' and 'violation convictions' . . . and if the prosecutor either failed to disclose the information *or* failed to discover that his agent knew of or possessed it, a *Brady* violation occurred") (emphasis in original). Further, the government "cannot evade this duty simply by becoming or remaining ignorant of" information possessed by its agents." *Id.* at 903. Based on "longstanding principles of constitutional due process, information in the possession of the prosecutor *and* his investigating officers that is helpful to the defendant, including evidence that *might tend to impeach* a government witness, must be disclosed to the defense prior to trial." *Id.* (first emphasis in original, second emphasis added). *See also Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.").

As just one example of the government's failure to meet its *Brady* obligations in the instant case, the government concedes it has been aware of outstanding arrest warrants for at least two of its witnesses (AV11 and AV12), and has "learned that AV12 is in custody in a neighboring state." Gov't Opposition at 3 (ECF 104). Nevertheless, the government claims "there is no additional information to provide" because it is "not required to obtain and provide information that is not within its possession, custody, or

4

control." *Id.* This is a direct refusal to act on its obligation. The government's willful head-in-the-sand approach should not be countenanced by this Court. *E.g.*, *United States v. Bruce*, 984 F.3d 884, 896 (9th Cir. 2021) ("government still bore the burden of investigating whether potentially exculpatory evidence existed"); *id.* at 897 ("Prosecutors cannot turn a blind eye to their discovery obligations.").

The situation here is similar to that in the Third Circuit case of *United States v. Padermo*, 929 F.2d 967 (3d Cir. 1991). There, the Court held that "The prosecutor was obliged to produce information regarding [a witness's] background because such information was available to him." *Id.* at 970. The cursory computer search done by the prosecutor was "merely a token effort," and "such an ineffectual attempt to verify a key prosecution witness' criminal history amounted to conduct unworthy of the United States Attorney's Office." *Id.* at 971.

The same is true here. The government is required to act on its duty to learn and disclose *Brady* information "as part of their responsibility to gauge the likely net effect of all such evidence to the case at hand." *Bruce*, 984 F.3d at 895. *Brady* obligations stem from the government's "broader ethical responsibility," which encompasses the concept that "the government's interest in a criminal prosecution is not that it shall win a case, but that

justice shall be done." *Turner v. United States*, 582 U.S. 313, 324 (2017). *See also Kyles*, 514 U.S. at 437 (observing the ABA Standards for Criminal Justice "call generally for prosecutorial disclosure of any evidence tending to exculpate or mitigate"); *Browning v. Baker*, 875 F.3d 444, 459 (9th Cir. 2017) (quoting *Strickler*, 527 U.S. at 280, and emphasizing prosecution's special status in criminal justice system heightens its burden of disclosure).

The government's obligations under *Brady* are also related to the cumulative nature of the *Brady* information at play. A substantial portion of the government's fact witnesses have pending criminal charges and/or outstanding arrest warrants. Importantly, "the test for *Brady* purposes is not whether any single item will make or break a case—rather, it is whether the cumulative effect of the undisclosed evidence would reasonably cast doubt on the integrity of a guilty verdict." *United States v. Cerna*, 633 F.Supp.2d 1053, 1062 (N.D. Cal. 2009) (noting "This was a square holding of *Kyles v. Whitley*, 514 U.S. 419, 441-54 (1995)").

Also, that the government has provided *some Brady* information related to the criminal history of *some* of its witnesses functions as further proof that it is shirking its duty to provide *all Brady* information. The government cannot choose to seek some information while willfully ignoring other information. Where the federal prosecutor or its agents have

6

sought information, the request must "ask for *all* information on the same subject, pro and con. . . . the search must be even-handed as to the point of inquiry." *Id.* at 1060. The government cannot plead that it does not possess the information when it had an obligation to obtain the information and chose not to do so.

