NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:  (541) 465-6771
**CAMERON A. BELL, CSB #305872**
Trial Attorney—Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Cameron.Bell@usdoj.gov
Telephone:  (202) 802-7643
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 3:22-cr-00084-SI** |
| **v.** | **UNITED STATES' REPLY IN SUPPORT OF ITS OMNIBUS MOTION** |
| **TONY DANIEL KLEIN,** | ***IN LIMINE* [ECF NO. 88]** |
| **Defendant.** | |

The United States hereby files this Reply in support of its Omnibus Motion *in Limine* (ECF No. 88).

### I.     Motions To Exclude Improper Character Evidence

The United States has filed several motions to exclude evidence and argument about improper character evidence.  Specifically, the United States moved to exclude: "good" character evidence of the defendant; witnesses' prior convictions not agreed upon by the parties; the name

and nature of AV3's convictions; witnesses' prison disciplinary records and evidence of other in-custody misconduct unrelated to truthfulness; and evidence of victims' other sexual behavior. ECF No. 88 at 9-18.

### A.  "Good" Character Evidence of the Defendant (Motion *in Limine* 1)

The United States has moved to exclude evidence of the defendant's "good" character, such as testimony that he was professional, devoted to his job, or dedicated to public service.  ECF No. 88 at 9.  The defendant agrees that general statements that he was a "good employee" or "good person" are inadmissible.  ECF No. 108 at 2.  The defendant argues, however, that he should be able to present other evidence of specific acts to show that he did not commit the charged acts. Specifically, he offers three types of evidence: "not me too" witnesses; the absence of grievances, prior to 2017, complaining of his sexual misconduct; and the fact that other nurses never saw the defendant behave inappropriately.

#### 1.  "Not Me Too" Witnesses

The defendant asserts, in response to the United States' Motion to exclude character evidence, that he is entitled to present "not me too" witnesses who will testify that the defendant did not sexually assault them.  He is incorrect; this evidence is improper character evidence or, in the alternative, is irrelevant.  The defendant should not be permitted to present evidence by witnesses whose sole purpose is to testify that the defendant did not assault them.

To the extent the defendant offers "not me too" witnesses to prove his character, such evidence is not permitted by the Federal Rules.  Testimony or evidence that the defendant did not assault a particular witness is a "specific act" (or absence of the act) that is intended to prove that he therefore did not commit the acts with which he was charged.  *See, e.g.*, Fed. R. Evid. 404(b)(1) ("Evidence of any other . . . act is not admissible to prove a person's character in order to show

that on a particular occasion the person acted in accordance with that character."). The defendant cites no Rule of Evidence that permits this use. To the contrary, for a person to use specific acts of conduct to prove his character, he can do so only when character is "an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). Character is not an essential element of the charged crimes or defenses here.

The defendant cites no legal authority to support the admissibility of "not me too" testimony and evidence to rebut Rule 413 testimony, and the United States has found none.[1] The defendant generally refers the Court to a civil case, *Torres et al. v. Snider*, 3:17-CV-00624, in which this Court permitted rebuttal witnesses to counter the plaintiffs' proffered evidence under Rule 415, the civil corollary to Rule 413.[2] *See id.*, ECF No. 114 at 19-20. That case is distinguishable because the plaintiffs there "concede[d] that defendants should be allowed to

---

[1] Despite an extensive search, the United States has found no federal cases on point, but a similar Oregon state case is instructive. In *State v. Reeder*, 904 P.2d 644, 644 (1995), the defendant was accused of sexually abusing a child, and he proposed calling approximately ten witnesses to testify that the defendant did not sexually abuse their children. The defendant characterized the proposed testimony as addressing his propensity to commit the alleged act and demonstrating that it is completely out of character for him. *Id.* at 645. The trial court denied his request, concluding that "evidence that defendant did not abuse children on other occasions is not relevant and that the proffered testimony is not evidence of a pertinent character trait within the [relevant state law]." *Id.* at 644. The Oregon Court of Appeals affirmed.

[2] The defendant has referred to *Torres et al. v. Snider*, numerous times in both his initial filings and his responses to the United States' Motions. *See* ECF No. 108 at 2-3; ECF No. 91 at 11. To the extent the defendant intends to question witnesses or present evidence about their awareness of the fact that there was a prior lawsuit involving inmates at Coffee Creek, the United States agrees that this information could be arguably relevant. But, that case involved different complainants, different defendants, different attorneys, and a different burden of proof. References to what happened in the courtroom or the outcome of the case are irrelevant, and will mislead the jury and confuse the issues presented in this case: whether this defendant, Tony Klein, sexually assaulted different women while employed at Coffee Creek. Fed. R. Evid. 401, 403. Moreover, the United States moves to exclude statements or argument by the defendant that the allegations against Dr. Snider were "false allegations"; that the trial resulted in a defense verdict does not conclusively establish that any woman's accusations were false. These, too, would be irrelevant and misleading, and would confuse the issues. Fed. R. Evid. 401, 403.

