Matthew G. McHenry, OSB 043571
Levine & McHenry LLC
1050 SW Sixth Avenue, Suite 1414
Portland, OR 97204
503-546-3927
email: matthew@levinemchenry.com

Amanda Alvarez Thibeault, OSB 132913
Alvarez Thibeault LLC
330 NE Lincoln Street, Suite 100
Hillsboro, OR 97124
503-640-0708
email: amanda@aatlegal.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>vs.<br><br>TONY DANIEL KLEIN,<br><br>　　　　Defendant. | No. 3:22-cr-00084-SI<br><br>**SUPPLEMENTAL BRIEFING IN RESPONSE TO GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE INTRINSIC EVIDENCE OR ALTERNATIVELY TO INTRODUCE OTHER ACTS EVIDENCE PURSUANT TO RULES 413 AND 404(B)** |

Comes now, the defendant, by and through counsel, and supplements his previous response to the Government's Notice of Intent to Introduce Evidence both under FRE 413 and 404(b).

## A. Both FRE 413 and 404(b) require the trial court make certain findings prior to admission of the evidence

As discussed in defendant's previous pleadings, before any of this evidence can be admitted, Federal Rule of Evidence 104(b) requires the Court to examine the evidence of uncharged acts "and decide [] whether the jury could reasonably find a conditional fact . . . by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988). *See also Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 152 (3d Cir. 2002) (applying reasoning from *Huddleston* finding a trial court considering evidence under FRE 413 must decide pursuant to FRE 104(b) whether a reasonable jury could find by a preponderance of the evidence that the defendant committed the prior act).

## B. The Government's pleadings, in this case, are not sufficient for the court to make the determinations necessary without a 104 hearing

Although the defense generally agrees that it is possible for the court to make a determination regarding the admission of evidence under 404(b) and 413 based on matters other than witness testimony at a 104 hearing[1], in this case, the Government's summations are not sufficient.

First, the sum total of the Government's evidence supporting its 404(b) and 413 notice is a summary of the facts as they expect them to come out in trial. That

---

[1] *See e.g., United States v. Hinton*, 31 F.3d 817, 823 (9th Cir. 1994).

2 –SUPPLEMENTAL BRIEFING ON GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE OTHER ACTS EVIDENCE

summary of the facts did not include declarations or any reports attached to it, but merely a cherry-picked summation of the acts from the Government's perspective. It was self-serving and self-selected preview of what evidence the Government hopes will happen at trial, without any attachments indicating that is what will actually happen.

Although preponderance of the evidence standard for admission of other acts evidence *can* be based on evidence other than live witness testimony in a 104 hearing context, where the Ninth Circuit of approved of that procedure the most is where the prospective witness testimony is actually corroborated. *See e.g., United States v. Abrams,* 761 Fed. Appx. 670, 675-676 (9th Cir. 2018) (stating that the "threshold preponderancy requirement for the admission of prior-bad-acts evidence can be based on evidence proffered by the government other than live witness testimony, . . . especially where, as here, the prospective witness testimony is corroborated.").

Here, the carefully selected summary the government provided to the court is not sufficient to meet the preponderance standard. There is no corroborating evidence of any of the AV's or other act witness's claims. To the contrary, many of the claims made by the witnesses are contradicted by their own medical records and lists of visits. *See e.g.,* ECF 137 p. 4 (describing a situation where claims were not corroborated by medical records). Generally, the Government's position

3 –SUPPLEMENTAL BRIEFING ON GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE OTHER ACTS EVIDENCE

regarding the swath of abuse and what is known about CCCF (from facility visits and the interviews with staff) is incredulous. CCCF is the only prison for female inmates in the state of Oregon. Multiple nurses and other prison staff were interviewed by the Government. None of them reported ever witnessing anything that lead them to report concerns about Mr. Klein sexually assaulting inmates. The physical spaces inside the prison are also illustrative (and will be displayed to the jury at trial).

      The places where the AV's said these assaults occurred are in very close contact to other staff and nurses, as well as AICs. Moreover, the locations are replete with mirrors, windows, and security cameras. Nonetheless, the Government's theory is that dozens of employees of the only female prison in Oregon, all of whom who are repeatedly trained in PREA guidelines, were somehow completely blind to the years long abuse of over a dozen inmates despite being exceptionally physically close during the time periods the assault took place and despite the fact that, being a prison, it is one of the most secure and supervised facilities that exist. The physical facility, the interviews with staff, and the lack of corroborating evidence of the accusations all contradict the strategically drafted summaries the Government has offered.

In addition to the absolute lack of corroborating evidence[2], every single one of the AV's and other act witnesses have enormous credibility issues that would cause a reasonable person[3] to doubt their statements. Most of the AV's and other act witness achieved a large financial gain due to their claims against Mr. Klein. Beyond their financial motives, the criminal history and active criminal behavior of most of the AV's lend themselves to significant credibility concerns. Beyond the charges that led them to CCCF at the time these allegations supposedly took place are the criminal activities and biased behavior they continue to engage in. A summary of just a few highlights of the credibility concerns with the Government's witnesses are listed below.

