NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:  (541) 465-6771
**CAMERON A. BELL, CSB #305872**
Trial Attorney—Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Cameron.Bell@usdoj.gov
Telephone:  (202) 802-7643
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            v.<br><br>TONY DANIEL KLEIN,<br>                                    Defendant. | Case No. 3:22-cr-00084-SI<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE**<br>**[ECF NO. 136]** |

The United States hereby opposes the defendant's motion to continue the trial for an unspecified period of time.  The defendant's stated reasons for a continuance are the "last-minute cascade of discovery coming from the government and the ongoing and ever-shifting investigation leads the late discovery produces," ECF No. 136 at 9, and the United States' alleged failures to provide *Brady* information—even though in nearly every instance, the information that the defendant seeks is not in the United States' possession, custody, or control.  *See* ECF Nos. 136, 137.  Contrary to the defendant's assertions, the United States is complying with its discovery

**United States' Opposition to Defendant's Motion To Continue**                                                                 Page 1

obligations. Furthermore, the United States has not provided voluminous late discovery; it has provided discoverable materials in a timely fashion as it learns of and receives them. For the reasons set forth below, this Court should deny the defendant's motion.

## I. Factual Background and Discovery Update

The Court is familiar with the posture of discovery in this case prior to March 2023, when this Court previously denied the defendant's motion for a continuance. *See, e.g.*, ECF No. 46 at 1-5 (detailing procedural posture, timing, and contents of Volumes 1 through 4 of the United States discovery, as well as pre-indictment discovery provided to defense counsel); ECF No. 48 (describing defense counsel's technological challenges with accessing Volume 1 of discovery and the United States' efforts to quickly remedy the issue). Given the defendant's assertions that the United States is producing a "cascade" of late discovery and committing *Brady* violations, *see* ECF No. 136 at 9, the United States provides the following update about discovery produced since March 2023.

Since providing Volume 4 of discovery on March 7, 2023, the United States has provided five additional volumes of discovery that contain new information obtained as the United States prepares for trial and meets with witnesses in preparation of the July 10 trial date.

- Volume 5 of discovery, provided on March 29, 2023, was mostly composed of updated criminal histories; as the United States noted in its cover letter to defense counsel, "we have previously provided much of this same information in earlier discovery. This volume of discovery contains the documents that resulted from our most recent search." Although Volume 5 totaled 902 pages, most of those pages were criminal history records, and many pages had already been disclosed. Excluding criminal history information, Volume 5 contained just 29 pages of interview summaries or new records.

**United States' Opposition to Defendant's Motion To Continue**                                                                                          Page 2

- Volume 6 of discovery, provided on May 1, 2023, contained 433 pages, most of which are publicly available documents. In its cover letter for that volume, the United States explained, "the vast majority of the materials contained in this discovery are publicly filed documents from either civil litigation to which the defendant was a party or potential witnesses' prior criminal cases. We have located these publicly available records and are providing them here as a courtesy." The referenced documents from prior criminal cases were publicly filed conviction and judgment documents, which the United States obtained to create the chart of impeachable convictions, *see* ECF No. 88-1. Volume 6 also contained interview summaries of two new witnesses, as well as summaries of follow-up interviews with previously interviewed witnesses (for which the prior reports had already been disclosed to defense counsel), and a letter from AV2, which was received on April 21, 2023.

- Volume 7 of discovery, provided on May 12, 2023 (a filing deadline), contained a mere 19 pages. Seven pages were certifications pursuant to Rule 902(11) of the Federal Rules of Evidence. The other pages documented subpoena service (and statements made by witnesses during the subpoena service), attempts to locate witnesses (including information provided by witnesses' family members), and text messages with witnesses.

- Volume 8 of discovery, provided on June 6, 2023, contained just 32 pages. It documented activity since the last round of discovery had been processed; here, subpoena service (and statements made by witnesses during the service), information provided by witnesses or their family members, and text messages between FBI agents and witnesses.

**United States' Opposition to Defendant's Motion To Continue**                                                         **Page 3**

- Volume 9 of discovery, provided on June 9, 2023, was provided within 24 hours of the relevant protective order being entered in this case (ECF No. 129), and contained just 22 pages of discovery.

