**MATTHEW G. McHENRY, OSB# 043571**
Levine & McHenry LLC
1050 SW 6th Ave Ste 1414
Portland OR  97204
(503)-546-3927
E-Mail: matthew@levinemchenry.com

**AMANDA A. THIBEAULT, OSB #132913**
Alvarez Thibeault, LLC
330 NE Lincoln Street, Suite 100
Hillsboro, Oregon 97124
(503) 640-0708
E-mail: amanda@aatlegal.com

Attorneys for Defendant Tony Daniel Klein

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>        Plaintiff,<br><br>    vs.<br><br>**TONY DANIEL KLEIN,**<br><br>        Defendant. | No. 3:22-cr-00084-SI-1<br><br>**MOTION TO EMPANEL A NEW JURY BEFORE TRIAL AND REQUEST FOR CURATIVE INSTRUCTION** |

Tony Daniel Klein, through counsel, moves this Honorable Court to empanel a new jury before trial from an untainted jury pool. Although Mr. Klein contends that a that the only remedy is a new jury pool, defense counsel also moves for a curative instruction regarding the government's last-minute dismissal of multiple counts in the indictment, for the Court to consider should the Court decline to empanel a new jury. Counsel for Mr.

**1 – DEFENDANT'S MOTION TO EMPANEL A NEW JURY**

Klein has conferred with counsel for the government, which opposes both this motion for a new jury pool and Mr. Klein's proposed curative instruction.

## BACKGROUND

The government's proposed jury questionnaire included the following language:

> The Government has charged defendant Tony Klein in a 25-count indictment. The indictment charges him with 21 counts of violating 18 U.S.C. § 242, alleging that he sexually assaulted 12 female inmates at Coffee Creek Correctional Facility (CCCF) while employed as a corrections nurse. The indictment also charges him with four counts of violating 18 U.S.C. § 1623 for falsely denying that he ever engaged in various sexual conduct with any incarcerated woman while employed by CCCF.

ECF 75. Mr. Klein objected to this language, as disclosing to the jury pool the number of alleged victims would create a substantial likelihood of material prejudice, improperly suggesting to the jury pool that Mr. Klein must be guilty of at least some the counts listed in the indictment because of the sheer number of allegations against him. Mr. Klein also objected to that language because the AVs had inherent reliability issues, including open warrants for their arrest and a variety of pending criminal charges. Mr. Klein did not want the number of accusers or accusations to be identified in the jury questionnaire, given the significant probability those numbers would decrease prior to trial. *See* ECF 77.

At the June 30 pretrial conference, defense counsel's concern materialized when the government belatedly revealed that it would dismiss all charges in the indictment related to AV12. Moreover, the government conceded at the June 30 conference that it is still unable to confirm that another alleged victim, AV11, will be available for trial, as

she is still in warrant status on a pending Washington County Circuit Court case (as she has been for months).

The government also conceded to the Court that they are aware that many of the alleged victims AVs are actively experiencing serious addiction issues. Although vague, a reasonable reading of the government's nebulous statement is that the government is concerned about the possibility that some alleged victims might present as under the influence of intoxicants when called to testify at trial. The Court discussed this at the Pretrial Conference and asked the government to consider the likely motion for mistrial Mr. Klein would make under such circumstances.

Given these circumstances, as well as other *Brady* information discussed *infra*, Mr. Klein anticipates that the government will dismiss more charges as to additional alleged victims before trial, or be unable to provide witness testimony from additional alleged victims during trial.

## ARGUMENT

The Jury Questionnaire's incorrect assertion that Mr. Klein "sexually assaulted 12 female inmates" tainted the jury pool, improperly priming potential jurors with the belief that Mr. Klein must be guilty of *at least some* of the counts listed in the indictment because of the sheer number of allegations against him. As this Court recently explained in a related context, "[t]he Ninth Circuit has found prejudice in cases in which "'the jury may consider that the defendant must be bad' because of the number of crimes alleged against him." *United States v. Jesenik*, 2022 WL 11815826, at *7 (D. Or. Oct. 20, 2022) (quoting *United States v. Rothenberg*, 2021 WL 6807580, at *4 (N.D. Cal. Oct. 25,

2021)); *See also United States v. Ragghianti*, 527 F.2d 586, 587 (9th Cir. 1975) (noting that prejudice may arise where the jury is led to "consider that the defendant must be bad to have been **charged** with so many things") (emphasis added). As this Court explained in *Jesenik* in denying the motion for severance under F. R. Crim. P. 14, while prejudice may arise where the jury is improperly led to believe the defendant is a bad actor, "one extra count on top of 30 others is not likely to tip the scale."

