**MATTHEW G. McHENRY, OSB# 043571**
Levine & McHenry LLC
1050 SW 6th Ave Ste 1414
Portland OR  97204
(503)-546-3927
E-Mail: matthew@levinemchenry.com

**AMANDA A. THIBEAULT, OSB #132913**
Angeli Law Group
121 SW Morrison Street, Suite 400
Portland, OR 97204
(503) 954-2232
E-mail: amanda@aatlegal.com

*Attorneys for Defendant Tony Daniel Klein*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiffs, <br><br> vs. <br><br> TONY DANIEL KLEIN, <br><br> Defendants. | Case No. 3:22-cr-00084-SI-1 <br><br> **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES** |

Tony Daniel Klein, through counsel, submits this supplemental memorandum of law regarding the Court's Order Addressing Government's Motion *in Limine* Regarding Defense Witness Testimony (ECF 248).

## BACKGROUND

The defense anticipates that at least three defense witnesses—all former inmates at CCCF—will provide evidence of a conspiracy among fellow inmates to make false allegations against Mr. Klein. Specifically, the defense anticipates that multiple former CCCF inmates (the

"Defense Witnesses") will testify that another CCCF inmate, DF, was the ringleader of a conspiracy to make false allegations against Mr. Klein in order to sue the Oregon Department of Corrections ("DOC"). Indeed, The Defense Witnesses agree that at least four Indictment AVs, and one or more Witness AVs met with DF and discussed the planned conspiracy to falsely accuse Mr. Klein of sexually abusing them. Mr. Klein anticipates that these Defense Witnesses will testify to the following:

- Celia Nash, another former CCCF inmate, will testify that she wrote a letter to her husband, noting that "8 girls, including [DF]…are making false allegations, sexual" against Mr. Klein. This witness will also testify that DF bragged about suing the DOC and encouraged other women to join in, and that a certain non-testifying AV repeatedly made excuses to go to the medical unit to create a paper trail for a future lawsuit against Mr. Klein, and that this non-testifying AV discussed making false allegations with at least eight other inmates, include both Testifying and non-testifying AVs.

- Teresa Gillette, another former CCCF inmate, and a former bunkmate of DF, will testify she heard DF and other inmates, including multiple Testifying AVs, discussing making false allegations of sexual abuse against Mr. Klein. This witness will also testify that certain Testifying and non-testifying AVs tried to recruit her to make up allegations against Mr. Klein and file a civil suit, but she declined.

- Deborah Beaver will testify that AV15 and another non-testifying AV told her they were going to make up accusations against Mr. Klein and asked her to join the case.

The relevance of such statements should be apparent: the financial motivation of the AVs who have made allegations against Mr. Klein is not only an important part of Mr. Klein's defense in this case—it *is the defense* in this case. Mr. Klein is prepared to put on multiple eyewitnesses who are prepared to give testimony directly supporting the defense's core contention in this case: that numerous testifying AVs accused Mr. Klein (and later gave testimony in support of those accusations) not because the allegations were true, but because they had learned—in part from DF and another non-testifying AV—how to craft such allegations and how they could be financially lucrative. This explanation for the AVs' testimony, if credited

PAGE 2 – **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

by the jury, *would exonerate Mr. Klein*. As such, it is difficult to overstate the prejudice to Mr. Klein and his constitutional right to present a defense that would occur should the jury be precluded from learning this information.

The government moved in limine to exclude these and other related statements, asserting that any statements related to DF's communications with her potential co-conspirators are inadmissible hearsay if offered at trial. (ECF 237). The Court denied without prejudice the government's motion to exclude the anticipated testimony, but granted the government's request to hold a preliminary hearing outside the presence of the jury before allowing the testimony. (ECF 248). The Court further ordered that before Mr. Klein may present extrinsic evidence of any prior inconsistent statement by another witness, the earlier witness must have been given an opportunity to explain or deny that purportedly inconsistent prior statement, to the extent required by Fed. R. Evid. 613(b). (ECF 248).

## ARGUMENT

The statements at issue fall into two general categories, neither of which is excluded by the hearsay rule. First, there are statements made *by* the non-testifying AVs, such as DF's descriptions of her experience suing the Department of Corrections ("DOC"), her advice to other inmates informing them that they could make money by suing the DOC in a similar fashion, and DF and the other non-testifying AV's advice as to how to best go about fabricating their claims. Those statements are not hearsay, because they are not offered by Mr. Klein to establish the truth of the matter asserted but rather to establish that the AVs who heard these statements were thereby informed (1) about the possibility of making money by falsely accusing Mr. Klein; and (2) how to craft their own false allegations in such a way that they would be more credible.

