**MATTHEW G. McHENRY, OSB# 043571**
Levine & McHenry LLC
1050 SW 6th Ave Ste 1414
Portland OR 97204
(503)-546-3927
E-Mail: matthew@levinemchenry.com

**AMANDA A. THIBEAULT, OSB #132913**
Angeli Law Group
121 SW Morrison St
Suite 400
Portland, OR 97204
(971)-302-6346
E-mail: amanda@angelilaw.com

*Attorneys for Defendant Tony Daniel Klein*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:22-cr-00084-SI-1 |
| Plaintiffs, | |
| vs. | **DEFENDANT'S MOTION FOR NEW TRIAL UNDER RULE 33** |
| TONY DANIEL KLEIN, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Defendant Tony Klein, through his attorneys, moves for a new trial. This motion is based on the records of the case, the following memorandum, and the accompanying Declaration of Counsel.

## I. PROCEDURAL HISTORY

On March 9, 2022, the government charged Mr. Klein with multiple counts of deprivation of civil rights and perjury. ECF 1. On May 17, 2022, the Court set a trial date of July 10, 2023. ECF 20. The defense made multiple motions to continue the trial date, including an oral motion to continue after trial had begun, arguing, *inter alia*, that the defense was still conducting critical trial investigation and had not yet received all of the records the government was required to produce under *Brady v. Maryland*, nor records the defense sought via subpoena and public records requests. ECF 38, 136. The Court denied all defense motions to continue the trial date.

After a two-week jury trial, Mr. Klein was convicted of 17 counts of deprivation of civil rights and four counts of perjury. Mr. Klein is in custody; sentencing is set for October 17, 2023.

The jury began deliberations on the afternoon of Friday, July 21, 2023, and delivered a verdict on July 25, 2023. On July 24 and 25, 2023, Mr. Klein received newly discovered evidence in response to previously outstanding subpoenas *duces tecum*. These records contain significant evidence in support of the defense trial theory that the alleged victims were engaged in a scheme to defraud others in an attempt to obtain money. These records also contain evidence establishing that government witnesses perjured themselves during the trial.

## II. MR. KLEIN IS ENTITLED TO A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.

To prevail on a motion for new trial under Rule 33 based on newly discovered evidence, Mr. Klein must satisfy a five-part test: 1) the evidence must be newly discovered; 2) failure to discover the evidence sooner is not the result of lack of diligence by the defendant; 3) the evidence must be material to the issues at trial; 4) the evidence must be neither cumulative nor merely impeaching; and 5) the evidence must indicate that a new trial would probably result in acquittal.  *E.g.*, *United States v. King*, 735 F.3d 1098, 1108 (9th Cir. 2013); *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991).[1]

---

[1] A motion for new trial based on newly discovered evidence must be filed "within 3 years after the verdict or finding of guilty."  Fed R. Crim. P. 33(b)(1). As noted, the defense received newly discovered evidence on July 24 and 25, 2023. The records of messages received from Viapath Technologies on July 25, 2023, constitutes thousands of pages and 1.4 gigabytes of data. The defense has only had an opportunity to review a portion of 1.4 gb of data.  Likewise, the defense received approximately 20 hours-worth of phone call recordings from the Columbia County Sheriff, and has not had an opportunity to listen to all calls received. In an abundance of caution, the defense moves to include all records received from Viapath and the Columbia County Sheriff as part of the record for appellate review. The records received have been delivered to the government and the Court via zip drives on Monday, August 21, 2023, and portions of them are referenced in the accompanying Declaration of Counsel.

For purposes of efficiency, the defense files this motion contemporaneously with a Motion for Acquittals under Rule 29. The defense reserves the right to develop additional arguments and/or file additional motions under Rule 33 as it continues its review of the voluminous records already received, and as additional records are received from still-outstanding subpoenas and records requests.

**1. The evidence at issue is newly discovered.**

The evidence at issue is newly discovered.  Though the defense sought this evidence prior to trial, the evidence was not received by the defense until after the jury rendered its verdict. The first prong is met. *E.g.*, *United States v. Krasny*, 607 F.2d 840, 843 (9th Cir. 1979) (newly discovered evidence means evidence "discovered after trial").

**2. The defense was diligent in seeking the new evidence.**

The evidence that is the subject of this motion takes two forms.  The first set of records came from Viapath Technologies, and includes 1.41 gigabytes of data in the form of messages sent and received from the government witnesses while they were incarcerated during the relevant timeframe. The second set of records are recorded phone calls from Columbia County Jail by government witness Lindsey Criss—approximately 20 hours-worth of recordings.  The defendant was diligent in seeking these records.

The defense issued numerous Rule 17(c) subpoenas *duces tecum* and public records requests during the pendency of this case leading up to trial.  Each time the defense team learned of a potential avenue for subpoenaed records, the defense timely sought court authorization for issuance of the subpoenas requested. Each time, the Court granted the authorizations, and the subpoenas were served on the respective agencies as soon as practicable after Court authorization. In addition, as

previously noted, the defense sought a continuance of the trial on the basis of ongoing investigation multiple times.  Each motion to continue the trial date was denied.

