NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**GAVIN W. BRUCE, OSB #113384**
Assistant United States Attorney
Gavin.Bruce@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:  (541) 465-6771
**CAMERON A. BELL, CSB #305872**
Trial Attorney—Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Cameron.Bell@usdoj.gov
Telephone:  (202) 802-7643
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 3:22-cr-00084-SI** |
| **v.** | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL UNDER RULE 33 [ECF NO. 284]** |
| **TONY DANIEL KLEIN,** | |
| **Defendant.** | |

After a two-week trial with 38 witnesses and 115 exhibits, a 12-person jury convicted the

defendant of Counts 1–15, Counts 18–19, and Counts 22–25 of the Indictment.  ECF Nos. 278,

279.

The defendant now moves for a new trial, citing newly discovered evidence.  ECF No. 284.

Specifically, the defendant identifies materials in response to Rule 17(c) subpoenas that were

served on Viapath Technologies, related to Paper Dolls profiles and other communications by AVs

in this case.  The defendant also identifies recorded phone calls made by AV3, though he does not

**United States' Opposition to Defendant's Motion for a New Trial Under Rule 33     Page 1**

explain in his motion how any of the information contained on the calls would warrant a new trial. For the reasons set forth below, the defendant's motion should be denied.

### A.  Factual Background

In March 2022, the defendant was charged with multiple counts of 18 U.S.C. §§ 242 and 1623.  On May 17, 2022, the Court set the matter for trial, to begin on July 10, 2023.  ECF No. 20. Trial began on July 10, 2023.  The case was submitted to the jury on July 21, 2023.  The jury returned its verdict on the afternoon of July 25, 2023.

### 1.  Facts Relevant to Viapath Technologies and Access SecurePack Subpoenas

According to the defendant's motion, he served a Rule 17(c) subpoena on Paper Dolls between May 26, 2023, and June 2, 2023.  He received responsive records on June 2, 2023. According to the defendant, from those records, he learned that witnesses "used other methods to solicit contact from non-incarcerated individuals on various platforms operated by Viapath Technologies and Access Securepack."  ECF No. 284 at 6.  He then obtained subpoenas for records, which were apparently served on Viapath Technologies and Access Securepack on June 26, 2023.  ECF No. 284 at 6.  According to the defendant, he received records in response on July 25, 2023, despite requesting an earlier return date.  *Id.*

The responsive records "include[] 1.41 gigabytes of data in the form of messages sent and received from the government witnesses while they were incarcerated during the relevant timeframe."  ECF No. 284 at 4.  As the defendant's counsel described it, those records "are, in essence, the communications of every single charged adult victim, and a few additional pertinent witnesses, during their time at the Department of Corrections and up until July 4, 2023."  ECF No. 285 at ¶ 5.  In other words, some of the messages date back more than a decade, and the

overwhelming majority of communications contained in the newly obtained materials occurred before March 2022. All but one of the communications identified in the defendant's Declaration of Counsel occurred before 2020. *See* ECF No. 285 at ¶ 10-11.

The records he has identified for his motion relate to AVs 4, 6, 7, and 11. The information related to AV7 pertains to statements she made in a March 2023 written message about "no time limit to sue on abuse." ECF No. 285 at ¶ 10(d). According to the defendant, these statements indicate that AV7 lied at trial about her motive behind reporting the accusations. *Id.* at ¶ 10(e). Furthermore, the defendant claims the frequency and content of the contacts between AV7 and AV13 demonstrate that their relationship "was much different than the picture either woman painted at trial." ECF No. 285 at ¶ 10(f).

The information the defendant has identified that is related to AVs 4, 6, and 11 is exclusively about their communications and messages with others outside the facility. In these communications, the defendant argues, AVs 4, 6, and 11 sent "extraordinarily graphic, sexual messages . . . while repeatedly collecting money from those individuals." ECF No. 285 at ¶ 11. He has identified statements by AV6 in which she discussed her Paper Dolls account and others where she asked someone to post a personal ad for her on Craigslist. He has identified statements by AV4 in which, the defendant claims, AV4 told a person named "Jared" that he was her exclusive significant other while she was sending romantic and sexual messages to other people. ECF No. 285 at ¶ 11. He argues that AV11 was engaged in similar conduct but provides no examples. The defendant concedes that "none of this would necessarily be criminal or indicative of fraudulent intent." *Id.* But he contends that these statements support his theory that all of the allegations against him are false and that all of the victims would "us[e] whatever means necessary to obtain money and benefits." ECF No. 284 at 10.