Additionally, and particularly where the government is on notice of the existence of *Brady* material, "a prosecutor is required to use due diligence—affirmative due diligence—to gather *Brady* material from known and plausible sources of exculpatory information and then to turn over and *Brady* material that is found." *Id.* at 1061–62. After all, "[s]easoned prosecutors and assisting agents know the usual range of plausible locations" for *Brady* material. *Id.* If, as here, "a prosecutor has a specific reason to suspect that *Brady* material may reside at a source, of course, the prosecutor must inquire, even if the source would otherwise seem implausible." *Id.* at 1061 (where notice is provided to the prosecutor of the existence of *Brady* material, such notice "may heighten the diligence due from the prosecutor by informing him or her of circumstances the prosecutor could not reasonably be expected to know").

In any case, the diligence due from a prosecutor "will almost always require more than generally asking a local police contact to check for *Brady*

information, for such a request is unlikely to translate into a genuine effort to retrieve defense evidence with the same rigor as prosecution evidence." *Id.* at 1062.

*Carriger* is instructive. There, the prosecutor's "star witness" was "known by police and prosecutors to be a career burglar and six-time felon, with a criminal record going back to adolescence." 132 F.3d at 480. When, as here, "the state decides to rely on the testimony of such a witness, it is the state's obligation to turn over all information bearing on that witness's credibility." *Id.* (citing *Giglio*, 405 U.S. at 154). Further, "[t]his *must include* the witness's criminal record, including prison records, and any information therein which bears on credibility." *Id.* (emphasis added). The government "ha[s] an obligation, before putting [the witness] on the stand, to obtain and review" the information, "and to treat its contents in accordance with the requirements of *Brady* and *Giglio*." *Id.*[2]

---

[2] *See also Hollman v. Wilson*, 158 F.3d 177, 181 (3d Cir. 1998) ("Thus, we, along with several other circuits have imposed upon the prosecution a duty to search accessible files to find requested exculpatory material"); *East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995) (explaining that prosecution is deemed to have knowledge and possession of its witnesses' criminal history information that would be revealed by a routine check of FBI and state database, including a witness's state rap sheet, where such information is readily available); *United States v. Brooks*, 966 F.2d 1500, 1502–04 (D.C. Cir. 1992) (explaining that prosecutor has duty to search files of other agencies closely aligned with prosecution where there was explicit request for apparently easy examination and non-trivial prospect that examination

8

## CONCLUSION

The government is of the view that *Brady* information—including information related to ongoing "criminal investigation or prosecution" of its own witnesses—is "wholly unrelated to this case." Gov't Opposition at 2 (ECF 104). This position is untenable. The government has a fundamental misunderstanding of its obligations under *Brady*. Indeed, just last month the government provided the defense with an additional volume of discovery, which included "documents from . . . potential witnesses' prior criminal cases." 5/1/2023 email from U.S. Attorney to Klein defense counsel. The government explained to defense counsel that it only provided those documents "as a courtesy," omitting that it had an obligation to do so. *Id*.

Given the government's dismissive approach to its *Brady* obligations in this case thus far, the defendant cannot be expected to rely on the government to fulfill its duty. Unfortunately, however, the "government alone determines which information must be disclosed pursuant to *Brady*, and this decision is final." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). The Supreme Court has cautioned prosecutors "not to tack[] to close to the

---

might yield material exculpatory information); *Perdomo*, 929 F.3d at 971–71 (holding that federal prosecutor's failure to conduct search of local records to verify witness's criminal background constituted suppression under *Brady* because information was readily available to it).

wind" and directed that "the prudent prosecutor will resolve doubtful questions in favor of disclosure," but that is clearly not what has occurred here. *Kyles*, 514 U.S. at 439. The Court should exclude the government's witnesses for whom it has not provided *Brady* information.

Respectfully Submitted this 2nd day of June, 2023:

| | |
|---|---|
| /s/ *Matthew G. McHenry* | /s/ *Amanda Alvarez Thibeault* |
| Matthew G. McHenry | Amanda Alvarez Thibeault |
| Counsel for Tony Klein | Counsel for Tony Klein |