**United States' Reply In Support of Its Omnibus Motion *in Limine***                    **Page 3**

introduce evidence that contradicts or conflicts with FRE 415 evidence at trial." *Id.*, ECF No. 91 at 8.    Based on that concession alone—without any additional legal authority—the *Snider* defendants sought to call rebuttal witnesses to testify that they were not sexually abused by Snider while they were incarcerated at CCCF.    *See id.* ECF No. 103 at 5-7; ECF No. 105 at 10.    Unlike the plaintiffs in *Snider*, the United States does not agree that, in this case, the defendant may call "rebuttal witnesses" who will testify that they were not sexually assaulted by the defendant.    That is not to say that the defendant is unable to introduce evidence that contradicts or casts doubt on testimony about other acts that the United States offers under Rule 413.    Instead, the defendant's rebuttal or cross-examination must comply with the Federal Rules of Evidence.

Alternatively, if the defendant seeks to offer "not me too" witnesses to argue that the defendant sometimes did not commit sexual assaults, this evidence does not meet the threshold standard of relevance under Rule 401.    The fact that the defendant may not have sexually assaulted one woman has no tendency to make more or less probable the question of whether the defendant sexually assaulted another woman.    Fed. R. Evid. 401; *see also United States v. Glazer*, 850 F. App'x 488 (9th Cir. 2021).

In *Glazer*, the defendant was charged with healthcare fraud for billing nonexistent and medically unnecessary services, and this Circuit addressed an argument similar to the one the defendant now offers.    850 F. App'x at 492.    There, the Ninth Circuit concluded that "excluding evidence of 'legitimate' medical services" was not an abuse of discretion, "because a defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions." *Id*. at 492 (citing *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955)).    The defendant cites no authority to explain why, contrary to the law of this Circuit, he should be able to admit evidence that he sometimes provided "legitimate medical services" that did not involve

sexual abuse, in order to argue that claims by other witnesses who allege that their medical appointments *did* include sexual abuse are false.  Even if it is true that the defendant did not sexually assault every inmate at Coffee Creek, such evidence has no tendency to make a fact of consequence more or less probable.  Fed. R. Evid. 401.  Even serial criminals do not perpetrate crimes against everyone in their orbit.  Testimony from "not me too" witnesses should therefore be excluded.

## 2.  Absence of Grievances Prior to 2017

The defendant indicates in his response that the absence of any written grievances about his sexual behavior is "direct evidence related to the defense theory," because despite his seven-year employment at Coffee Creek "the complaints accusing Mr. Klein of sexual abuse came pouring in" "almost all at once."  ECF No. 108 at 2.  The United States agrees that this is arguably relevant to the defendant's theory and does not object to this evidence.

## 3.  Other Nurses Who Did Not See the Defendant Behave Inappropriately

Finally, the defendant argues that he should be able to present evidence or cross-examine witnesses about the fact that other nurses did not see him behave inappropriately.  The defendant has not identified specific information to explain the scope of what he means.  As described in the United States' initial filings, ECF No. 88 at 10, the defendant cannot offer evidence of his good character.  To the extent the defendant intends to ask questions or offer evidence about specific instances of his good behavior or lack of "inappropriate" behavior, the United States requests the defendant provide an offer of proof before being permitted to ask witnesses about this conduct so this Court can rule on its admissibility under Rule 405(b) and other evidentiary rules.

### B.  Prior Convictions (Motion *in Limine 2*)

Based on the defendant's response to this Motion, it appears the parties have generally reached agreement about the admissibility, under Rule 609, of the prior convictions identified in ECF No. 88-1.

### C.  Name and Nature of AV3's Prior Convictions (Motion *in Limine* 3)

The United States has moved to exclude the name and nature of AV3's convictions under Rules 609 and 403.  The defendant objects because he predicts that the United States will cite to the victims' fear of discipline or retaliation in an effort to explain their delayed disclosure to law-enforcement authorities.  With respect to AV3 in particular, the defendant argues that her crimes of conviction (attempted murder, manslaughter, and unauthorized use of a motor vehicle) show that she is "the type of person to commit a homicide" and therefore was not the type of person to fear what would happen to her if she "timely reported her assault."  ECF No. 108 at 6.

Rule 609 permits certain criminal convictions to be admitted for one reason:  to attack a witness's character for truthfulness.  The defendant's stated purpose—to show that because AV3 is "the type of person to commit a homicide," she is not afraid of discipline or retaliation—demonstrates that this information is not probative of character for truthfulness.  Instead, the defendant's motion reveals that his purpose for admitting this evidence is directly aimed at smearing AV3's character—to show the jury "the type of person" that she is.  The probative value of the name and nature of AV3's convictions, which are not crimes of dishonesty, is substantially outweighed by the risk of unfair prejudice.  Fed. R. Evid. 403.  This Court should exclude such evidence.