- Based on discovery received by defense, it appears one charged victim has been dealing in fentanyl and firearms since she made accusations against Mr. Klein

- AV2 has also been arrested based on allegations of drug possession/trafficking as well as the possession of illegal firearms. She told the FBI that she was going to have trouble remembering what happened to her if they did not get her out of jail.

---

[2] Other than the statements of other AV's
[3] Like the Washington County District Attorney's office, who declined to prosecute the accusations against Mr. Klein

5 –SUPPLEMENTAL BRIEFING ON GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE OTHER ACTS EVIDENCE

- AV3 has a prior manslaughter conviction. She was also self-admittedly part of the "Sisters of Skin" a prison gang that spawned out of white supremacy. She was in the white supremacist prison gang with other complaining witnesses and other act witnesses. AV3 repeatedly asked for "restitution" when she filed her grievances against Mr. Klein, the first one being in 2018, three years after the contact allegedly began.

- AV4 repeatedly denied being sexually assaulted by Mr. Klein to OSP and her attorney in the early stages of the investigation. As more complainants (and civil suits) began to start, she then changed her mind and reported that she had been assaulted. Despite eventually making broad sweeping claims of sexual abuse against Mr. Klein, the Government chose not to put most of those claims in the indictment. AV4 is friendly with another charged victim in the case, the one who has apparently been dealing in fentanyl and firearms. Her settlement total was approximately $290,000.

- AV5 did not report any of her claims until approximately 18 months after they were said to have occurred. She tried to obtain representation by attorney Michelle Burrows, who declined to represent her (despite representing several others in this case).

6 –SUPPLEMENTAL BRIEFING ON GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE OTHER ACTS EVIDENCE

Recently, AV5 complained to law enforcement that she was not going to get any money for her participation in this case, and showed up at AV8's house (according to AV8) "loaded" and proclaiming if she did not come to court she would be arrested.

- AV6 claimed that Mr. Klein sexual assaulted her during a cardiac incident. She was insistent to law enforcement he did not treat her appropriately during the event and that he only used the event as a reason to sexually abuse her. She repeatedly claimed to law enforcement that he never transmitted the health data from her cardiac pacemaker to the hospital. Records show that was not true. Mr. Klein did transmit the data appropriately, despite AV6 claiming that did not happen, and records from OHSU prove that. AV6 knew of the other claimants in the case, including AV3, who was her cell mate. AV6 asked for $6 million dollars when she filed her lawsuit against Mr. Klein.

- Since being released from custody, AV8 was arrested on two new criminal cases, including one related to financial crimes. She told law enforcement she was charged because of her reports against Mr. Klein and asked the FBI to "look into" the situation.

- AV13 was also friendly with AV3 and part of the same white

7 –SUPPLEMENTAL BRIEFING ON GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE OTHER ACTS EVIDENCE

supremacist prison organization.

- AV15 has been investigated for new state crimes, including involving new controlled substance offenses.

- AV17 is in warrant status on a new theft case.

- AV18 has two new criminal cases, including a failure to appear.

Given the witnesses' credibility issues, the Government's summation based entirely on carefully selected sections of those witnesses' statements, is not sufficient for this court to admit the acts without a 104 hearing. Those credibility issues should be tested through cross examination outside the presence of a jury. Relying on the Government's summation, which did not include or highlight any of the credibility issues of the witnesses, is not sufficient for this court to accurately weigh whether or not the standard for the admission of other acts can be met.

### C. A 104 hearing on the admissibility of the evidence is the most appropriate manner to move forward given the high possibility of likely inadmissible evidence reaching the jury and causing a mistrial

A 104 hearing on the admissibility of the evidence is also the most strategically appropriate manner for this court to avoid the real and palpable chance of a mistrial. The Government is taking two inconsistent positions with this court. Many of the Government's witnesses are unreachable. Many of them are in

warrant status and many of them are actively dodging subpoenas and have yet to be subpoenaed. The Government has told this court in previous pleadings that it does not have a *Brady* obligation to provide certain pieces of evidence precisely because it has not had direct contact with many of their witnesses, most notably the ones in warrant status.

Despite those admissions, the Government is still asking this court to admit these other acts (and, if admitted, will presumably display them to the jury during opening and mention them throughout trial) even though the Government does not actually know if its witnesses will appear. Given the fact that the Government has already told this court that it has not had contact with many of its witnesses, this court should require a 104 hearing regarding the acts the Government is seeking to admit. Should the acts be admitted (and displayed to the jury) and a witness later does not show up to court (as the defense expects) or denies the acts against Mr. Klein when faced with a thorough cross-examination (also expected), Mr. Klein's case will be unduly prejudiced, with the only remedy being a mistrial.

The Government cannot simultaneously tell this court that it has not had contact with some of its witnesses (and use that as a way to avoid their obvious *Brady* failures) while simultaneously affirm to this court that they are ready to proceed with all of their witness. Both cannot be true.

Given the Government's irreconcilable positions, the safest most prudent measure to eliminate the risk of a mistrial is a 104 hearing.

Respectfully Submitted this 14th day of June, 2023:


/s/ *Matthew G. McHenry*  
Matthew G. McHenry  
Counsel for Tony Klein

/s/ *Amanda Alvarez Thibeault*  
Amanda Alvarez Thibeault  
Counsel for Tony Klein