The United States has strived to be as cooperative with defense counsel as possible, while firmly opposing any request for a continuance of the trial date, as the United States indicated it would when the July 2023 date was set. For example, each time the defense has requested an extension of briefing deadlines, the United States has not opposed. *See, e.g.*, ECF No. 73 (extending deadline for motions and trial documents by nine days); ECF No. 109 (extending deadline for reply briefs by one week); ECF No. 133 (extending deadline for supplemental briefing by two days). Additionally, the United States did not object to the defendant's request for leave to file additional motions, as warranted, in the event that the defense learned new material. *See* ECF No. 102 at 18.[1]

## II.   The United States Has Not Committed *Brady* Violations

The defendant has incorrectly alleged that the United States is committing "flagrant" *Brady* violations—he has repeated this legally and factually unsupported claim so frequently that this important constitutional obligation is relegated to little more than a buzzword. Moreover, he claims the United States is allegedly withholding information about particular witnesses. Neither is true. As described in other filings and below, the defendant's claims of *Brady* violations are at odds with the law. *See, e.g.*, ECF Nos. 104, 128. Furthermore, the United States is not withholding information; the prosecution team has provided the discoverable information that it currently has

---

[1] Given the United States' position on the defendant's filing of motions after the original deadlines, *see* ECF No. 102 at 18 n.9, it is confusing why the defendant would accuse the United States of acting with a nefarious purpose with the timing of its additional productions of discovery on or near filing deadlines. *See* ECF No. 137 at ¶ 15.

**United States' Opposition to Defendant's Motion To Continue**                                                    **Page 4**

in its possession, custody, or control, and has conducted diligent searches to comply with its obligations. Lastly, the information the defendant now claims is necessary to his defense is largely inadmissible or unhelpful.

As the United States has previously explained at length, it has complied with its discovery obligations. *See, e.g.*, ECF No. 104 (describing scope of United States' discovery obligations and how it is complying); ECF No. 128 (same). Courts in this circuit have made clear that the United States does not have a duty to provide materials that are not under its control, *see, e.g.*, *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) ("the prosecution is under no obligation to turn over materials not under its control"), nor does it have a duty to "learn of or search for information in the possession of agencies that are not at all involved in the government's investigation or prosecution." *United States v. Rodriguez*, 360 F. App'x 743, 747 (9th Cir. 2009).

With that legal framework in mind, it is clear that the defendant's claims of *Brady* are unsupported by the law and the facts.

### A. The United States Has No Obligation To Obtain Police Reports That Are Not In Its Possession, Custody or Control

The defendant claims that he is entitled to documents related to several victims. Specifically, he claims that he is entitled to underlying police reports for AVs 1, 2, 10, 11, 12,[2] 15, 17, and 18. None of these documents are in the United States' possession, custody, or control or created by agencies acting on the United States' behalf in this case, and it therefore has no obligation to obtain and provide those documents.

As it relates to AVs 10, 11, 12, 15, 17, and 18, the defendant claims the United States is not meeting its *Brady* obligations because the United States has not provided the police reports

---

[2] The United States previously represented to this Court that it had not had contact with AV12. ECF No. 104 at 3. AV12 is currently in custody in Nevada. On June 9, 2023, members of the prosecution team met virtually with AV12, in preparation for trial.

**United States' Opposition to Defendant's Motion To Continue**　　　　　　　　　　**Page 5**

related to these witnesses' pending state charges. As described in numerous other filings, *see, e.g.*, ECF No. 104, the United States does not have an obligation to affirmatively obtain and then disclose information that is under the control of state officials. *See Amado v. Gonzalez*, 758 F.3d 1119, 1137 (9th Cir. 2014) (noting that Ninth Circuit caselaw "stands for the proposition that the federal government's *Brady* obligation does not extend to 'files that were under the exclusive control of [state] officials'").

The United States does have some information about the matters, raised by the defendant, that are related to AVs 1 and 2. It has disclosed the relevant information that is in its possession, custody, and control. With respect to AV1, the defendant claims that because AV1 had pending cases in 2017 and 2018, he is entitled to the underlying police reports about those cases. *See* ECF No. 137 at ¶ 12. As far as the United States is aware, these are not federal cases but state cases; the underlying reports are therefore not in the possession, custody, or control of the United States. The United States has disclosed AV1's criminal history, which identifies any arrests and convictions. The United States has obtained certified judgments and other information from the criminal case docket, and disclosed that information to the defense. Those disclosures include convictions from cases in 2018. *See* ECF No. 88-1. It is not clear why the defendant would need underlying police reports, when the specific facts underlying the convictions are not admissible. *See* Fed. R. Evid. 609; *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) ("Absent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction.").