Here, however, the government's dismissal of the two counts related to AV12 is not "one extra count on top" of others, but merely the first two of many likely to come before or during trial. As the government has now belatedly confirmed, it has chosen not to call AV12 because of serious and troubling credibility issues, almost all of which were well known to the government in 2022 (including four open criminal cases and open warrants in Oregon for crimes including Identity Theft, Forgery, and Possession of Methamphetamine, among other charges). These credibility issues were also easily discoverable had the government adequately investigated the credibility of the alleged victims in this case (AV12 was arrested in Nevada in March of 2023 and charged with identity theft related crimes). Critically, AV12 is hardly the only alleged victim with significant and troubling credibility issues that merit reexamination of the veracity of their statements.

- Defense counsel has interviewed (and subpoenaed) four different formerly incarcerated women, all of whom indicated that they were told by multiple alleged victims about a plot to falsely accuse Mr. Klein of sexual abuse for money.

4 – DEFENDANT'S MOTION TO EMPANEL A NEW JURY

- o  Witness Beaver told our investigator that AV15 recruited her to be a part of the scheme along with other women.
- o  Witness Nash told our investigator that she overheard multiple women discussing their scheme to extort money from the DOC based on false accusations against Mr. Klein, including AV1, AV2, AV8, and formerly listed AV18, among other women in CCCF. This group also includes women the government did not include in their charging decision but who were interviewed by law enforcement and noted in discovery received by the defense.
- o  Witness Gillette reported the same, naming AV1, AV2, AV8, AV11, and AV18 as being part of the plot to falsely accuse Mr. Klein.
- o  Witness Rodgers listed the same group as Teresa Gillette, including AV1, AV2, AV8, AV11, AV12, and AV18 as all openly discussing their choice to falsely accuse Mr. Klein of sexual abuse to obtain money.
- The government has been warned by their own witnesses of a similar plot to falsely accuse Mr. Klein. According to a call with the government after the June 30 hearing, when asked why AV19 was no longer on the witness list, the government explained that AV7 had reported to them that AV19 made a statement to her (AV7) about accusing Mr. Klein for money.[1] The government is no longer

---

[1] Defense counsel was informed that a 302 would be provided to the defense on that issue, which defense counsel has yet to receive.

**5 – DEFENDANT'S MOTION TO EMPANEL A NEW JURY**

calling AV19 as a witness, despite asking the Court to include her other act testimony as evidence, previously, and subpoenaing her to trial.

- AV13 told the FBI that she was aware of false accusations being made against Mr. Klein, noting that there are some people making accusations against Mr. Klein who never interacted with him.

In addition to obvious credibility concerns in its case, many of the alleged victims seem unlikely to appear, willfully or at all. Moreover, even alleged victims that are physically required to appear as a result of their custody status, seem unlikely to provide the evidence the government expects to hear.

- A probation officer for AV14's boyfriend told the FBI that her probationer reported that AV14 was not planning on coming to Oregon for the trial. The probation officer did not have occasion to speak to AV14 during her visit to her boyfriend's apartment, because AV14 remained in the restroom the entire time the probation officer was present.

- AV10 was recently removed from her clean and sober living house for drug use and has been placed in a different treatment facility in an attempt to handle her addiction issues. She asked the FBI during an interview if they could help her get her daughter back, who is currently in DHS custody. She has repeatedly explained that she is reluctant to testify.

- AV5 admitted to purchasing fentanyl after her release from CCCF. AV8 recently told the FBI that AV5 showed up at her house "loaded" (which defense counsel takes to mean, intoxicated on drugs) and did not wish to testify.

6 – DEFENDANT'S MOTION TO EMPANEL A NEW JURY

- AV2 told the FBI that she was "not happy to be in Oregon and did not want to participate in the Tony Klein trial," making sure to note that she, however, "should be compensated financially" and was going to speak to a civil attorney.
- AV1 told the FBI she does not want to testify and has repeatedly evaded contact with the FBI. In text messages received by the defense, AV1 only appeared responsive to the Government after they threatened to send police in for a welfare check if she did not respond.
- AV4 was angry when the FBI showed up at her residence (her boyfriend's father's home) and blamed the FBI for causing issues between her boyfriend and his probation officer. This interaction eventually resulted in the FBI advising her on how best to comply with her boyfriend's conditions of release.

Moreover, as the Court is aware, the centerpiece of Mr. Klein's defense is that the alleged victims' claims are false and related to a coordinated piling-on of accusations for improper motives. In such circumstances, the inclusion of the incorrect claim that Mr. Klein "sexually assaulted 12 female inmates" is not merely "one extra count on top" of others, but a false statement that primed potential jurors to disbelieve Mr. Klein's anticipated defense, tainting the jury pool.