The second category includes statements related to a plan by multiple inmates, *including multiple testifying and non-testifying AVs*, to falsely accuse Mr. Klein of sexual abuse and

PAGE 3 – **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

thereby bring lawsuits against the DOC. Those statements fall squarely within the hearsay exception for statements describing the declarant's "then-existing state of mind (such as motive, intent, or *plan*)." Fed. R. Evid. 803(3) (emphasis added).

In the alternative, as discussed herein, certain out-of-court statements of Testifying AVs are also relevant for impeachment purposes.

I.  **The statements made by DF and the other non-testifying AV are not offered to prove the truth of the matter asserted.**

The defense seeks to offer evidence (1) that DF was overheard stating to numerous AVs that she had made up allegations against Mr. Klein; (2) that DF had bragged about suing the DOC; and (3) that DF and the other non-testifying AV informed the testifying AVs she was speaking with that they should make up to reasons to go to the medical center to see Mr. Klein to create a record for their own future lawsuits. None of these statements are offered to prove the truth of the matter asserted: that DF and the other non-testifying AV themselves, in fact, did any of these things. As such, these statements are definitionally non-hearsay. Fed R. Evid. 801(c)(2).

Instead, the defense offers these statements to establish the fact that the statements were made in the presence and hearing of the testifying AVs, thereby informing them—before they made *any* allegations against Mr. Klein—that it was possible for *them* to make money by falsely accusing him, and further informing them how they might go about doing so. This goes directly to the testifying AVs' motivations in making their initial allegations and in maintaining those allegations at trial. It also shows an opportunity among the accusers to align their stories. Such evidence is routinely admitted for this precise purpose, as words read in print or heard in conversation can motivate or inform the person who reads them or hears them spoken and thereby motivate their future behavior. *See United States v. Salameh*, 152 F.3d 88, 112 (2d Cir. 1998) (in trial for terrorism in Trade Center bombing, admitting alleged terrorist materials

PAGE 4 – **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

discussing "desirability of attacking enemies of Islam" and "how to produce and use explosives," to prove the state of mind of defendants, which was relevant to intent and motive); *see also Brotherhood of Maintenance of Way Employees v. BNSF Railway, Inc.*, 834 F.3d 1071, 1078 n.5 (9th Cir. 2016) (rejecting hearsay objecting where "testimony of BNSF officials was submitted for the purpose of explaining why BNSF chose to take disciplinary action, not whether [employee']s complaints were accurate as a matter of fact"); *United States v. Harris*, 886 F.3d 1120, 1129-1130 (11th Cir. 2018) (in trial for racketeering involving murders, admitting testimony by W stating she overheard someone tell G that L wanted G dead and hearing G repeat that statement to defendant; W's testimony tended to show effect of statements on G and defendant; statements tended to show that G and defendant thought L wanted G dead, "which in turn motivated the plan to murder [L]," so statements were not hearsay).

Confusingly, the government seems to insist (without reference to any authority) that a statement offered—as here—in order to establish that it was *heard* by a relevant listener must be somehow *corroborated* by additional evidence establishing that the words spoken *in fact* had a certain effect upon the listener. The law contains no such requirement.

A simple hypothetical demonstrates the problem with this position. The classic hypothetical illustrating FRE 801(c)(2) involves the prosecution of a defendant for murdering his spouse after having been told by an acquaintance that the spouse was having an affair. The acquaintance is unavailable for trial, but the prosecution calls a bartender who overheard the statement. Such testimony is the paradigmatic example of non-hearsay under FRE 801(c)(2), as it is not being offered to establish that the spouse *in fact* was having an affair, but rather that this fact was communicated to the defendant, supplying him with a possible motivation for murder.

PAGE 5 – **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

What this example does *not* require is additional evidence that the statement *in fact had that effect on the defendant*. The bartender need not have overheard the defendant say in response, "That infuriates me! I shall now go and kill my wife." The simple fact that the statement is offered for a purpose *other than* to establish that an affair actually occurred suffices to exempt it from the rule against hearsay entirely. Because the non-hearsay purpose (to show that the husband *was told* about an affair) is itself relevant, the statement is plainly admissible. *See United States v. Levine*, 5 F.3d 1100, 1107 (7th Cir. 1993) (in trial for hiring assassin who killed defendant's brother and latter's wife and tried to kill son, evidence showing brother and wife accused defendant of stealing was admissible to show motive and state of mind).

The same is true here for the statements made by DF and the other non-testifying AV. The defense offers them not to prove the truth of the matter asserted—that *in fact* these women had made up her own false allegations or used them to sue the DOC. Rather, they are offered to show that the AVs who heard DF and the other non-testifying AV make these statements thereby learned that *this was a thing one could do* at CCCF (and how to best accomplish it). This fact does not, of course, by itself establish that the testifying AVs went out and made up accusations against Mr. Klein, much as a brick is not, by itself, a wall. But the fact that testifying AVs were informed about the possibility of doing so, and armed with information about how to accomplish such a task more effectively, is certainly *relevant*. (Indeed, it is relevant evidence on the core issue in this case.) The statements of DF and the other non-testifying AV are therefore admissible.