### A. Records from Viapath Technologies

On May 26, 2023, the Court authorized the issuance of a Rule 17(c) subpoena to Paper Dolls. ECF 118. Paper Dolls, a private company, administers a website on which female Adults in Custody (AICs) can post personal profiles. These profiles, including photos, seek contact and relationships with individuals not in custody. Non-incarcerated individuals can view profiles and initiate correspondence with the AICs listed. Paper Dolls and similar services are ripe for misuse by AICs, as the correspondence service is often used as a method to manipulate would be "pen pals" into sending money or bestowing other benefits on the AIC. The Paper Dolls website warns that it "makes no guarantees as to the claims of the women listed here," and instructs users to report to the prison administration "any women listed on this site [who] has made fraudulent claims." The misuse of Paper Dolls is so prevalent that the company has a "fraud page" for listing AIC's making fraudulent claims. The company additionally warns, "Paper Dolls does not recommend sending money or other material goods to any inmates." Discovery revealed that at least two of the government's complaining witnesses

discussed their Paper Dolls accounts around the time of the accusations against the

defendant in this case.

On June 2, 2023, the defense received voluminous records from Paper Dolls

in response to the subpoena. A review of those records revealed that government

witnesses in this case with Paper Dolls profiles also used other methods to solicit

contact from non-incarcerated individuals on various platforms operated by

Viapath Technologies and Access SecurePack. In response, the defense filed a

motion for authorization to issue a Rule 17(c) subpoena to ViaPath Technologies

and Access SecurePack on June 16, 2023. ECF 146. The Court granted the motion

on June 20, 2023. ECF 153. The subpoenas were served on June 26, 2023, with a

requested return date of July 10, 2023 (the first day of trial). On June 26, 2023, the

Legal Compliance Manager at Viapath Technologies contacted the defense and

informed them that due to the amount of materials sought, Viapath would need

until at least July 24, 2023, to produce the requested materials. The defense

requested that instead of waiting to provide any materials until July 24, Viapath

provide the defense with materials on an ongoing basis as they were compiled.

Viapath did not respond to that request, and the materials were shipped as one

package to the defense on July 24, 2023 (despite a report from Viapath indicating it

had generated the materials on July 11, 2023). The defense received the materials

on July 25, 2023. The defense acted diligently in obtaining the records.

*B. Lindsey Criss Jail Calls*

Trial began on July 10, 2023. On July 16, 2023, the government informed the defense that government witnesses AV13 and AV3 spoke to each other about the ongoing trial and their status as witnesses. This conversation took place after AV13 had testified but before AV3 had testified. The conversation occurred during a phone call whereby AV3 called AV13 from the Columbia County Jail, where AV3 was being held in custody pending her testimony. The defense asked the government to provide the record of the phone call, which the government refused. The defense filed a motion to authorize a subpoena *duces tecum* to the Columbia County Sheriff for that recorded phone call, and any others made by AV3 during the time in which she was held in custody. ECF 247. The Court granted the motion the next day (ECF 249), and the defense served the subpoena on Columbia County immediately after. On Monday, July 24, 2023 the defense received approximately 20 hours of recorded phone calls from the Columbia County Jail. The defense acted diligently in obtaining these records.

**3. The newly discovered evidence is material, and not merely cumulative or impeaching.**

The third and fourth prongs of the test are met as well—the newly discovered evidence is material to the issues at trial, and not merely cumulative or impeaching.

The defense theory at trial was that the named adult victims planned and executed a scheme in which they made false statements and claims in an attempt to obtain money or other benefits.  Part of the defense case was establishing that many of these individuals had a longstanding pattern of such behavior, whether it was in the form of an individual's prior convictions or exploring other such scams through cross-examination about Paper Dolls accounts and other money-making schemes while in custody.  Some, but not all, of this cross-examination was disallowed by the Court as irrelevant, sustaining the government's objection, while other government witnesses denied using Paper Dolls or other similar services to obtain benefits or money from non-incarcerated individuals.

The newly discovered evidence shows that such evidence was highly relevant to the defense theory, and further that some of the government witness testimony on the subject was entirely false. For example, Adult Victim (AV) 6 testified at trial that she was on Paper Dolls only for a short time and stopped using the website almost immediately after a non-incarcerated individual asked to marry her.

Contrary to her testimony, the newly discovered evidence reveals, among other things, that AV6 asked a non-incarcerated acquaintance about setting up a Paper Dolls profile on at least three separate occasions (June 30, 2016; July 5, 2016; July 15, 2016). On December 14, 2016, AV6 exchanged messages with a

non-incarcerated acquaintance about selling semi-nude photos of AV6. *See*

Declaration of Counsel, filed contemporaneously with this motion. On January 1,

2017, AV6 confirmed she was still using Paper Dolls, and asked a non-

incarcerated individual to act as her "pimp" by posting a similar profile for her on

Craig's List. *Id.* In essence, the newly discovered evidence shows that contrary to

her testimony, AV6 was actively using Paper Dolls and similar websites to try to

obtain money from non-incarcerated individuals, including attempts to recruit

someone to act as her "pimp." Had this evidence been discovered prior to trial, the

defense would have used it as direct evidence in support of its theory, and could

have used it to contradict any contrary testimony from AV6.