**United States' Opposition to Defendant's Motion for a New Trial Under Rule 33     Page 3**

### 2.  Facts Relevant to Columbia County Jail Subpoena

On July 16, 2023, the United States disclosed that it had learned AV3 and AV13 had spoken to each other on the phone during the trial, while AV3 was in custody at Columbia County Jail pending her testimony.  The defendant moved to subpoena recorded phone calls made by AV3 while she was in custody there; the defendant apparently received those records on July 24, 2023.

### B.  Legal Standard

A court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Cr. P. 33(a).  Such motion "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).  The district court "enjoys broad discretion with regard to a new trial motion" because it is "most familiar with the context of the trial." *Freund v. Nycomed Amersham,* 347 F.3d 752, 765 (9th Cir. 2003).  Defendants also bear a "heavy burden" in meeting the requirements to establish that a new trial is warranted.  *See, e.g., United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006) (quoting *United States v. Saada*, 212 F.3d 210, 216 (3d Cir. 2000)).  Finally, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded" as harmless error.  Fed. R. Crim. P. 52(a).

"To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, a defendant must satisfy a five-part test:  (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005). "This five-prong test is difficult to meet." *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985).

**United States' Opposition to Defendant's Motion for a New Trial Under Rule 33    Page 4**

### C.  Evidence From Viapath Technologies and Access SecurePack

#### 1.  Materials from Viapath Technologies and Access SecurePack Are Neither Newly Discovered Nor the Result of Diligent Action by the Defendant.

Contrary to the defendant's assertion, the materials he now claims are newly discovered are neither new nor the result of diligent efforts by the defendant.  Even when a document itself is "new," courts have held that evidence is not "newly discovered" when "the substance of [the] proffered documents is not new and is generally cumulative of previously available information." *United States v. Hinkson*, 2005 WL 8159885 at \*2 (D. Idaho 2005) *aff'd*, 585 F.3d 1247 (9th Cir. 2009).  Known, easily obtainable evidence is not "newly discovered."  *United States v. Del-Valle*, 566 F.3d 31, 38 (1st Cir. 2009) (cited with approval in *United States v. Smith*, 2015 WL 4110788 (D. Nev. 2015).

The "newly discovered" evidence existed months, if not years, before the trial began.  Moreover, the messages that the defendant has now obtained are largely duplicative of information that the defendant already had.  For example, AV4, AV6, and AV11 were each asked about "Paper Dolls" during their civil depositions in 2019.  AV4 even testified in her 2019 deposition that she corresponded with someone named "Jared"—a fact that the defense now cites as part of the basis for a new trial.  Though the purportedly "new" information pertaining to AV7 occurred in a March 2023 phone call, the United States previously disclosed multiple summaries of interviews of AV7, in which she indicated that she was interested, at various times, in filing a lawsuit against the Oregon Department of Corrections, in part due to lack of care for her health problems and in part due to the defendant's conduct.  Put simply, the defendant not only had access to the recorded calls and the ability to subpoena them at any time, he already had access to—and *possession of*—

materials provided by the United States in discovery that contained substantially the same information he claims is now "newly discovered."

Similarly, the defendant was not diligent in seeking the evidence from Viapath Technologies and Access SecurePack, because those materials could have been obtained at any time. *See United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) ("Any failure to discover the evidence regarding the crime scene and surrounding streets reflects a lack of due diligence on Harrington's part.  The photographs and street map could have been obtained at any time."); *see also United States v. Hinkson*, 585 F.3d 1247, 1258 (9th Cir. 2009) (defendant was not diligent where he had sufficient opportunity and time to uncover and produce the evidence . . . before the end of trial).

The defendant served the subpoenas for these records on June 26, 2023, just two weeks before trial.  Though he attempts to link the Paper Dolls information with these messages, he offers no real explanation as to why, despite being charged in March 2022, he waited until just three weeks before trial to seek these records, which detail communications that dated back several years.  Indeed, all of the records that he has identified and claimed as relevant to the defense theory date back to 2016 and 2017.  He has had ample time to obtain the records that he subpoenaed on the eve of trial; indeed, he could have obtained these records at any time after indictment.  His choice not to obtain these records earlier does not now, after the jury has rendered its verdict, permit him to pursue a new trial.