### D.  Prior Arrests and Pending Charges (Motion *in Limine* 4)

The United States has moved to exclude evidence of prior arrests that did not result in conviction and limit questions or evidence about pending criminal charges.  ECF No. 88 at 14-15.  The defendant agrees that arrests that did not result in convictions for charges that occurred "prior to the accusations against Mr. Klein" should not be admitted.  ECF No. 108 at 6-7.  The parties differ, however, about whether the defendant may properly cross-examine witnesses and offer evidence about their subsequent criminal charges.

As set forth in the United States' Opposition to the Defendant's Motion *in Limine*, ECF No. 102 at 11-15, cross-examination into these areas may be appropriate, but this evidence does not fit within the scope of Rule 404(b).  As to the defendant's argument that evidence about pending charges is constitutionally required, the United States assumes he is referring to the Confrontation Clause.  It is well established that the Confrontation Clause protects the right to cross-examine witnesses.  *See, e.g.*, *Olden v. Kentucky*, 488 U.S. 227, 231 (1988); *see also Davis v. Alaska*, 415 U.S. 308, 318 (1974) ("defense counsel should have been permitted to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness").  In addition, and as stated in the United States' earlier filing, *see* ECF No. 102 at 14, "the right to confront witnesses . . . includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying."  *Hughes v. Raines*, 641 F.2d 790, 792 (9th Cir. 1981).  But "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, [or] confusion of the issues . . . ."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Accordingly, and as set forth in the United States' prior filings, *see, e.g.*, ECF No. 88 at 14-15, cross-examination about pending charges

**United States' Reply In Support of Its Omnibus Motion *in Limine***                    **Page 7**

should be limited to bias and whether the witness expects or hopes to receive a benefit in exchange for testimony.

### E.  In-Custody Discipline and Conduct (Motion *in Limine* 5)

The United States has moved to exclude prison disciplinary records and evidence of other victims' or witness's in-custody conduct, unless the evidence is probative of character for truthfulness.  ECF No. 88 at 15-17; *see also* Fed. R. Evid. 608(b).  The United States provided further briefing on this issue in its Opposition to the Defendant's Motion in *Limine*.  ECF No. 102 at 11-18.  Through his filings, the defendant argues that records of in-custody discipline are not just relevant (regardless of whether the specific acts are probative of veracity) but admissible.  ECF No. 91 at 9-12; ECF No. 108 at 8-12.  The defendant argues that these records are relevant because they "illustrate that [the victims] were not afraid of any disciplinary repercussions" for their own behavior, so they therefore could not have been afraid of the disciplinary repercussions that might result if they reported a staff member's sexually assaultive behavior.  ECF No. 108 at 8-12.

This Court should limit inquiry into in-custody discipline and misconduct.  The records themselves are inadmissible hearsay.  Fed. R. Evid. 801(c).  The specific instances of misconduct that the defendant seeks to admit are admissible, under Rule 608, *only* if they are probative of truthfulness.  Evidence or cross-examination about the underlying misconduct not related to truthfulness, however, is not permitted by the Federal Rules and should be excluded under Rule 403 because the probative value of that misconduct is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  Fed. R. Evid. 403.

As detailed in earlier filings, *see* ECF No. 88 at 15-17 and ECF No. 102 at 15-18, Rule 608(b) permits specific acts of a witness's misconduct only if they are probative of truthfulness. The categories of evidence the defendant seeks to admit—particularly the nature or "flagrancy" of

the victims' behavior that led to the discipline—are not probative of truthfulness.  ECF No. 108 at 10.  Nor are the specific examples that the defendant cites.  That AV3 had alcohol in her cell is not probative of truthfulness.  *See Diggs v. Guynup*, 621 F. Supp. 3d 315, 321 (N.D.N.Y 2022) ("Plaintiff's disciplinary conviction [in custody] for drug use from 2017 has no apparent probative value as to Plaintiff's character for truthfulness.").  That AV7 punched another inmate in the head, consumed alcohol while in custody, or distributed drugs while in custody is not probative of truthfulness, either.  *See United States v. Collins*, 90 F.3d 1420, 1429 (9th Cir. 1996) (district court did not abuse discretion by excluding about witness's drug dealing under Rule 608(b)); *see also Diggs*, 621 F. Supp. 3d at 321.  Absent this connection to veracity, the underlying misconduct is not admissible under Rule 608(b).