With respect to AV2, the defendant points out that she was arrested on new charges and that the United States has known about these charges for months. So has the defendant. The United States provided to information about these charges in Volume 4 of its discovery, on March

7, 2023. The United States then obtained court paperwork, charging documents, and an affidavit, in April 2023, which were provided in discovery in May 2023. The records show that a search warrant was executed in February 2023 by a task force that included federal law enforcement officers with agencies other than the FBI—the only agency involved in the present case against Mr. Klein.[3] The United States has recently confirmed with state law enforcement that none of the federal task force officers involved in the execution of that search warrant generated rreports. Moreover, the underlying police paperwork is not admissible. At most, the defendant can ask AV2 whether she has pending charges and whether she expects to receive a benefit by testifying. *See, e.g.*, *Hughes v. Raines*, 641 F.2d 790, 792 (9th Cir. 1981) ("the right to confront witnesses . . . includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying"). As the defendant has noted, AV2 has pending charges and she has requested such a benefit from the United States—a fact that the United States shared with the defendant within ten days of receiving AV2's request. The United States does not have additional information to provide and it has no obligation to obtain additional information under these circumstances.

### B. The United States Has No Obligation To Obtain and Provide Information From a Private Website

The defendant's argument about activity on a prison pen-pal website, specifically involving AV7 but potentially a "large swath" of witnesses, *see* ECF No. 137 at ¶ 16, is a confusing *non sequitur*. First, the "Paper Dolls" website is not affiliated with the United States government. Information contained on that website is not within the United States' possession, custody, or

---

[3] For defense counsel's convenience, the United States is referring to US00096883-US00096899. To the extent this is the incident defense counsel claims the United States has provided no information about, ECF No. 137 at ¶ 14, and for which the defendant has apparently subpoenaed records, he is mistaken. But the United States is unaware of what the defendant has subpoenaed and therefore cannot confirm whether these records are the same.

**United States' Opposition to Defendant's Motion To Continue**  Page 7

control, and the United States has no obligation to obtain and then disclose it. *See United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) ("the prosecution is under no obligation to turn over materials not under its control"). The defendant has apparently subpoenaed information from the website and obtained it. That is entirely irrelevant to the United States' discovery obligations. To the extent the defendant intends to present evidence or argument about AV7's "provocative photos," ECF No. 137 at ¶ 16, he is precluded from doing so by Rule 412 of the Federal Rules of Evidence. The defendant can make his point about AV7's activity on the Paper Dolls website without alluding to "provocative" photos, which are irrelevant, inadmissible, and unduly prejudicial.

### C. The Defendant's Complaints About AV5 and AV8 Demonstrate the United States Is Complying with Its Discovery Obligations

The defendant references communications with and statements by AVs 5 and 8. *See* ECF No. 137 at ¶¶ 15, 17. In both instances, the disclosures demonstrate that the United States is complying with its discovery obligations rather than ignoring them. Less than two weeks after meeting with AV8 and learning the information described about AV5, the United States disclosed the information to the defense. Although the defendant refers to the May 12 discovery as "delayed discovery," he fails to mention that the described interaction occurred on May 1, 2023, just 11 days earlier. Though AV8 asked the FBI to "look into" her state cases, the United States has no obligation to do so, and the FBI agents who spoke with AV8 told her that they could not look into the matter or help her with her state cases at all—a fact that was also disclosed to the defendant in that same report.

### III. The United States Is Complying With Its Discovery Obligations and a Continuance Is Not Necessary

The defendant's request for a continuance rests on the United States' alleged failure to comply with its discovery obligations and a mischaracterization of the volume and nature of the recent discovery. The United States provided the majority of documents related to witnesses' criminal history many months ago, and the defense has known the identities of most of his accusers—charged and uncharged—since before he was indicted. *See* ECF No. 46 at 2. He has had ample time—in some cases, nearly two years—to review and investigate that underlying criminal history information or other potential impeachment information related to his accusers. Moreover, the newly provided information is just that—new. Consequently, even if a continuance is granted, these witnesses may well have additional encounters with law enforcement or acquire new charges between now and any potential future trial date, thereby re-creating the very issue the defendant now complains about.