Additionally, Mr. Klein reiterates that it was the government, over Mr. Klein's objection, that insisted that a reference to the now-incorrect description of the Indictment be included in the Jury Questionnaire. Indeed, the government previously made representations to the Court that Mr. Klein's "bold statements that the prosecution's

7 – DEFENDANT'S MOTION TO EMPANEL A NEW JURY

witnesses are not available for trial and that a continuance 'could only benefit the government' are incorrect. With one exception, all of the charged victims are available for trial; the United States is working diligently to locate AV11 and serve her with a subpoena."

Of course, as the government conceded at the June 30 pre-trial conference, this is no longer true. Not only has the government conceded that it must dismiss the charges related to AV12, the government also is still unable to confirm that AV11 will be available for trial, and acknowledged that it may be forced to dismiss additional charges related to her.

More troubling given the circumstances here is the fact that the government has now represented to counsel for Mr. Klein that the government chose to dismiss AV12's charges not based on any new information, but merely because it was concerned with her impeachability based on information long in the possession of the government. Nearly all of this information was known or available to the government at the time the government made its request for the language in the Jury Questionnaire, and it was certainly available to the government when it objected to Mr. Klein's motion for a continuance and proclaimed it was ready to go to trial with all its AVs, save for AV11.

Here, the government needlessly invited error that tainted the jury pool and unfairly prejudiced Mr. Klein. The government knew or should have known months earlier that the counts related to multiple AVs would ultimately be dismissed or be unprovable. Because the error invited by the government is "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy," the court must empanel

**8 – DEFENDANT'S MOTION TO EMPANEL A NEW JURY**

a new Jury from an untainted jury pool. *United States v. Nolan*, 700 F.2d 479, 482 (9th Cir. 1982).

## PROPOSED CURATIVE INSTRUCTION

As outlined *supra*, the proper remedy for the government's removal of AV12 from the witness list and the dismissal of charges related to her is a new jury pool. Understanding the Court's position as stated at the Pretrial Conference, Mr. Klein submits the following proposed curative instruction for the Court's consideration, which the government also objects to:

> The Jury Questionnaire you received stated that "the Government has charged defendant Tony Klein in a 25-count indictment. The indictment charges him with 21 counts of violating 18 U.S.C. § 242, alleging that he sexually assaulted 12 female inmates at Coffee Creek Correctional Facility (CCCF) while employed as a corrections nurse."
>
> That statement is not true. The Government charged Mr. Klein in a 23-count Indictment. The Indictment alleges that Mr. Klein assaulted 11 inmates at CCCF. The difference between those numbers is because on June 30, 2023, after investigating the allegations further, the Government chose to dismiss two of the counts in the Indictment related to one of the alleged victims after deciding that person's allegations should not be presented to the jury.
>
> I wish to reiterate that nothing in the Indictment, any references to it in the Jury Questionnaire you received, or anywhere else, are evidence.

*See United States v. Ramirez*, 710 F.2d 535, 545 (9th Cir. 1983) (emphasizing that an "indictment is not evidence against the accused and affords no inference of guilt or innocence"); see also Manual of Model Jury Instructions for the District Courts of the Ninth Circuit, Instruction 1.2 (The Charge—Presumption of Innocence) ("The indictment

simply describes the charges[s] the government brings against the defendant. The indictment is not evidence and does not prove anything.").

To the extent the government objects to this curative instruction, Mr. Klein reiterates that it was the government, over Mr. Klein's objection, that insisted this reference to the now-incorrect description of the Indictment be included in the Jury Questionnaire. Mr. Klein further contends that the government should have foreseen that it would be compelled to amend the Indictment as to one or more of the AVs for all the reasons cited above.

The government's basis for dismissing AV12 was not based on new information but due to long standing impeachability issues, which were well known by all parties at the time the questionnaire was drafted. Where the government has needlessly invited error that prejudices Mr. Klein, any complaints about the completeness of any curative instruction should carry little or no weight.

## CONCLUSION

Given the nature of the error and the prejudice to Mr. Klein, the Court should empanel a new and untainted jury. Should the court decline to do so, the Court should provide the jury the Defense's requested curative instruction.

Respectfully submitted on July 3, 2023

/s/*Matthew G. McHenry*  
Matthew G. McHenry  
Counsel for Tony Klein

/s/*Amanda Alvarez Thibeault*  
Amanda Alvarez Thibeault  
Counsel for Tony Klein