II. **The discussions by AVs planning to make false accusations against Mr. Klein are admissible pursuant to Fed. R. Evid. 803(3).**

As detailed in Mr. Klein's initial response to the government's motion (ECF 244), the defense anticipates that Celia Nash and Teresa Gillette will each testify to having overheard

PAGE 6 – **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

conversations among numerous AVs (including testifying AVs) in which they discussed making false accusations of sexual abuse against Mr. Klein and certain testifying AVs attempted to recruit Ms. Gillette into joining this scheme. These statements by testifying AVs describing their own future intent and plans to make up false accusations against Mr. Klein are admissible pursuant to Fed. R. Evid. 803(3), the state of mind or plan exception to the hearsay rule, which allows hearsay into evidence to prove the declarant's then-existing condition or state of mind and to prove his plan, reason, motive, design, or intent to complete a subsequent act. *United States v. Pheaster*, 544 F.2d 353, 376 (9th Cir. 1976); *see also United States v. Jenkins*, 579 F.2d 840 (4th Cir. 1978) (out-of-court statement of declarant that she was going to a specific location was admissible in perjury case to show falsity of declarant's testimony that she did not go); *United States v. Hogan*, 886 F.2d 1497, 1511-12 (7th Cir. 1989) (emphasizing that "statements of a declarant's future intent are admissible to show that the declarant acted in conformity with his intention").

The government has indicated that its position with regard to this testimony may depend on the precise content of the testimony from Ms. Nash and Ms. Gillette, and the parties have agreed to a preliminary hearing pursuant to Fed. R. Evid. 104.

### III. In the alternative, the anticipated testimony is admissible for impeachment purposes.

Each of the statements offered by the defense is not only relevant but goes to the heart of Mr. Klein's defense. None of the statements are excluded by the hearsay rule (or indeed, by any other rule cited by the government). This should end the inquiry. If, however, the Court nonetheless precludes the substantive admission of these statements, the defense maintains that much of the proffered testimony is independently admissible as prior inconsistent statements of testifying witnesses.

PAGE 7 – **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

The government insists that, pursuant to Fed. R. Evid. 613(b), *before* any extrinsic evidence of a witness's prior inconsistent statement may be admissible to impeach, the witness being impeached must *first* be given an opportunity to explain or deny the statement and the adverse party (here, the government) must be given an opportunity to examine the witness being impeached about the purportedly inconsistent statement.[1] (See ECF 248 at 3). The government's position, however, is not supported by the text or advisory committee notes to Rule 613 and is rejected by clear Ninth Circuit precedent.

The text of Rule 613(b) and the relevant Advisory Committee notes clearly indicate that it is not necessary to give a witness an opportunity to examine a prior inconsistent statement *before* that statement is admissible to impeach the witness. All that is necessary under the Rule is that the witness be given an opportunity at some point in the trial to explain or deny the statement. See Fed. R. Evid. 613, Advisory Committee's Note ("The traditional insistence that the attention of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine on the statement, *with no specification of any particular time or sequence*"). The plain text of Rule 613(b) thus rejects the common-law rule, under which the proponent was required to lay a foundation for the prior inconsistent statement at the time the witness testified.

Further, longstanding Ninth Circuit precedent makes clear that Rule 613(b) does not require a criminal defendant to *first* give a government witness an opportunity to explain or deny the statement before any extrinsic evidence of a prior inconsistent statement may be admissible.

---

[1] Rule 613 establishes the foundation that a party must lay before impeaching a witness by prior inconsistent statement. But as detailed above, the proffered Defense Witness statements are themselves evidence of the AVs bias and motive to fabricate. As such, they have *independent relevance* above and beyond evidence constituting prior inconsistent statements of testifying AVs.

**PAGE 8 – DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

*See United States v. Young*, 86 F.3d 944, 949 (9th Cir. 1996) ("We have expressly recognized that the foundational prerequisites of Rule 613(b) require *only* that the witness be permitted—*at some point*—to explain or deny the prior inconsistent statement") (emphasis added); *United States v. McLaughlin*, 663 F.2d 949, 953 (9th Cir. 1981). Critically, the Ninth Circuit has found that a trial court commits reversible error by excluding a defense witness's testimony impeaching a government witness. *Id*. at 953 (emphasizing that "[t]he trial judge's concern with the 'opportunity to explain or deny' language in Rule 613(b) was misplaced" where "[t]he "government would have been free to re-call [witness]. . . Rule 613(b) requires no more."). Further, the Ninth Circuit has explicitly stated that the argument the government makes here is "without merit." *Young*, 86 F.3d at 949. As the Ninth Circuit explained in *Young*:

> The government asserts that Fed. R. Evid. 613(b) barred admission of [defense witness]'s testimony because the defense did not *first* provide [government witness] an opportunity to explain or deny his prior inconsistent statement. *The government's argument is without merit*. We have expressly recognized that the foundational prerequisites of Rule 613(b) require only that the witness be permitted—at some point—to explain or deny the prior inconsistent statement. *United States v. McLaughlin*, 663 F.2d 949, 953 (9th Cir.1981); Fed. R. Evid. 613(b), Advisory Committee Note. On cross-examination, [government witness] denied ever having gone to [location] in November 1994, which is where [defense witness] alleged that government witness] made the inconsistent statement. It may have been preferable for [] counsel to question [government witness] directly . . . . However, even absent [a] flat denial of the statement on cross-examination, [defense witness's] testimony concerning [government witness's] prior inconsistent statement *would not have been barred. The government would have been free to re-call* [government witness] as a witness and give him an additional opportunity to explain or deny the statement attributed to him. *McLaughlin*, 663 F.2d at 953. Thus, the government's objection . . . on the basis of Rule 613(b) *is without merit*.

PAGE 9 – **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

*Id*. at 949 (emphasis added). Thus, defense witness testimony may not be excluded on the basis of Rule 613(b) where the government has the opportunity to recall the witness. *Id*.; *McLaughlin*, 663 F.2d at 953.

### IV.   Mr. Klein does not seek to offer the Defense Witness testimony pursuant to Rule 608(b).

The government states that pursuant to Rule 608(b), extrinsic evidence is not admissible to prove specific instances of a witness's conduct to attack that witness's character for truthfulness. This is correct, but irrelevant: Mr. Klein does not seek to introduce any of the proffered testimony by Defense Witnesses in order to prove "specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). As detailed above, the testimony is being offered primarily to establish bias and motive to fabricate. Such evidence is *never* collateral, and FRE 608(b) (which governs the procedure for introducing collateral prior dishonest acts to establish a character trait of untruthfulness) simply does not apply. *See United States v. Abel*, 469 U.S. 45, 51 (1984) (holding extrinsic evidence is admissible to show bias); *United States v. Ray*, 731 F.2d 1361, 1364 (9th Cir. 1984) ("Rule 608(b) does not bar introduction of evidence to show that the witness is biased. It regulates only the admissibility of evidence offered to prove the truthful or untruthful character of a witness."); *see also* Phillip W. Broadhead, *Why Bias Is Never Collateral: The Impeachment and Rehabilitation of Witnesses in Criminal Cases*, 27 Am. J. Trial Advoc. 235, 242 (2003) ("Objections to . . . extrinsic impeachment evidence by opposing counsel may cite a violation of the Collateral Evidence Rule under Rule 608(b). Such challenges should be met by counsel with the general statement, 'But Your Honor, bias is never collateral.'"); Wharton's Criminal Evidence § 9:11 (15th ed.) ("Bias is *never* classified as a collateral matter and may always be proved by extrinsic testimony and exhibits") (emphasis added).

PAGE 10 – **DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW REGARDING TESTIMONY OF CERTAIN DEFENSE WITNESSES**

Furthermore, Rule 608(b) does not apply where the proffered Defense Witness testimony is accepted only for the purpose of impeaching testifying AVs with prior inconsistent statements, as extrinsic evidence of prior inconsistent statements *is* permitted during this type of impeachment, despite the fact that the ultimate goal of such an impeachment—establishing a character trait of untruthfulness—is similar. *See* Fed. R. Evid. 608, Advisory Committee's Note (2003) ("By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403). *See, e.g.*, *United States v. Winchenbach*, 197 F.3d 548 (1st Cir. 1999) (admissibility of a prior inconsistent statement offered for impeachment is governed by Rules 402 and 403, not Rule 608(b)); *United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988) (admissibility of extrinsic evidence offered to contradict a witness is governed by Rules 402 and 403); *United States v. Lindemann*, 85 F.3d 1232 (7th Cir. 1996) (admissibility of extrinsic evidence of bias is governed by Rules 402 and 403).

## CONCLUSION

The government's motion should be denied in its entirety.

DATED this 19th day of July 2023

                                                    Respectfully submitted,

                                                   s/ *Amanda A. Thibeault*
                                                 **AMANDA A. THIBEAULT, OSB #132913**
                                                 Angeli Law Group
                                                 e-mail: amanda@angelilaw.com

s/ *Matthew McHenry*
**MATTHEW G. McHENRY, OSB# 043571**
Levine & McHenry LLC
1050 SW 6th Ave Ste 1414
Portland OR  97204
(503)-546-3927
E-Mail: matthew@levinemchenry.com

Attorneys for Defendant Tony Klein