Similarly, AV7 testified under oath during the trial that she was not

interested in pursuing a lawsuit and never was. AV7 further denied on cross-

examination that she told the FBI she and her husband were looking for lawyers

but they all "shot her down." Newly discovered evidence, however, reveals that her

testimony about not being interested in a lawsuit was false. On March 28, 2023,

AV7 sent a message to AV19, informing AV13 that a new law had passed

removing the statute of limitations "to sue on abuse" and stating that "me and

memory's lawsuits still have action!!! Witch means I'll be buying in to your home

owning property business! [sic]". *Id.* In essence, AV7 lied to the jury about her

motive behind making the accusations against Mr. Klein, was in fact actively

interested in pursuing a lawsuit even as late as March of 2023, and even had plans on how to spend the money she hoped to receive.

The newly discovered evidence related to AV7 also makes clear that her relationship with AV13 was much more intimate than either individual testified to at trial. AV7 and AV13 were in frequent contact, with AV13 placing money on AV7's books and attempting to visit her in the days leading up to trial. *Id.*

The newly discovered evidence also demonstrates that multiple AVs extorted money from several non-incarcerated individuals during their time at CCCF.  Messages sent by AVs are filled with graphic sexual messages while repeatedly collecting money from the individuals to which the messages are sent. The content of the messages go directly to the heart of the defense theory—using whatever means necessary to obtain money and benefits.

For example, AV4 repeatedly told one individual that he was her exclusive significant other. In response, this person repeatedly put money on AV4's books, which AV4 referred to has her "allowance." *Id.*  The newly discovered evidence also reveals that AV4 was lying to this individual, as she was actively engaged in romantic and sexually explicit messaging with multiple other individuals from whom she received financial assistance, apparently assuring each one that their relationship was exclusive.  *Id.* The newly discovered evidence reviewed thus far shows that AV11 was likewise engaged in this behavior.

Additionally, the records contain a variety of substantive exculpatory information that would have been available to Mr. Klein at trial. Even if found by this court not to be admissible, Mr. Klein would have been able to file motions and preserve for appellate review several legal issues, which now may remain unpreserved and unavailable for appellate review.

The trial testimony of principle witnesses for the government "inherently possesses a high degree of materiality," and this fact must be considered.  *E.g.*, *Krasny*, 607 F.2d at 844–45 and n.3. This fact becomes even more important where the newly discovered evidence suggests that that one or more government witnesses perjured themselves at trial.  *Id.*

As noted, because the newly discovered evidence directly supports the defense theory at trial and demonstrates perjury by critical government witnesses, it is not cumulative or merely impeaching.  Even so, where, as here, newly discovered evidence that is so powerful as to render the witness's trial testimony incredible, a new trial should be granted even if the evidence is also impeaching. *E.g.*, *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992).  *Davis* held that if, as here, such a witness's testimony was otherwise uncorroborated and provided the only evidence of an essential element of the government's case, any newly discovered "impeachment" evidence is "material" under the 5-prong test. *Id.*

**4. The newly discovered evidence indicates that a new trial probably result in acquittal.**

The newly discovered evidence indicates that a new trial would probably result in acquittals.  The newly discovered evidence establishes that many of the government's key witnesses affirmatively misled the jury about their involvement in other attempts to obtain money, and at times outright perjured themselves. Further, given the lack of any physical evidence of the charged conduct, this witness testimony was entirely uncorroborated by other evidence.  Rule 33 permits a new trial "if required in the interest of justice," and if newly discovered evidence establishes that a defendant has been convicted based on uncorroborated testimony of uncredible witnesses, the "interest of justice" would support a new trial under Rule 33. *Davis*, 960 F.2d at 825.

As noted, there was no physical evidence corroborating the claims made by the AVs in this case.  As such, the credibility of the accusers was the most critical issue at trial.  The newly discovered evidence would significantly affect the credibility and believability of the testifying AVs. Where a government witness is permitted to "parade [her]self in false colors, and the truth is discovered, the motion for a new trial should be granted if the false testimony (or nondisclosure) could, in any reasonable likelihood, have affected the judgment of the jury." *United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978).

The jury in this case deliberated for two and a half days, indicating the closeness of the case. Had the jury heard the newly-discovered evidence, it probably would have acquitted Mr. Klein of the charges related specifically to those witnesses.  Moreover, given the theories presented by the prospective parties involved, the false testimony and undisclosed information would have tainted the government's case on all charges, making an acquittal probable on each count of conviction.

Mr. Klein should be granted a new trial.

Respectfully Submitted this 21st day of August, 2023:

/s/ *Matthew G. McHenry*
Matthew G. McHenry
Counsel for Tony Klein

/s/ *Amanda Alvarez Thibeault*
Amanda Alvarez Thibeault
Counsel for Tony Klein