### 2.   The Evidence the Defendant Has Identified Does Not Satisfy the Remaining Criteria

Even assuming that the defendant has discovered new evidence as a result of diligent efforts, he is unable to satisfy any of the remaining three prongs: that the evidence is material, that

the evidence is neither cumulative nor merely impeaching, and that the evidence indicates a new trial would probably result in acquittal.

With respect to the third and fourth prongs, that the evidence is material and neither cumulative nor merely impeaching, the defendant's reliance on *United States v. Davis* is misplaced. 960 F.2d 820 (9th Cir. 1992). There, the court concluded that "in some situations, [] the newly discovered impeachment evidence may be so powerful that, if it were to be believed by the trier of fact, it could render the witness's testimony totally incredible." *Id.* at 825. None of the evidence that the defendant has identified renders any witness's testimony "totally incredible," and *Davis* is therefore inapplicable here. So, too, is *United States v. Butler*, 567 F.2d 885 (9th Cir., 1978), which the defendant argues entitles him to a new trial because a witness's "false testimony (or nondisclosure) could, in any reasonable likelihood, have affected the judgment of the jury." *Id.* at 891. But in *Butler*, the key witness's false testimony was "egregious," *id.*, and the case involved significant prosecutorial misconduct, as the government had allegedly promised the witness that pending charges against him would be dismissed if he testified favorably to the prosecution—a promise that the witness denied on the stand and that the prosecutors did not correct. *Id.* at 887. Based on those facts, *Butler* is easily distinguishable from this case; the defendant has not identified any false testimony, there is no allegation of prosecutorial misconduct, and no witness "paraded [her]self in false colors." *Id.* at 891. For those reasons, *Butler* does not warrant a new trial, either.

### a.  Evidence related to AV6 does not satisfy the remaining three criteria.

The messages related to AV6 that the defendant has identified do not satisfy the remaining three criteria. As noted above, the defendant has identified three separate instances in which AV6 asked someone for help with activating an account on Paper Dolls. That occurred over the course

of approximately 16 days.  ECF No. 285 at ¶ 10(a).  According to the defendant, AV6 exchanged messages with someone "about selling semi-nude photos of her for money."  ECF No. 285 at ¶ 10(a).  On January 1, 2017, AV6 asked someone to create a Craigslist personal ad for her and said "I'm already on paperdolls."  ECF No. 285 at ¶ 10(vi).

None of this information is material to the relevant question in this case: whether the defendant sexually assaulted AV6 on three separate occasions.  Nor is this evidence material to the defense theory that the adult victims jointly participated in a scheme to make false allegations against the defendant.  Moreover, this evidence is likely inadmissible pursuant to Federal Rules 401, 403, and 412,[1] as well as this Court's ruling during trial that evidence pertaining to Paper Dolls was not relevant.  Evidence that is inadmissible is not material.  *United States v. Hinkson*, 585 F.3d 1247, 1258 (9th Cir. 2009).  Thus, with respect to AV6's messages, the third prong is not met.

The defendant also claims that this information could have been used to contradict (or impeach) AV6's testimony and show that she was "*actively* using websites like Paper Dolls."  ECF No. 285 at ¶10(b) (emphasis added).  But the newly discovered evidence does not directly contradict her in-court testimony; instead, it is cumulative of her testimony.  Specifically, AV6 was asked at trial if she had an account with Paper Dolls.  She confirmed that she did, and she testified that she only communicated with one person on Paper Dolls.  That testimony is not contradicted by the messages the defendant has identified.  Nor do these messages show, as the defendant claims, that she was "actively" using these sites.  The fourth prong is not met.

---

[1] Despite initially moving, successfully, to exclude the victims' prior sexual behavior under Rule 412, *see* ECF No. 213, the defendant now apparently seeks to admit material prohibited by that Rule, as his motion is filled with salacious descriptions and characterizations of "graphic sexual messages" and behavior attributed to the victims in this case.

Finally, the defendant cannot demonstrate that, at a new trial, this evidence would "probably" lead to an acquittal. As noted above, this evidence is unrelated to the defendant, the charges and is likely inadmissible. *See, e.g.*, Fed. R. Evid. 403, 412. Inadmissible evidence would not yield a different result in a new trial. *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) ("So, what effect on a jury could excluded evidence have? None."). The jury already heard some testimony about AV6's Paper Dolls account and nevertheless convicted the defendant on Counts 12, 13, and 14. The final prong is not met.

### b. Evidence related to AVs 4 and 11 does not satisfy the remaining three criteria.

Messages from AV4 and AV11 to non-incarcerated people are similarly immaterial, cumulative and merely impeaching, and unlikely to lead to a different result in a new trial.