The defendant argues that, despite Rule 608(b)'s strict limits, the in-custody discipline is relevant to show that the victims were "not afraid of any disciplinary repercussions" that might occur if they reported that the defendant sexually assaulted them.  *See* ECF No. 108 at 8-10.  This theory of relevance is oversimplified.  The United States does not expect that any witness will testify simply that she was afraid of disciplinary repercussions and therefore did not report that she had been assaulted by the defendant.  Instead, the United States expects that, consistent with what is known about Coffee Creek and its procedures, witnesses may testify that they did not report because they did not want to lose privileges, such as family visits or a coveted job, and/or be sent to segregation.  There is a significant difference between an inmate being duly punished for committing misconduct (a calculated risk that some incarcerated people choose) and being punished for reporting that she is the victim of someone else's.  The United States expects this difference, and the consequences of each, will become clear through testimony at trial.

Even under that faulty theory, though, the defendant need not introduce the records themselves or even ask about the underlying bases for the discipline, in order to show that the victims had received discipline before and therefore were not "afraid" of discipline. The defendant claims that he is "entitled to rebut [evidence that the accusers were afraid of reporting because they would be subjected to prison discipline] by showing all the other times these accusers engaged in behavior that actually resulted in discipline as well as the disciplinary punishments that they received." ECF No. 108 at 11. That "rebuttal evidence" does not require an inquiry into the underlying misconduct—the defendant's omission in that sentence proves the point. Nor does the "flagrancy" of an inmate's own behavior or misconduct shed light on whether she would be "afraid" or reluctant to report staff behavior and endure the disciplinary consequences for conduct that she did not commit. *See* ECF No. 108 at 10. Instead, the defendant is simply trying to portray the victims in this case as unsavory people because they have done unsavory things. The Federal Rules of Evidence do not permit such a purpose. Absent a connection to veracity, evidence about specific acts of misconduct are inadmissible. Fed. R. Evid. 608(b). Cross-examination about prior discipline—that it occurred and how long it lasted—may be appropriate, but evidence about the specific misconduct should be excluded. Fed. R. Evid. 401, 403.

### F. Other Sexual Behavior (Motion *in Limine* 6)

The United States has moved to exclude victims' other sexual behavior, pursuant to Rule 412. In response, the defendant contends that evidence that any of the other victims engaged in sexual assaults while in prison is required to be admitted, and specifically cites AV3's disciplinary record,[3] which includes a finding that she sexually assaulted another inmate in 2018. The defendant also notes that he is continuing to examine records, so "there may be other claims of

---

[3] As discussed above, the disciplinary records themselves are inadmissible.

sexual abuse made by the same inmates in this case against other staff." ECF No. 108 at 13. The United States will respond to any additional defense motions on this subject, as appropriate.

Though the underlying conduct is impermissible as impeachment under Rules 412 and 608(b), AV3 has admitted that she made false statements during her disciplinary proceedings related to that incident. The Rules of Evidence therefore permit her to be cross-examined about those statements, as they are relevant to her character for truthfulness. *See* Fed. R. Evid. 608(b). Because information about AV3's disciplinary hearing may be relevant and admissible, the United States may seek to affirmatively introduce evidence or testimony about the underlying incident to provide context and avoid misleading the jury (to clarify, for instance, that AV3 did not falsely accuse another of committing sexual misconduct during the disciplinary investigation). However, the records themselves remain inadmissible hearsay.

## II.    Motion To Limit Use of Victims' Medical Information (Motion *in Limine* 7)

The United States has moved to limit the use of victims' medical information. The defendant misunderstands the United States' Motion. As an initial matter, the defendant is incorrect that the United States is requesting advance notice for the use of the medical records without providing such notice itself. The United States provided an Exhibit List, ECF No. 44, which contained excerpts from several medical records. The defendant objected to those records on several bases. ECF No. 93. The United States is merely requesting the same opportunity.

As the United States outlined in its initial Motion, ECF No. 88 at 18-20, medical records contain highly sensitive information. The defendant rightly notes that the portions of the records, which may not be included in the United States' exhibits, may become relevant, depending on the

testimony at trial.[4]  Through its Motion, the United States is simply asking that the defendant provide advance notice before he attempts to offer such potentially sensitive information to the jury, so that the United States may have an opportunity to object, if appropriate.

### III.    Motion To Exclude or Limit Evidence That Contains Inaccurate, Irrelevant, or Improper Legal Standards (Motion *in Limine* 8)

The United States moved to exclude or limit evidence that contains inaccurate, irrelevant, or improper legal standards, and identified two of the defendant's proposed exhibits, which total more than 160 pages.  In response, the defendant has provided a screenshot of a single page of one of the training modules that does not relate to legal standards.  The United States does not object to the use of this particular page of the exhibit, but maintains that slides that contain legal standards that do not apply to this case or are otherwise improper, inaccurate, or irrelevant to the jury's consideration of the charges should be excluded.  *See* ECF No. 88 at 20-21.  Two such slides are provided below, from the defendant's exhibit 1077.  Both of these slides contain legal standards that are not reflected in the proposed jury instructions, *see* ECF No. 86, and threaten to confuse the jury.  These slides, and similar slides, should be excluded.  Fed. R. Evid. 401, 403.