District courts balance five factors when deciding whether to grant a continuance of a trial date. These factors are: (1) whether the continuance would inconvenience the witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the defendant. *United States v. Fowlie*, 24 F.3d 1059, 1069 (9th Cir. 1994); *see also United States v. Morel-Piñeda*, 829 F. App'x 187, 190 (9th Cir. 2020) (prejudice is "the most important" factor).

#### A. Inconvenience to the Witnesses, the Court, Counsel, and the Parties

At this juncture, one month before trial, a continuance will cause significant inconvenience to the witnesses, the Court, counsel, and the parties. The defendant's bold statements that the prosecution's witnesses are not available for trial and that a continuance "could only benefit the

government" are incorrect. ECF NO. 136 at 5. With one exception, all of the charged victims are available for trial; the United States is working diligently to locate AV11 and serve her with a subpoena. AVs 2 and 3 have both been transferred to federal custody and already transported to Oregon from Alaska and Florida, respectively. Other than AV11, all of the charged victims are either in custody or under subpoena. Changing the trial date will make securing their appearance more difficult. The idea that it is "plain" from discovery that many of the women, who have been served with a court order to appear on July 10, are not available for trial, is simply untrue. It is hardly unusual that some of the victims in a case of this nature may be reluctant to testify in a public setting about how the defendant sexually assaulted them. There is no reason to think that the additional passage of time will cause any victim to become more enthusiastic about testifying not only about her assault but about the crimes that led her to be incarcerated in the first place, and any other past misconduct that may be admissible. To the contrary, the longer this trial hangs over the victims' heads and they are forced to disrupt their lives to remain prepared and available to testify, the less willing they are likely to become.

In addition to inconveniencing the victims, a continuance will result in inconvenience to other witnesses, the Court, counsel and the parties. The United States has subpoenaed dozens of witnesses and has begun making travel arrangements for many of them. Many witnesses live outside of the state of Oregon; the United States' expert, Robert Dumond, lives in New Hampshire. Furthermore, the Court and the public will be inconvenienced by a continuance. This three-week trial has been on the Court's calendar for more than a year. On June 6, 2023, the Court mailed hundreds of summonses and questionnaires to potential jurors. Finally, though it is the least important consideration, counsel for the United States have additional trials scheduled for later

this summer and fall, which makes it difficult to find another three-week period in 2023 when this case can be tried. On balance, this factor weighs in favor of denying the defendant's motion.

### B. Whether Other Continuances Have Been Granted

As this Court previously noted when it denied the defendant's last motion to continue, the Court asked counsel for the defendant more than one year ago, on May 17, 2022, how much time realistically would be needed to prepare for trial. *See* ECF No. 51. Defense counsel confirmed that an additional period of about 14 months would be adequate. This Court set the current trial date, for July 10, 2023, reflecting that consideration.

This Court previously denied the defendant's request for a continuance. *Id.* Little has changed since his last request for a continuance was denied. Despite the defendant's repeated claims of *Brady* violations about numerous witnesses, the prosecution team has continued to produce discoverable information as it learns of it. This factor weighs in favor of denying the defendant's motion.

### C. Whether Legitimate Reasons Exist for the Delay

Contrary to the defendant's assertion, the United States is not withholding evidence; the United States is providing information—including potentially exculpatory or impeaching information—in a timely fashion as it learns of it. As detailed in its supplemental filing, the prosecution team learned new information about a particular witness, *see generally* ECF No. 127, and promptly disclosed it within a week. As it relates to the other witnesses, the United States has provided additional volumes of discovery because it has learned new information from witnesses or received additional documents.