The statements that the defendant has identified related to AV4 are immaterial because they are irrelevant and inadmissible. He claims that statements by AV4 demonstrate that she was "lying . . ., as she was actively engaged in romantic and sexually explicit messaging with multiple other individuals from whom she received financial assistance, apparently assuring each one that their relationship was exclusive." ECF No. 284 at 10. To the extent that characterization is even accurate—which the United States does not concede—the proffered evidence is neither relevant nor admissible; Rule 412 excludes it, as does Rule 608(b), which does not permit the admission of extrinsic evidence to prove prior acts of untruthfulness. Furthermore, this evidence is simply irrelevant; evidence about photographs and messages that AVs sent to people other than the defendant—whether to pursue a relationship, obtain money, or simply seek companionship—has no tendency to prove whether, consistent with the defendant's theory of the case, any AV

fabricated allegations of sexual assault against the defendant so that she could ultimately sue the Department of Corrections.

Even if the messages are marginally relevant, the conduct differs substantially from the defendant's central theory.  In the defendant's view, AV4's messages demonstrate that she was able to manipulate men to do what she wanted.  Assuming that is substantiated by the evidence, it could be relevant if the defendant's theory was that he was coerced or tricked into engaging in sexual behavior with the AVs.  But that was not the defense in this case.  And it is too great an inferential leap to suggest that AV4's romantic messages with people outside of the facility, which the defendant claims (without support) were part of AV4's effort to get an "allowance," thereby tend to prove that she made up allegations against the defendant so that she could sue the Department of Corrections.  The chasm between the conduct in the messages and the defendant's theory of the case is so great that it is clear the messages are far more prejudicial than probative. The third prong is not satisfied.

The content of AV4's messages, or similar messages by other AVs is cumulative and merely impeaching.  To the extent it bears on any witness's veracity, the defendant cross-examined each witness about her criminal convictions and other conduct that related to her character for truthfulness.  The defendant already cross-examined AV4 about her lawsuit and the money that she recovered; if the defendant's argument is that AV4 was motivated by money, he can—and did, at trial—make that point without these messages.  The fourth prong is not met.

Finally, there is no indication that the jury would come to a different result because of AV4's messages or any other similar messages.   As noted above, the messages are likely inadmissible pursuant to Rules 401, 403, and 412.  Inadmissible evidence cannot lead to a different result. *Hinkson*, 585 F.3d at 1267.  Even if this evidence were admissible, the jury observed AV4's

demeanor during the trial and was able to assess her credibility.  These messages are unlikely to lead to a different result in a subsequent trial.

### c. Evidence related to AV7 does not satisfy the necessary criteria.

The "newly discovered" evidence related to AV7—the messages about a lawsuit and the nature of her relationship with AV13—does not satisfy the necessary criteria under *Harrington*.

As a predicate matter, the defendant's argument about AV7's interest in filing a lawsuit is incomplete and misleading.  He argues that the recently obtained evidence includes statements by AV7 suggesting that at some point, she planned to pursue a lawsuit, which he claims is contrary to her trial testimony.  ECF No. 284 at 9 (claiming AV7's "testimony about not being interested in a lawsuit was false").  This characterization misstates her testimony.  In fact, AV7 did not testify that she was not interested in a lawsuit; she testified that she was "not *doing this for* a lawsuit." (7/13/23 Rough Tr. at 169-70 (emphasis added).[2])  In his motion, the defendant falsely equates interest in a lawsuit with making public allegations *for the purpose of* filing a lawsuit (i.e., "doing this for a lawsuit").  But AV7 was not specifically asked whether she had ever considered filing a lawsuit, thus there is no contradiction to highlight.

Moreover, some of the trial testimony that the defendant elicited from AV7 was consistent, not inconsistent, with the "newly discovered" statements in her March 2023 phone message. During the trial, defense counsel used a summary of one of AV7's prior interviews to challenge her testimony.  Specifically, she was asked whether she "remember[ed] saying [to the FBI] that

---

[2] The rough transcript is not cited as a certified or completely accurate account of what transpired during court proceedings.  Rather, the rough transcript is cited for ease of analysis and to refresh the parties' recollections of what transpired during court proceedings with the understanding that only the final transcript will be a completely accurate account of the words used in court.