---

[4] Even relevant evidence is not necessarily admissible, however.  For example, if a record indicates that a particular AV has memory issues, the information contained in the record may be a relevant area of inquiry, but the record itself is not automatically rendered admissible.

**United States' Reply In Support of Its Omnibus Motion *in Limine***                    **Page 12**

**IV.    Motion To Limit Evidence of Civil Settlements (Motion *in Limine* 9)**

The United States has moved to limit evidence about financial settlements that some of the victims received as a result of civil lawsuits related to the defendant's sexual misconduct.  The defendant disagrees, arguing that both the amounts ultimately received and initially sought are admissible to show the victims' continuing bias (in an effort to protect their financial awards) and to show "how much money was on the line" in their initial ask.  ECF No. 108 at 17.  As set forth in its earlier Motion, *see* ECF No. 88 at 21-24, the United States agrees that the fact of a civil lawsuit may be relevant to bias, but the specific numerical calculations of damages and initial demands are substantially more misleading and confusing than probative.  Fed. R. Evid. 403.  Thus, they should be excluded.

Some factual background may be helpful.  Of AVs 1 through 12, seven women filed civil lawsuits (AVs 1, 4, 6, 8, 9, 10, 11).  Of those, all but AV8 had the same attorney, who filed the lawsuits around the same time.  *See Suarez v. Peters, et al.*, 3:19-cv-95 (D. Or. 2019).  In each of those lawsuits, the plaintiff's initial complaint requested five million dollars in compensatory damages and $100,000 in punitive damages for each victim.  In AV8's lawsuit, the plaintiff's initial complaint requested $800,000 in non-economic damages, as well as economic damages for future mental-health expenses.  Ultimately, the lawsuits each settled, for varying sums.  Through the settlements, each woman[5] received the following amount, before costs and attorneys' fees:

- AV1:  $235,000
- AV4: $290,000
- AV6: $145,000
- AV8: $150,000

---

[5] Additionally, AV14 and AV18, two proposed 413 witnesses, received $250,000 and $165,000, respectively.

**United States' Reply In Support of Its Omnibus Motion *in Limine***                     **Page 13**

- AV9: $135,000
- AV10: $185,000
- AV11: $150,000

Both the amount each woman was awarded and the initial demand should be excluded. With respect to the ultimate settlement amount, each woman received around 60 or 66 percent of the amount, which was determined not by a jury but negotiated by the parties and their attorneys. Furthermore, the variance among the women's awards is misleading and confusing, and its marginal probative value will do little to help the jury assess whether the defendant committed the charged acts. Instead, the jury will wonder why AV1's recovery was so different from AV9's. They will wonder why AV8 and AV11 recovered the same amount when the conduct was similar but not the same, and they will wonder why AV6, who was assaulted repeatedly, received just $10,000 more than AV9, who was assaulted by the defendant only once. Information about the amount of money each woman was awarded should be excluded under Rule 403, because the risk of confusion substantially outweighs the probative value.

Even if the Court is inclined to permit evidence about the amount of money women were awarded as a result of their lawsuits, the amount each woman initially sought should be excluded because it is irrelevant. Fed. R. Evid. 401. Alternatively, the marginal probative value is substantially outweighed by the danger of misleading the jury and confusing the issues. Fed. R. Evid. 403. As noted above, six of the seven lawsuits initially demanded at least five million dollars, while AV8's lawsuit demanded $800,000. The defendant argues that the amount sought is relevant, because it shows "how much money was on the line" and thus "why [the victims] would make up these accusations." ECF No. 108 at 17. Contrary to the defendant's position, the amount initially demanded does not represent how much money was on the line—it is commonly understood among attorneys that the initial demand is not a reflection of the case's true value.

**United States' Reply In Support of Its Omnibus Motion *in Limine*** **Page 14**

Moreover, the victims may not have known how much their attorneys intended to demand in the complaint. In other words, the figure initially demanded (whether 5 million dollars or $800,000) is essentially meaningless. But jurors are unlikely to be familiar with the mechanics of civil litigation. As a result, the amount initially demanded has no tendency to make a fact of consequence more or less likely. Fed. R. Evid. 401. Even if the initial demand was arguably relevant, the probative value is substantially outweighed by the risk of misleading the jury and confusing the issues. The amounts of the initial demands should therefore be excluded. Fed. R. Evid. 403.