With approximately one month until trial, the defendant and his counsel can still review and use the information provided in the most recent volumes of discovery—especially since the

United States has disclosed fewer than 100 pages in the last month. Indeed, even in situations where potentially exculpatory or impeaching material is disclosed *during* trial, courts have held that no *Brady* violation has occurred. *See United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985) (no *Brady* violation where defendant "had access to the exculpatory information from the beginning of trial and made use of it in cross-examining a witness"); *see also United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (mid-trial disclosure of documents, which the defendants then introduced as defense exhibits, "demonstrate that defendants had substantial opportunity to use the documents and to cure any prejudice caused by the delayed disclosure"). The United States' disclosures have occurred before the beginning of the trial, defense counsel still has a month to conduct any investigation they believe necessary, and the defendant can use the information in cross-examination without obtaining the underlying documents or conducting significant additional investigation.[4]

Notably, there is no reason to think that continuing the trial date will halt the creation or discovery of new material, especially impeachment material, about potential witnesses. The defendant claims he is entitled to underlying police reports about pending state charges. While the United States disagrees, there is no guarantee that witnesses will not have new pending charges, be the subject of a new investigation, or have generated other impeachment material in the months leading up to a future trial date.[5] In other words, the very thing the defendant now complains of

---

[4] As noted below, *see* III.E., the defendant's own motions and responses show that his counsel has conducted investigation and has obtained many of the underlying documents they accuse the United States of suppressing.

[5] The case of AV10 demonstrates this obvious point: as the defendant's own investigation has apparently revealed, *see* ECF No. 120 at 3-4, AV10 was indicted on new charges on April 27, 2023—almost a week after initial motions in this case were due.

**United States' Opposition to Defendant's Motion To Continue**     **Page 12**

may well occur again, even if a continuance is granted, thereby altogether frustrating the rationale behind the initial continuance. This factor, too, weighs in favor of denying a continuance.

### D. Whether the Delay Is the Defendant's Fault

The defendant's attempt to blame the United States for this continuance is misplaced. As experienced trial attorneys know, the parties often learn new or additional information as they prepare for trial. Indeed, the United States has learned new information as trial approaches, and it has provided that information to the defendant. Contrary to the defendant's claim, the defense has not been doing the United States' job for it. The United States has provided the defendant with the material that it is required to provide, including sensitive information about a particular witness that the prosecution team provided within a week of learning about it, discussed in the United States' sealed supplement to this Opposition. At most, this factor is neutral.

### E. Whether a Denial Would Prejudice the Defendant

The defendant makes a number of arguments about how he will be prejudiced if a continuance is not granted, but each of his arguments is unsupported by either the Federal Rules of Evidence or common sense.

First, the materials that the defendant claims he needs to obtain and the investigation that he claims he needs to conduct are unrelated to admissible evidence and not reasonably likely to produce admissible evidence. As noted above, the United States has no obligation to provide police reports related exclusively to state charges and state agencies who are not working on the United States' behalf in this case. But, as the defense notes, even if the United States provided these reports, they would not be "usable" at trial. *See* ECF No. 137 at ¶ 35. That is because the reports are not admissible. *See* Fed. R. Evid. 608(b) ("extrinsic evidence is not admissible to prove

specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness").

Similarly, the defense claims it needs to investigate and interview witnesses related to the police reports for witnesses' pending charges. This, too, does not make sense; as the United States has repeatedly indicated, pending charges may be admissible as specific acts related to character for untruthfulness, *see* Fed. R. Evid. 608(b), or as impeachment related to the witness's bias or self-interest. But the defendant already has the information he needs, without further investigation, to impeach on either basis—he has information about what the pending charges are. If the pending charges are probative of truthfulness, he may ask about them but may not offer extrinsic evidence. Fed. R. Evid. 608(b). If the pending charges are probative of self-interest or bias, the defendant may ask about them and may only offer extrinsic evidence to rebut the witness's "denial of the facts constituting bias or interest." *United States v. Frankenthal*, 582 F.2d 1102, 1106 (7th Cir. 1978); *see also United States v. Noti*, 731 F.2d 610, 613 (9th Cir. 1984) (when impeaching a witness through bias or self-interest, "the adverse party . . . may offer extrinsic evidence to *rebut*" the witness's testimony) (emphasis added). In other words, extrinsic evidence about pending charges only becomes relevant if the witness denies that she has pending charges.[6] But even under this line of questioning about bias or self-interest, extrinsic witnesses or documents related to the underlying conduct would not be relevant or necessary, because the bias to be probed stems not from the underlying conduct but rather from the *existence* of the pending charges and the witness's understanding (or belief) about what the government can do for them. It is therefore not clear what could be accomplished by the additional investigation the defendant claims he needs.