**United States' Opposition to Defendant's Motion for a New Trial Under Rule 33    Page 11**

[she] did want to sue Klein." (*Id.* at 170.)  She responded by saying, "No.  Me and my husband talked about it but we never pursued it."  (*Id.*)  During the second week of trial, defense counsel presented additional evidence of the conversation between AV7 and the FBI, presumably to argue to the jury that AV7's prior statements were inconsistent with her trial testimony.  Put differently, evidence that AV7 had contemplated pursuing a lawsuit was already before the jury, which weighed the evidence and resolved any ambiguity by crediting AV7's testimony that defendant sexual assaulted her.

Even assuming, *arguendo*, that the March 2023 messages directly contradicted AV7's trial testimony, the messages are cumulative of other statements that the defendant possessed at trial and, in fact, *used* or relied on during the trial.  In addition to the document described above, the defendant had in his possession at least two other memoranda documenting AV7's statements to FBI agents.  In one, AV7 indicated that she was interested in suing the Oregon Department of Corrections.  (*See* April 2023 302, attachment submitted under seal.)  In another, from less than two weeks before AV7 testified, she indicated to FBI agents that she did *not* plan to file a lawsuit because she did not want to deal with "this" anymore and she felt like justice was being done with the criminal trial.  (*See* June 2023 302, attachment submitted under seal.)  During cross-examination, defense counsel elicited from both memoranda other information concerning other topics, suggesting that he was aware of the statements about filing a lawsuit but made the strategic choice not to question AV7 about her prior statements on this issue.  To the extent this purportedly "new evidence" illuminates anything at all, it is that AV7's trial testimony was consistent with her prior statements—statements that the defendant used to confront her or that he had in his possession at the time of trial.  In that regard, it is cumulative.

**United States' Opposition to Defendant's Motion for a New Trial Under Rule 33    Page 12**

Finally, the introduction of this information would not be likely to lead to an acquittal. To the contrary, the defendant cross-examined AV7 on this point and introduced additional evidence in his case. Furthermore, the defendant had two other similar statements at his disposal, but he opted not to use them. There is no reason to think yet another statement would have led to a different result.

The defendant next argues that the messages demonstrate AV7's "relationship with AV13 was much more intimate than either individual testified to at trial." ECF No. 284 at 10. But once again, AV7's statements in the messages about her relationship with AV13 are *consistent* with her trial testimony, making the content of the messages cumulative. During trial, both women confirmed that they were friends, with AV7 going so far as to say that AV13 was her "family." Specifically, AV13 was asked whether she was "friends or acquaintances" with AV7 and she confirmed that she was. When AV7 testified two days later, she confirmed on cross-examination that AV7 and AV13, along with AV3, were "in a very tight group together" and that she (AV7) had recently spoken with AV13. (*Id.* at 182-83.) AV7 further stated, "They are my family." (*Id.* at 183.) That testimony is consistent with the information the defendant now cites; the "new" evidence is therefore cumulative. And because the jury already heard about the close relationships between AV3, AV7, and AV13, this evidence would not lead to a different result in a new trial. The defendant's motion fails as to the evidence related to AV7.

/ / /

/ / /

/ / /

/ / /

/ / /

**United States' Opposition to Defendant's Motion for a New Trial Under Rule 33    Page 13**

### D.  Jail Calls from AV3 Do Not Warrant a New Trial

The defendant argues that AV3's jail calls are newly discovered evidence entitling him to a new trial, and although he can demonstrate that he acted diligently to obtain the call recordings, he cannot demonstrate what content, specifically, is "newly discovered."

Moreover, he fails to provide any explanation as to how they are relevant, material, anything more than impeaching, or would lead to a different result.  Neither the defendant's motion nor the declaration in support identifies a single statement from the phone calls that entitles him to a new trial.  *See* ECF Nos. 284, 285.  Because his motion does not explain how the phone calls are material, how they are neither cumulative nor impeaching, or how they demonstrate that a new trial would result in an acquittal, the defendant's motion for a new trial based on the jail calls should be denied.

### CONCLUSION

For the reasons stated above, this Court should deny the defendant's motion for a new trial.

Dated:  September 5, 2023

Respectfully submitted,

NATALIE K. WIGHT                                KRISTEN CLARKE
United States Attorney                          Assistant Attorney General

*/s/ Gavin W. Bruce*                            */s/ Cameron A. Bell*
GAVIN W. BRUCE                                  CAMERON A. BELL
Assistant United States Attorney                Trial Attorney
                                                Civil Rights Division

**United States' Opposition to Defendant's Motion for a New Trial Under Rule 33     Page 14**