## V.    Motion To Preclude Defendant's Use of Self-Serving Hearsay Statements (Motion *in Limine* 10)

The United States has moved to preclude the defendant's use of self-serving hearsay statements. The United States agrees that, should the defendant attempt to offer his own statements, that issue may be best addressed in the context of trial. The defendant's argument, however, that his "requests" for additional security measures are questions and therefore not assertions is not dispositive. *See, e.g., United States v. Torres*, 794 F.3d 1053, 1061 (9th Cir. 2015) ("Because there may be instances where a party attempts to admit hearsay by cloaking statements under the guise of a question, the focus of the inquiry should be on what the declarant intended to say, whether implied or directly asserted."). If the defendant intends to offer at trial the statements and questions contained in the defendant's emails, the United States requests an opportunity to be heard outside of the presence of the jury, to consider whether the offered statements (or questions) are being offered for their proper purpose.

### VI.    Motion To Exclude Certain Testimony from Defendant's Proffered Expert (Motions *in Limine* 11 and 12)

The United States has moved to exclude certain testimony in two specific areas from the defendant's proffered expert, Constantine Alleyne.  To be sure, the United States agrees that Ms. Alleyne possesses the requisite qualifications to offer testimony about some of the topics described in the defendant's Notice and agrees that some of the testimony may be relevant to the defendant's theory of the case and helpful to the jury.  Tailoring its objections, the United States has moved to exclude 1) Ms. Alleyne's opinions about mental health or trauma, because she lacks appropriate qualifications (Motion *in Limine* 11), and 2) Ms. Alleyne's opinions about credibility or that are otherwise unhelpful to the jury (Motion *in Limine* 12).

In response, the defendant requests that the Motion be deferred until a *Daubert* hearing is held.  ECF No. 108 at 21; *see also* ECF No. 97.  Rather than explain how the defendant's proffered expert possesses the requisite qualifications to discuss "trauma backgrounds" or provide additional information about her testimony, the defendant has attacked the United States' proffered expert, Robert Dumond.

As it relates to credibility assessments, the defendant has oversimplified the United States' proffered expert testimony.  Both Notices indicate that each expert will "give necessary context to the testimony of the [victims/witnesses]" about the "unique circumstances" that "arise in a custodial setting."  ECF No. 45 at 3; ECF No. 59 at 3.  While that may be true, the defendant fails to explain what those unique circumstances are, other than to state that they "can contribute to false accusations being made against staff."  ECF No. 59 at 3.  The United States' Notice, on the other hand, describes the unique circumstances of a custodial setting and explains the many ways that sexual assault in that setting may differ from how sexual assault is understood in the greater community.  ECF No. 45 at 3-4.

**United States' Reply In Support of Its Omnibus Motion *in Limine***          **Page 16**

As the United States previously stated in its Motion *in Limine* pertaining to Ms. Alleyne's testimony, "Without more, this testimony is unhelpful to a jury and invades the exclusive province of the jury to assess credibility." ECF No. 88 at 33. In response, the defendant has not supplemented his notice or otherwise offered any insight into how Ms. Alleyne's testimony will amount to more than a claim that sometimes, people in prison make false accusations against staff. At least at the level of generality provided in the defendant's Notice and Supplement, ECF Nos. 59 and 67, this opinion is "within the ken of the ordinary juror" and unhelpful to the jury. *See United States v. Heine*, 2017 WL 5260784 at *2-3 (D. Or. 2017) (citing *United States v. Libby*, 461 F. Supp. 2d 3, 14 (D.D.C. 2006)). The United States expects that at least some of Ms. Alleyne's testimony will be relevant and admissible, but the defendant should first be required to provide additional information as to what her opinions will be and the bases for them, and the Court should exclude opinions that are nothing more than a credibility assessment. The United States believes these aims can be accomplished without a separate *Daubert* hearing.

### VII.    Motion To Exclude Evidence or Argument About a Particular DNA Test (Motion *in Limine* 13)

The United States has moved to exclude evidence or argument about the DNA test associated with Complaining Witness (CW) 1. CW1 did not report the defendant's sexual conduct until four months after it occurred—and during those four months, she preserved her underwear in a plastic bag. By the time her underwear was tested, the sample was insufficient to compare to the DNA sample that investigators had obtained from the defendant.

As noted in its Motion, the United States does not intend to offer evidence of the defendant's sexual conduct with CW1, and the United States does not plan to call her to testify. Nevertheless, the defendant asserts that the DNA test is relevant to establish that other women were pursuing claims against the defendant that the United States chose not to pursue and to

establish that there were inmates attempting to extort the Department of Corrections for money.  It is not clear how the inconclusive results of a DNA test related to a woman who the United States does not expect to testify in its case in chief is relevant to any of the conduct before the jury in this case.  *See* Fed. R. Evid. 401.  Instead, the probative value of this evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, and misleading the jury.  Fed. R. Evid. 403.  It should be excluded.