---

[6] In the unlikely event that a witness denies, contrary to the evidence, that she has pending charges, the United States will consider stipulating that the charges exist, assuming the information is current and verified.

**United States' Opposition to Defendant's Motion To Continue**                                               **Page 14**

Next, the defendant claims that the United States' ongoing production of discovery has prevented his counsel from forming a witness list or subpoenaing witnesses. The United States provided its witness list in March 2023. ECF No. 54. Since then, most of the material that the United States has provided in discovery consists of supplemental statements related to known witnesses and impeachment material related to the witnesses that the United States may call at trial. That impeachment material may be based on a witness's pending charges, reluctance to testify, or other information tied to character for truthfulness. Whatever the basis, that information does not preclude the defense from creating a list of potential witnesses, particularly when much of the impeachment information the United States has provided is related to collateral matters and could not be proved by extrinsic evidence.

Notably, as this Court previously observed, the defendant's last basis for a continuance relied on "the hope that perhaps some useful evidence might turn up." ECF No. 51, at 6. His present request is a thinly veiled attempt at something similar; the defendant is hoping that, with more time, the victims will pick up subsequent criminal charges or convictions, giving him additional fodder for impeachment. At the same time, the defendant now has the additional, inconsistent complaint that the United States is providing too much discovery, but not the "right" discovery, because it is not the material defendant contends he is entitled to, regardless of whether the United States has it. (As noted above, the United States has not produced nearly as many documents as the defendant's filing purports to suggest.) Based on these varying positions, there is no reason to think that, if a continuance is granted, the defendant will not make another request, claiming he has too much or too little evidence to be effective.

Contrary to defense counsel's claim, the defendant's attorneys are hardly "a warm body with documents in hand." ECF No. 136 at 8. They are two experienced criminal defense attorneys,

*see* ECF No. 137 at ¶¶ 2-3.  In particular, Mr. McHenry has represented the defendant for nearly two years, during which time he has had access to approximately 3,400 pages of pre-indictment discovery and then full discovery, provided shortly after Indictment.  *See* ECF No. 46 at 2.  More importantly, the defendant's own motions and filings, as well as his counsel's declarations, demonstrate that the defense has been actively investigating and obtaining material for his defense, including material for cross-examination and impeachment.  *See, e.g.*, ECF No. 120 at 3 (defense has subpoenaed and obtained reports related to AV15's "pending allegations," in response to materials disclosed on May 12, 2023); ECF No. 137 at ¶ 14 (defense has subpoenaed and obtained police reports related to AV2); *id*. at ¶ 16 (discussing defense subpoena to "Paper Dolls" website which shows "a large swath of the named AVs in this case" posted on the site); *id.* at ¶ 26 (discussing "thousands of pages" received from the Oregon Department of Corrections); ECF 120 at 3-4 (defense has subpoenaed and obtained reports and discovery related to AV10's pending state custodial-interference case).  These investigative steps clearly show that the defense has not been a "warm body" receiving documents; defense counsel has been utilizing the discovery provided by the United States and conducting its own investigation.

In conclusion, the defendant's jumble of arguments about whether he will be prejudiced each fall short.  This final factor weighs in favor of denying the defendant's motion to continue.

## CONCLUSION

In sum, little has changed since the defendant's last request for a continuance, which this Court denied.  The materials the defendant now claims he needs are of speculative value and inadmissible,  and there is no reason to think that a continuance will enable the defendant to acquire all of the underlying police reports that may exist—or could, in the future, exist—about numerous witnesses who have continuing contacts with law enforcement.  That is, even if a continuance is

granted, new information may emerge in the months before the new date, and the defendant may ask for a continuance again—indefinitely. For the foregoing reasons, the defendant's motion should be denied.

Dated: June 15, 2023

Respectfully submitted,

| | |
|---|---|
| NATALIE K. WIGHT<br>United States Attorney | KRISTEN CLARKE<br>Assistant Attorney General |
| */s/ Gavin W. Bruce*<br>GAVIN W. BRUCE<br>Assistant United States Attorney | */s/ Cameron A. Bell*<br>CAMERON A. BELL<br>Trial Attorney<br>Civil Rights Division |