### VIII.    Motion To Exclude Evidence of Subsequent Remedial Measures (Motion *in Limine* 14)

The parties appear to generally agree on this Motion.  The parties agree that neither party should be able to argue that changes to the facility made after the accusations make it more or less likely that the assaults occurred.[6]  The parties also appear to agree that the fact that subsequent changes were made to the facility cannot be used to argue that there was therefore a previous defect in the facility.  Finally, the United States agrees that the defendant may offer evidence or cross-examine witnesses about the specific conditions in the prison at the time as it relates to security measures and policies.  In fact, the United States believes both parties should be permitted to introduce relevant and admissible evidence about the security measures and procedures.

For the purpose of clarifying the record, the United States responds to the defendant's claim that the United States misled the defendant and this Court about a witness (former Medical Services Manager Christina Pries) who was interviewed and described changes made to the

---

[6] Contrary to the defendant's assertions, *see* ECF No. 108 at 24, the United States' position has not changed.  *Compare* ECF No. 45 at 6 ("To the extent the government seeks to elicit [testimony about changes to the facility], it will be to explain that recent photographs of the facility, particularly in the medical unit, do not reflect what that area looked like at the time the defendant worked there") *with* ECF No. 88 at 34 ("The United States does not intend to draw attention to the fact that changes have been made, other than to clarify the record, as needed, that a photograph shows a condition that did not exist before 2018.").

**United States' Reply In Support of Its Omnibus Motion *in Limine***          **Page 18**

facility.  The defendant contends that the United States misled the Court because "the witness did not actually work at CCCF during the [timeframe of the charged assaults] and therefore can provide no relevant information regarding the changes to the facility from the relevant time until the present." ECF No. 108 at 24 n.5.  He further states that "the witness did not provide any of the information the government said the witness provided" in its Opposition to the Defendant's Motion to Continue. *Id.* (referring to ECF No. 46).  According to the report that the United States disclosed to the defendant on March 21, 2023, Ms. Pries worked remotely from another ODOC facility at the end of 2017, and then reported full time to Coffee Creek in 2018, where she worked until May 2020.  During that time, she oversaw many of the changes that were made at the facility; in fact, she referred to herself as the "catalyst" for many changes in the medical unit, including the length of the curtains.  According to Ms. Pries, windows on doors were enlarged during her employment at CCCF, and she was also responsible for reconfiguring one of the rooms where, as multiple victims are expected to testify, the defendant assaulted inmates.  The summary of her interview makes clear that she can provide specific, relevant information related to the changes that occurred at Coffee Creek between the time of the charged assaults and the present.

IX.    **Motion To Exclude Evidence and Argument Related to Prosecutorial Decisions About Local Charges Against Defendant and Results of Internal Investigations (Motion *in Limine* 15)**

The United States has moved to exclude evidence and argument related to the Washington County District Attorney's Office's (WCDA) decision not to prosecute the defendant, as well as the findings from the internal investigation that was conducted by the Oregon Department of Corrections.  The defendant asserts that both are relevant and admissible under Rules 401 and 403, and sets forth several theories of admissibility.

### A. The Decision Not To Prosecute and "Unsubstantiated" Allegations Do Not Exonerate the Defendant

The defendant claims that the WCDA decision and the internal investigations are relevant because they "clear [his] name." ECF No. 108 at 29. They do not. "A not-guilty verdict . . . does not establish that the defendant was, in fact, innocent of those charges." *United States v. Espinal*, 38 F. App'x 624, 626 (2d Cir. 2002). If a verdict after trial does not establish innocence, it follows that a prosecutor's decision not to prosecute similarly does not establish innocence. Instead, "all that the decision not to prosecute can accurately show is that the District Attorney was of the opinion that the case should not be prosecuted." *J.W. v. City of Oxnard*, 2008 WL 4810298 at \*22 (C.D. Cal. 2008). The decision of another attorney evaluating different evidence against different statutes has minimal probative value, which is substantially outweighed by the risk of confusing the issues or misleading the jury. Fed. R. Evid. 403. In addition, it constitutes improper opinion evidence. Fed. R. Evid. 702. It should be excluded.

Furthermore, contrary to the defendant's claim, the findings from the internal investigation that the allegations were "unsubstantiated" do not exonerate him or "clear [his] name" as he asserts. ECF No. 108 at 29. The internal investigation was conducted consistent with the PREA standards, which require that prisons investigate allegations of sexual assault and determine whether they are "substantiated," "unsubstantiated" or "unfounded." *See* Prison Rape Elimination Act National Standards—Prisons and Jail Standards, at 7, https://www.prearesourcecenter.org/implementation /prea-standards/prisons-and-jail-standards (provided in discovery to the defendant in March 2022). The word "unsubstantiated" in this context has a specific meaning, referring to an allegation that "was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred." *Id.* By contrast, "unfounded" refers to an allegation "that was investigated and determined not to have occurred." *Id.* That there was

**United States' Reply In Support of Its Omnibus Motion *in Limine***                    **Page 20**

insufficient evidence in a prior investigation does not bear on the quality or quantity of the evidence in the federal prosecution.  Instead, these findings are irrelevant, inadmissible, and lack probative value.  For the same reasons that a District Attorney's opinion of the evidence should be excluded, the conclusions of an internal investigator, evaluating evidence under the PREA investigation standards, should be excluded as irrelevant, misleading the jury, confusing the issues, and improper opinion testimony.  Fed. R. Evid. 401, 403, 702.

### B. The United States Does Not Intend To Reference the Passage of Time or Argue That Other Investigations Were Flawed

The defendant's argument about the passage of time[7] between the initial reports and the federal indictment does not change the above analysis that the prior investigations are irrelevant and inadmissible.  Furthermore, the United States does not intend to argue that that gap was "related to poor investigations done by ODOC."  ECF No. 108 at 27.  In fact, the United States does not intend to pass judgment on the quality of ODOC's investigation at all, nor does it intend to argue that CCCF "was so incompetent that it somehow missed that 27 women were sexually abused by the same nurse in the same short window of time."[8]  ECF No. 108 at 28.  As explained

---

[7] The United States has no intention of arguing that "it [took] five years to get this case to trial because CCCF was incompetent," ECF No. 108 at 29, or to reference the amount of time between the initial report and Indictment at all.  For either party to do so would be misleading.  The United States opened an investigation in 2019, but the COVID-19 pandemic delayed the investigation's progress.  The defendant was notified in June 2021 that he had potential criminal exposure for his conduct.  *See* ECF No. 46 at 1-2.  The parties entered into an agreement tolling the statute of limitations, first on August 14, 2021, and again on November 18, 2021.

[8] The Indictment identifies 12 victims.  The United States is seeking to offer evidence about 9 additional victims (AVs 13 through 21), as set forth in ECF No. 87, which the defendant has opposed.  Consequently, the defendant's reference to 27 women is confusing.  The United States believes that this number may come from public reporting.  *See* Conrad Wilson, "Not All Sexual Abuse Allegations Against Oregon Prison Nurse Made It to Local Prosecutors," Oregon Public Broadcasting, Feb. 23, 2023, *https://www.opb.org/article/2023/02/22/lost-sexual-abuse-allegations-against-prison-nurse-coffee-creek-womens-prison-oregon/*.

in its Motion *in Limine*, to the extent any prior investigation is referenced, it will be to explain that a witness made a prior statement or was previously interviewed by the Oregon State Police (OSP) or to ODOC investigators as part of "an investigation."  ECF No. 88 at 37-38.

The defendant claims that "the government also intends to offer evidence of the prior investigation into Mr. Klein by ODOC."  ECF No. 108 at 27.  It is not clear what he means by this. The United States does not anticipate eliciting testimony about the facts and circumstances of any prior investigation, as stated above.  The United States may, however, seek to offer into evidence statements, photographs, or recordings generated by the OSP or internal investigation.  To the extent the defendant is referring to these items, there is nothing prohibiting the admission of evidence simply because it was originally generated by a different law-enforcement agency or as part of a different investigation.

## X.    Motion To Exclude Evidence Aimed at Jury Nullification (Motion *in Limine* 16)

The United States has moved to exclude evidence and argument aimed at jury nullification and provided examples of what such evidence or argument might look like in this case.  ECF No. 88 at 38-42.  The defendant agrees that argument aimed at jury nullification is impermissible, but objects that evidence CCCF is a poorly run institution is relevant and unrelated to jury nullification. ECF No. 108 at 30-31.

The examples the defendant cites, taken individually, are not the type of evidence or argument the United States is seeking to exclude.  The United States agrees that staffing levels could be relevant to explain why there was or was not a witness to particular conduct.  *See* ECF No. 108 at 31.  The same is true of movement-tracking.  *Id.*  By its Motion, the United States

---

If the United States does not present evidence at trial about 27 women who reportedly accused the defendant (which the United States does not intend to do), the defendant should not be permitted to reference or argue facts that are not in evidence.

**United States' Reply In Support of Its Omnibus Motion *in Limine*** **Page 22**

moves only to exclude otherwise improper evidence or argument attempting to invite undue sympathy, including by effectively shifting blame from the defendant to the institution.

**XI.    Motion To Exclude Witnesses But Allow Case Agents (Motion *in Limine* 17)**

Based on the defendant's response to this Motion, it appears the parties are in agreement, and the issue is moot.

Dated:  June 2, 2023

Respectfully submitted,

NATALIE K. WIGHT                          KRISTEN CLARKE
United States Attorney                      ASSISTANT ATTORNEY GENERAL

*/s/ Gavin W. Bruce*_____                */s/  Cameron A. Bell*_____
GAVIN W. BRUCE                            CAMERON A. BELL
Assistant United States Attorney            Trial Attorney
                                            Civil Rights Division

**United States' Reply In Support of Its Omnibus Motion *in Limine***                    **Page 23**